1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   SHANNON Z. PETERSEN, Cal. Bar No. 211426
3  LISA S. YUN, Cal. Bar No. 280812
   SIEUN J. LEE, Cal. Bar No. 311358
4  12275 El Camino Real, Suite 200
   San Diego, California 92130-4092
5  Telephone:    858.720.8900
   Facsimile:    858.509.3691
6  Email:        spetersen@sheppardmullin.com
                 lyun@sheppardmullin.com
7                slee@sheppardmullin.com

8  Attorneys for Defendant
   SQUARE, INC.
9

10                    UNITED STATES DISTRICT COURT

11         NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12

13 | MISHARI ALEISA and NICOLE          | Case No. 3:20-cv-00806-EMC
   | BELLUOMINI, individually and on behalf
14 | of all others similarly situated,   | CLASS ACTION

15 |         Plaintiffs,                 | **DEFENDANT SQUARE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER ARTICLE III; MEMORANDUM OF POINTS AND AUTHORITIES**
16 |    v.                               |
17 | SQUARE, INC., a Delaware corporation, |
18 |         Defendant.                  |

19                                        Date:     May 28, 2020
                                          Time:     1:30 p.m.
20                                        Judge:    Hon. Edward M. Chen
                                          Courtroom: 5 – 17th Floor
21
                                          Trial Date: None set
22                                        Complaint Filed: 2/03/2020

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

**NOTICE OF MOTION** .................................................................................................................. 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................... 2

I.    INTRODUCTION .............................................................................................................. 2

II.   THE ALLEGATIONS AND THE FACTS ....................................................................... 3

    A.    Plaintiff Alleges One Text Message ...................................................................... 3

    B.    The Facts Show Plaintiff Agreed To The One Text Message She Received ................................................................................................................. 4

III.  LEGAL STANDARD ........................................................................................................ 5

IV.  PLAINTIFF BELLUOMINI LACKS ARTICLE III STANDING ..................................... 6

    A.    Plaintiff Belluomini Cannot Prove Actual Injury-In-Fact ..................................... 6

    B.    Plaintiff Belluomini Cannot Show Any Injury Caused By Square ....................... 9

V.   CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page

Cases

*ACA International v. Fed. Commc'ns Comm'n*
  885 F.3d 687 (D.C. Cir. 2018) ........................................................................................ 9

*Chandler v. State Farm Mut. Auto. Ins. Co.*
  598 F.3d 1115 (9th Cir. 2010) ......................................................................................... 5

*Cour v. Life360, Inc.*
  No. 16-cv-00805-TEH, 2016 U.S. Dist. LEXIS 98945 (N.D. Cal. July 28,
  2016) .............................................................................................................................. 10

*Dutta v. State Farm*
  895 F.3d 1166 (9th Cir. 2018) ......................................................................................... 7

*Eldridge v. Pet Supermarket, Inc.*
  No. 18-22531-CIV-WILLIAMS, 2020 U.S. Dist. LEXIS 56222 (S.D. Fla.
  Mar. 9, 2020) ................................................................................................................... 8

*Fenwick v. Orthopedic Specialty Inst., PLLC*
  No. 0:19-CV-62290, 2020 U.S. Dist. LEXIS 21566 (S.D. Fla. Feb. 4,
  2020) ................................................................................................................................ 8

*Figueroa v. Everalbum, Inc.*
  No. C 17-05909 JSW, 2018 U.S. Dist. LEXIS 198967 (N.D. Cal. May 9,
  2018) .............................................................................................................................. 10

*Frank v. Cannabis & Glass, LLC*
  No. 2:19-cv-00250-SAB, 2019 U.S. Dist. LEXIS 170871 (E.D. Wash.
  Oct. 1, 2019) ............................................................................................................... 9, 11

*Huricks v. Shopkick, Inc.*
  No. C-14-2464 MMC, 2015 U.S. Dist. LEXIS 112596 (N.D. Cal. Aug.
  24, 2015) ........................................................................................................................ 11

*Jaras v. Equifax Inc.*
  766 F.App'x 492 (9th Cir. 2019) ..................................................................................... 7

*Lujan v. Defs. of Wildlife*
  504 U.S. 555 (1992) ..................................................................................................... 5, 9

*Maya v. Centex Corp.*
  658 F.3d 1060 (9th Cir. 2011) ......................................................................................... 5

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs*.
   946 F.3d 1100 (9th Cir. 2020) .................................................................................. 6

*Reichman v. Poshmark, Inc.*
   No. 16-cv-2359 DMS (JLB), 2017 U.S. Dist. LEXIS 73769 (S.D. Cal. May 15, 2017) *appeal dismissed*, No. 17-55826, 2017 WL 6345805 (9th Cir. Oct. 18, 2017) ................................................................................................. 11

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004) .................................................................................. 6

*Salcedo v. Hanna*
   936 F. 3d 1162 (11th Cir. 2019) ........................................................................... 7, 8

*Satterfield v. Simon & Schuster, Inc.*
   569 F.3d 946 (9th Cir. 2009) .................................................................................... 9

*Selby v. Ocwen Loan Servicing, LLC*
   No. 3:17-CV-973-CAB-BLM, 2017 U.S. Dist. LEXIS 189995 (S.D. Cal. Nov. 16, 2017) ......................................................................................................... 7

*Serban v. CarGurus, Inc.*
   No. 16 C 2531, 2018 U.S. Dist. LEXIS 40412 (N.D. Ill. Mar. 12, 2018) ..................... 11

*Shuckett v. DialAmerica Mktg.*
   No. 17cv2073-LAB (KSC), 2019 U.S. Dist. LEXIS 127049 (S.D. Cal. July 29, 2019) ............................................................................................................ 7

*Spiegel v. EngageTel Inc.*
   372 F.Supp.3d 672 (N.D. Ill. 2019) ........................................................................... 9

*Spokeo, Inc. v. Robins*
   136 S.Ct. 1540 (2016) ............................................................................................... 6

*Summers v. Earth Island Inst.*
   555 U.S. 488 (2009) .................................................................................................. 5

*Van Patten v. Vertical Fitness Group, LLC*
   847 F.3d 1037 (9th Cir. 2017) .................................................................................. 7

*Warciak v. Nikil, Inc.*
   No. 16 C 5731, 2017 U.S. Dist. LEXIS 42067 (N.D. Ill. Mar. 23, 2017) ..................... 11

*White v. Lee*
   227 F.3d 1214 (9th Cir. 2000) .................................................................................. 6

*Wolfe v. Strankman*
    392 F.3d 358 (9th Cir. 2004) .......................................................................................... 5

Statutes

47 U.S.C. § 227 *et seq.* ................................................................................................... 1, 2

47 U.S.C. § 227(a)(1) ............................................................................................................ 3

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................................................. 9

Other Authorities

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
    30 F.C.C. Rcd. 7961 (2015) .................................................................................... 9, 10

Federal Rule of Civil Procedure 12(b)(1) ....................................................................... 1, 2, 5

U.S. Constitution Article III ................................................................... 1, 2, 3, 5, 6, 7, 8, 12

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that that on May 28, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 on the 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Edward M. Chen presiding, Defendant Square, Inc. ("Square") will and hereby does move this Court to dismiss the claims filed by Plaintiff Nicole Belluomini against Square in this case, with prejudice.

The Motion is brought pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1) on the grounds that Plaintiff Belluomini lacks Article III standing to bring her claims against Square for alleged violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* Specifically, Plaintiff Belluomini (1) has not suffered sufficient actual injury-in-fact, and (2) she cannot show that any actual injury was caused by Square.

The motion to dismiss is made under Federal Rule of Civil Procedure 12(b)(1) and will be based on the grounds that Plaintiff Belluomini lacks Article III standing to bring her TCPA claims against Square. This motion is based on this notice, the attached memorandum of points and authorities, filed concurrently herewith, on the papers and pleadings on file herein, and on such other and further argument and evidence as Square may proffer in support of this motion prior to or at the time of the hearing on the motion to dismiss.

Dated: April 17, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/Lisa S. Yun*
SHANNON Z. PETERSEN
LISA S. YUN
SIEUN J. LEE

Attorneys for Defendant
SQUARE, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(1), Defendant Square, Inc., submits this Memorandum of Points and Authorities in support of its motion to dismiss Plaintiff Nicole Belluomini's claims for lack of subject matter jurisdiction under Article III of the U.S. Constitution.

## I.    INTRODUCTION

The Court should dismiss Plaintiff Belluomini's claims against Square for alleged violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") because she lacks Article III standing to bring her claims for two independent reasons: (1) she has not suffered sufficient actual injury-in-fact, and (2) she cannot show that any actual injury was caused by Square.[1]

Square is a mobile payment company that provides software and hardware payment products, including card readers. Plaintiff Belluomini claims that after she made a purchase at a restaurant through one of Square's devices, she received *one* text message on her cell phone relating to the restaurant's loyalty program, by which a consumer earns "stars" for each purchase toward a free good. Based on the receipt of this single text message, Plaintiff purports to represent a nationwide class of consumers who received a similar message. Plaintiff does not seek to recover any actual damage (because she has none), but instead claims a statutory penalty of $500 for the single text message, or up to $1,500 if she can prove a knowing or willful violation.

Plaintiff Belluomini, however, has not and cannot show actual injury-in-fact sufficient to confer Article III standing. As she alleges and Square's records show, she only received *one* text message. Further, *she requested* the text message and agreed to receive it by providing her phone number on a Square device and pressing a button to enroll in the restaurant's loyalty program following a clear disclosure, which stated: "By claiming your stars you will get automated marketing texts associated with the loyalty

---

[1] Square reserves the right to argue Plaintiff Aleisa also lacks standing.

program. Joining this program is not a condition of purchase." Plaintiff could have pressed "No Thanks," but did not do so. Because Plaintiff agreed to – and actually requested – the single text message she received, it was not unwanted or unsolicited. Thus, Plaintiff cannot show any invasion of privacy, annoyance, or other injury, much less actual injury sufficient for Article III standing.

In addition, Plaintiff Belluomini cannot show Square caused any actual injury. This is because Square did not "make" the text message, Plaintiff did. Plaintiff launched the text message by providing her phone number and pressing the button on the reader agreeing to receive loyalty messages. The message was then sent automatically per her request, with no further action required by the restaurant or Square. Under relevant law, Plaintiff initiated and "made" the message here. Thus, any injury was caused by Plaintiff, not Square.

For either reason, the Court should grant Square's motion to dismiss Plaintiff Belluomini's claims for lack of subject matter jurisdiction.

## II.     THE ALLEGATIONS AND THE FACTS

### A.     Plaintiff Alleges One Text Message

Plaintiff Belluomini claims Square violated the TCPA by sending her a single text message to her cell phone via an Automatic Telephone Dialing System ("ATDS") "as defined by 47 U.S.C. § 227(a)(1)" without sufficient prior express consent. Compl. ¶ 83. Specifically, Plaintiff contends that on May 12, 2017, she visited Taste Kitchen & Table ("Taste") in Fairfax, California, and made a purchase through Square. Compl. ¶ 81. She alleges, "on information and belief," that she did not provide her phone number as part of this transaction. Compl. ¶ 83. Nevertheless, she alleges that she subsequently received an automated text message to her cell phone relating to this seller's loyalty program. Compl. ¶¶ 84-85. Plaintiff alleges the text message stated:

> You just got your first loyalty star from Taste Kitchen & Table! Click for program details: https://squareup.com/outreach/welcome/7HYXQ0X6MC.

Compl. ¶ 85. Plaintiff does not allege she ever received any other text message.

Based on this single text message, Plaintiff filed a putative nationwide class action. On behalf of herself and the putative nationwide class, Plaintiff seeks a statutory penalty of $500 per text message or up to $1,500 per text message based on a knowing or willful violation.  Plaintiff Belluomini alleges she "suffered actual harm," including the "lost utility of her phone—through diminished battery life" and "lost time opening and reading the text messages."  Compl. ¶ 92.  However, she does not seek any actual damages.

**B.     The Facts Show Plaintiff Agreed To The One Text Message She Received**

Square's records show that, as alleged, Plaintiff Belluomini did in fact visit the Taste Kitchen & Table in Fairfax, California on May 12, 2017.  *See* Compl. ¶ 81; Fung Decl. ¶ 5.  Also consistent with her allegations, Square's records show that Plaintiff received only one loyalty text message total.  Compl. ¶ 84; Fung Decl. ¶ 12, Ex. D.  The text message she received was sent on May 12, 2017 and said: "You just got your first loyalty star from Taste Kitchen & Table!  Click for program details . . ."  Compl. ¶ 86; Fung Decl. ¶ 11, Ex. D.  Square's records show that Plaintiff never received any other loyalty program text message from Square.  *Id.*

Contrary to her allegations, however, Square's records show that Plaintiff Belluomini did in fact agree to the single text message she received.  As part of her purchase at Taste, Plaintiff saw a screen inviting her to provide her phone number if she wanted to earn rewards as part of the loyalty program.  Fung Decl. ¶ 6, Ex. A.

On that screen, she was offered the opportunity to "Claim a star today."  Fung Decl. ¶ 7, Ex. A.  She then had an option to "Enter Phone Number to Earn Rewards" or to decline by pressing "No Thanks."  *Id.*  Instead of pressing "No Thanks," Plaintiff Belluomini elected to earn a reward by providing her phone number.  Fung Decl. ¶ 8.

Once Plaintiff Belluomini provided her phone number, the same dynamic screen was then updated to present her with the following disclosure immediately below her phone number:

> **By claiming your stars you will get automated marketing texts associated with the loyalty program.  Joining this program is not a condition of purchase**.

Fung Decl. ¶ 9, Ex. B (emphasis added).

Plaintiff Belluomini again had the option of clicking a box titled "No Thanks." *Id.* Instead, she clicked the box "Claim Your Star," thus agreeing to receive the loyalty text message. Fung Decl. ¶ 10, Ex. C.

Only after Plaintiff Belluomini provided her phone number and clicked "Claim Your Star," did Plaintiff Belluomini receive the *single* text message on May 12, 2017, advising her that she just earned her first loyalty star. Fung Decl. ¶ 11, Ex. D. This message was sent in one instantaneous electronic stream at 8:26 a.m. PST from Taste, to Square's vendor, then to Plaintiff with no separate action required by either Taste, the vendor, or Square to "make" or initiate the text message. Fung Decl. ¶¶ 13-14, Exs. C-D.

### III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "Article III of the Constitution confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992). "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring . . . that plaintiffs have standing and that claims be 'ripe' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121–22 (9th Cir. 2010) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Consequently, a "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis omitted). Plaintiff bears the burden of establishing standing under Article III. *See Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Here, Square challenges Plaintiff Belluomini's standing and the Court's lack of

subject matter jurisdiction on a factual basis, though lack of subject matter jurisdiction is also apparent on the face of the Complaint. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "need not presume the truthfulness of the plaintiffs' allegations" under a factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a defendant makes a factual challenge "'by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

## IV. PLAINTIFF BELLUOMINI LACKS ARTICLE III STANDING

To establish standing, a plaintiff must show she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). These elements are referred to as injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). Plaintiff must show all three. *Id.*

### A. Plaintiff Belluomini Cannot Prove Actual Injury-In-Fact

Plaintiff Belluomini's receipt of a single text message that she agreed to receive does not constitute an injury-in-fact sufficient to confer Article III standing. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1538. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* "Particularization is necessary to establish injury in fact, but it is not sufficient." *Id.* "An injury in fact must also be 'concrete'" "even in the context of a statutory violation." *Id.* at 1548-49; *see also id.* at 1543 (technical violation of FCRA insufficient for Article III

SMRH:4851-0039-2631.6                                      -6-                           Case No. 3:20-cv-00806-EMC
                                                                                        SQUARE'S MOTION TO DISMISS

standing; actual injury-in-fact required); *Dutta v. State Farm*, 895 F.3d 1166, 1176 (9th Cir. 2018) (affirming dismissal of FCRA claim because even if there was a technical violation there was not sufficient injury-in-fact); *Jaras v. Equifax Inc.*, 766 F.App'x 492, 494-95 (9th Cir. 2019) (same).

With respect to the TCPA, the Ninth Circuit explained that the "TCPA establishes the substantive right to be free from *certain types* of phone calls and texts absent customer consent." *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (emphasis added). The Ninth Circuit further explained that the "certain types of phone calls and texts" that give a recipient standing to assert a TCPA violation are those made by telemarketers, noting that "Congress aimed to curb telemarketing calls to which customers *did not consent* by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated." *Id*. (emphasis added) (finding sufficient standing due to invasion of privacy and nuisance from multiple unsolicited telemarketing messages).

Indeed, the Ninth Circuit "did not hold that receipt of *any* telephone call satisfies the concrete injury in fact requirement for standing to assert TCPA claims." *Selby v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 189995, at *8 (S.D. Cal. Nov. 16, 2017) (emphasis added). To the contrary, the receipt of a single, solicited text message is not the type of call or text that can give rise to Article III standing to bring a claim under the TCPA. *See e.g. Shuckett v. DialAmerica Mktg.*, 2019 U.S. Dist. LEXIS 127049, at *9 (S.D. Cal. July 29, 2019) (applying *Van Patten* but still finding that the plaintiff lacked Article III standing to bring a TCPA claim involving one call); *Selby*, 2017 U.S. Dist. LEXIS 189995, at *9 (finding that the plaintiff lacked Article III standing because "[a]ll of the calls at issue…d[id] not relate to telemarketing[,]" and "any harms alleged in the SAC [we]re not injuries in fact that give Plaintiff standing to assert claims under the TCPA.").

In fact, the Eleventh Circuit recently held that the receipt of a single text message, even without consent and in violation of the TCPA, is not enough for Article III standing. *See Salcedo v. Hanna,* 936 F. 3d 1162 (11th Cir. 2019). In analyzing the issue, the

Eleventh Circuit compared the "chirp, buzz, or blink of a cell phone receiving a single text message" to "walking down a busy sidewalk and having a flyer briefly waived in one's face." *Id.* at 1172. "Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Id.* Given this, the Eleventh Circuit concluded that the plaintiff's "allegations of a brief, inconsequential annoyance" did not support finding a concrete injury. *Id.*; *see also Eldridge v. Pet Supermarket, Inc.*, No. 18-22531-CIV-WILLIAMS, 2020 U.S. Dist. LEXIS 56222, at *16-17 (S.D. Fla. Mar. 9, 2020) (concluding that the receipt of five unsolicited telemarketing text messages did not constitute a concrete injury); *Fenwick v. Orthopedic Specialty Inst., PLLC,* No. 0:19-CV-62290, 2020 U.S. Dist. LEXIS 21566, at *12 (S.D. Fla. Feb. 4, 2020) (concluding that the receipt of two telemarketing text messages did not confer Article III standing).

Here, the fact that Belluomini's complaint is premised on one single text message would, itself, provide ample grounds for dismissing Plaintiff's claim for lack of Article III standing, but the specific facts of her claim make it particularly ripe for dismissal.

Namely, here, Plaintiff Belluomini had a clear choice to either provide her phone number and agree to enroll in the loyalty program or to click "No Thanks." She affirmatively chose to enroll by clicking "Claim Your Star" after receiving the following disclosure:

> By claiming your stars you will get automated marketing texts associated with the loyalty program.  Joining this program is not a condition of purchase.

Fung Decl. ¶ 9, Ex. B.  She then received *one* text message which stated, "You just got your first loyalty star from Taste Kitchen & Table!  Click for program details: …"  Fung Decl. ¶ 11, Ex. D.

Thus, not only are Plaintiff Belluomini's claims that she suffered an injury-in-fact due to the "chirp" or "buzz" of a single text message insufficient to confer Article III standing, she also cannot prove an injury-in-fact because she requested to receive that single text message.  Plaintiff Belluomini therefore lacks Article III standing.

B.     **Plaintiff Belluomini Cannot Show Any Injury Caused By Square**

The second element of standing requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

Here, Plaintiff Belluomini cannot show that any alleged injury was caused by Square. This is because Square did not "make" the single text message at issue. The TCPA only imposes liability on a defendant who "makes" a call (or text) in violation. Specifically, the TCPA makes it unlawful "to *make any call* (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). A text message is a "call" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

Congress has delegated to the Federal Communications Commission ("FCC") the authority to make rules and regulations to implement the TCPA. *Satterfield*, 569 F.3d at 953 (citing 47 U.S.C. § 227(b)(2)). In 2015, the FCC clarified "who makes a call under the TCPA and is thus liable for any TCPA violations." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7978 (2015) ("2015 FCC Order").[2] The FCC reiterated previous rulings stating that responsibility under the TCPA lies with those who "make" or "initiate" automated calls or

---

[2] The D.C. Circuit in *ACA International v. Fed. Commc'ns Comm'n*, 885, F.3d 687 (D.C. Cir. 2018), invalidated a portion of the FCC's 2015 Order. This portion of the Order, which addresses the "maker" of a call, was not at issue in *ACA International*, and as a result, courts have continued to apply the FCC's interpretation in determining who "initiates" or makes a call under the TCPA. *See, e.g., Frank v. Cannabis & Glass, LLC*, 2019 U.S. Dist. LEXIS 170871, at *5 (E.D. Wash. Oct. 1, 2019); *Spiegel v. EngageTel Inc.*, 372 F.Supp.3d 672, 683 (N.D. Ill. 2019).

1  texts, and not with those who merely provide the means to make or initiate the calls/texts.
2  *See* 2015 FCC Order at 7980.  In considering whether entities that provide software
3  applications or platforms that facilitate calling are considered "makers" of calls for TCPA
4  purposes, the FCC explained that it looks to "the totality of the facts and circumstances
5  surrounding the placing of a particular call to determine: 1) who took the steps necessary
6  to physically place the call; and 2) whether another person or entity was so involved in
7  placing the call as to be deemed to have initiated it, considering the goals and purposes of
8  the TCPA."  *Id.*

9  The FCC applied these standards when it examined a petition by TextMe, Inc., in
10 which TextMe requested a finding that it does not "make" calls under the TCPA when
11 users of its app cause texts to be sent to third parties.  2015 FCC Order at 7983.  To use the
12 TextMe app, an app user had to go through a multi-step process and make a number of
13 affirmative choices, including sending the text message by pressing a button.  *Id.*  The FCC
14 explained that "[t]hese affirmative choices by the app user lead [it] to conclude that the app
15 user and not TextMe is the maker of the invitational text message."  *Id.* at 7984.
16 Accordingly, the TCPA did not apply to TextMe because it did not initiate the text
17 message.  *Id.*

18 Following the FCC's guidance and applying the factors listed above, several courts
19 have held that that, where – as here – an app or platform requires users to take affirmative
20 steps to send a text message, the users, rather than the operator of the app or platform, are
21 the "makers" of the messages.  *See, e.g., Cour v. Life360, Inc.,* No. 16-cv-00805-TEH,
22 2016 U.S. Dist. LEXIS 98945, at *12-13 (N.D. Cal. July 28, 2016) (Henderson, J.)
23 (finding that the defendant is not the "maker of the calls at issue" where the app uses had
24 to choose "which of their contacts should receive an invitation and then press an 'invite'
25 button before invitations are sent"); *Figueroa v. Everalbum, Inc.,* No. C 17-05909 JSW,
26 2018 U.S. Dist. LEXIS 198967, at *9 (N.D. Cal. May 9, 2018) (White, J.) (granting
27 summary judgment in favor of defendant because "[t]here is no violation of the TCPA
28 where the invitational text messages are triggered by the App from actions of the user.");

1  *Reichman v. Poshmark, Inc.,* No. 16-cv-2359 DMS (JLB), 2017 U.S. Dist. LEXIS 73769,
2  at *11 (S.D. Cal. May 15, 2017) *appeal dismissed*, No. 17-55826, 2017 WL 6345805 (9th
3  Cir. Oct. 18, 2017) (finding that the app user, not the defendant, "made" the text messages
4  within the meaning of the TCPA where the app user was required to take certain
5  affirmative steps to send a text message, including choosing who to send the text
6  messages); *Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC, 2015 U.S. Dist. LEXIS
7  112596, at *7-8 (N.D. Cal. Aug. 24, 2015) (Chesney, J.) (where "a user of [defendant's
8  shopping rewards] app 'must [have] proceed[ed] through a multi-step invitation flow
9  within the app'" and choose who to send a text message, the court found that the defendant
10 was not the "sender" of the text messages); *Serban v. CarGurus, Inc.*, No. 16 C 2531, 2018
11 U.S. Dist. LEXIS 40412, at *10-13 (N.D. Ill. Mar. 12, 2018) (where users of defendant's
12 website had to enter in their phone number and then click "send" to send a text message,
13 the court concluded that the defendant was not the "initiator" of the text, even though the
14 defendant controlled the content of the texts); *Frank v. Cannabis & Glass, LLC*, 2019 U.S.
15 Dist. LEXIS 170871, at *7 (E.D. Wash. Oct. 1, 2019) (granting defendant's motion to
16 dismiss on the grounds that the complaint failed to sufficiently allege that defendant
17 initiated the transmission by "deciding whether, when or to whom the text message is
18 sent"); *Warciak v. Nikil, Inc.*, No. 16 C 5731, 2017 U.S. Dist. LEXIS 42067, at *6-7 (N.D.
19 Ill. Mar. 23, 2017) (concluding that the defendant could not "plausibly be said to have
20 'initiated the text through [the app]" where users were required to "take several
21 'affirmative steps' before generating a text message" through the app).
22         Similarly here, Plaintiff Belluomini made the text message by agreeing to Taste's
23 loyalty program, providing her phone number, and pressing the "Claim Your Star" button.
24 Plaintiff chose who to send the text message to—herself at her number. She initiated and
25 sent the message by providing her number and pressing the button. Thus, as in the
26 authorities cited above, Plaintiff initiated the text message, which then went in one
27 continuous electronic stream from Taste, to Square's vendor, then to Plaintiff. No separate
28 action was required by either Taste, the vendor, or Square to "make" or initiate the text

message.  Fung Decl. ¶¶ 13-14, Exs. C-D.  In fact, the message Plaintiff initiated and made went instantaneously from Plaintiff clicking the button at the device on May 12, 2017 at 8:26 a.m. PST to Plaintiff receiving the text message on her phone on May 12, 2017 at 8:26 a.m. PST.  *Id.*, Exs. C-D.  Consequently, any injury here was the result of Plaintiff's actions, and is not fairly traceable to Square.  Plaintiff lacks standing under Article III to bring her claims for this reason as well.

## V.     CONCLUSION

For these reasons, Square respectfully requests that the Court dismiss Plaintiff Nicole Belluomini's claims for lack of subject matter jurisdiction.

Dated: April 17, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     */s/Lisa S. Yun*
SHANNON Z. PETERSEN
LISA S. YUN
SIEUN J. LEE

Attorneys for Defendant
SQUARE, INC.