1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
    SHANNON Z. PETERSEN, Cal. Bar No. 211426
3   LISA S. YUN, Cal. Bar No. 280812
    SIEUN J. LEE, Cal. Bar No. 311358
4   12275 El Camino Real, Suite 200
    San Diego, California 92130-4092
5   Telephone:    858.720.8900
    Facsimile:    858.509.3691
6   E mail        spetersen@sheppardmullin.com
                  lyun@sheppardmullin.com
7                 slee@sheppardmullin.com

8   Attorneys for Defendant
    SQUARE, INC.

9

10                  UNITED STATES DISTRICT COURT

11       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13  MISHARI ALEISA and NICOLE BELLUOMINI, individually and on behalf of 14  all others similarly situated, | Case No. 3:20-cv-00806-EMC |
| | CLASS ACTION |
| 15          Plaintiffs, | **SQUARE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING THE** |
| 16       v. | **SUPREME COURT'S DECISION IN** |
| | ***FACEBOOK, INC. V. DUGUID* AND/OR** |
| 17  SQUARE, INC., a Delaware corporation, | **THE FCC'S DEFINITION OF ATDS AND;** |
| | **MEMORANDUM OF POINT AND** |
| 18          Defendant. | **AUTHORITIES** |
| 19 | Date:      October 1, 2020 |
| 20 | Time:      1:30 p.m. |
| | Judge:     Hon. Edward M. Chen |
| | Courtroom: 5 – 17th Floor |
| 21 | |
| 22 | Trial Date: None set |
| | Complaint Filed: 2/03/2020 |

23

24

25

26

27

28

SMRH:4848-5060-2422.1

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ........................................................................................................................

MEMORANDUM OF POINTS AND AUTHORITIES .....................................................................

I.      INTRODUCTION ...............................................................................................................3

II.     BACKGROUND ..................................................................................................................5

        A.      Plaintiffs Allege Square Sent Them Text Messages via ATDS ...............................5

        B.      Procedural Background ...........................................................................................6

III.    THE LEGAL STANDARD ................................................................................................6

IV.     THE COURT SHOULD STAY THIS ACTION PENDING CONTROLLING
        DEFINITION OF ATDS.....................................................................................................7

        A.      The Relevant Legal History Behind the TCPA and ATDS Requirement ................7

                1.      In 2018, the D.C. Circuit set aside the FCC's interpretation of
                        ATDS ...........................................................................................................8
                2.      After ACA International, Circuit Courts have split on defining ATDS .........8
                3.      The FCC is redefining ATDS in light of ACA International and
                        Marks ...........................................................................................................9
                4.      The Supreme Court grants certiorari in Facebook, Inc. v. Duguid ............10

        B.      This Case Should Be Stayed Pursuant to the Court's Inherent Power
                Pending the Supreme Court's Decision in Duguid ...................................................10

                1.      A stay will simplify the issues in this case and potentially dispose of
                        the TCPA claims against Square ................................................................11
                2.      A brief stay will not cause significant risk or prejudice ..............................13
                3.      The balance of hardships favor a stay ........................................................14

        C.      In Addition, Or In The Alternative, This Case Should Be Stayed Under the
                Primary Jurisdiction Doctrine Pending the FCC's Definition of ATDS ................15

                1.      The FCC's ruling will directly affect Plaintiffs' claims .............................15
                2.      The FCC has jurisdiction to interpret, administer, and regulate the
                        TCPA .........................................................................................................16
                3.      The TCPA imposes a comprehensive regulatory scheme
                        administered by the FCC ............................................................................17
                4.      The FCC is the expert agency charged with defining ATDS ......................17

V.      CONCLUSION ..................................................................................................................19

SMRH:4848-5060-2422.1

# TABLE OF AUTHORITIES

**Page**

Cases

*ACA International v. FCC*
    885 F.3d 687 (D.C. Cir. 2018) ........................................................................8, 9, 19

*Barrera v. Comcast Holdings Corp.*
    No. 14-cv-00343, 2014 WL 1942829 (N.D. Cal. May 12, 2014) ...........................18

*Cannon v. Wells Fargo Bank N.A.*
    917 F. Supp. 2d 1025 (N.D. Cal. 2013) (Chen, J.) ..................................................7

*Charvat v. Echostar Satellite, LLC*
    630 F.3d 459 (6th Cir. 2010) .................................................................................17

*Clark v. Time Warner Cable*
    523 F.3d 1110 (9th Cir. 2008) .......................................................7, 15, 16, 17, 18

*Glauser v. Twilio, Inc.*
    No. C 11-2584 PJH, 2012 U.S. Dist. LEXIS 9648 (N.D. Cal. Jan. 27, 2012) ...........16

*In re Portfolio Recovery Associates, LLC, Tel. Consumer Protec. Act Litig.*
    11MD2295 JAH(BGS), 2014 WL 12603110, at *3 (S.D. Cal. May 20, 2014) .........18

*Landis v. North American Co.*
    299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1936) .........................................6, 11

*Marks v. Crunch San Diego, LLC*
    904 F.3d 1041 (9th Cir. 2018) .........................................................................10, 16

*Meyer v. Portfolio Recovery Assocs., LLC*
    707 F.3d 1036 (9th Cir. 2012) ...............................................................................15

*In re Portfolio Recovery Associates, LLC, Tel. Consumer Protec. Act Litig.*
    2014 WL 12603110.................................................................................................18

*Reese v. Odwalla, Inc.*
    30 F. Supp. 3d 935 (N.D. Cal. 2014) ....................................................................18

*Satterfield v. Simon & Schuster, Inc.*
    569 F.3d 946 (9th Cir. 2009) .................................................................................16

*Sciortino v. Pepsico*
    108 F.Supp.3d 780 (N.D. 2015) ...............................................................................7

*Sprint Commc'ns Co., L.P. v. Ntelos Tel. Inc.*
    No. 5:11-CV-00082, 2012 WL 3255592 (W.D. Va. Aug. 7, 2012)...........................18

*Stewart v. T-Mobile USA, Inc.*
No. 4:14-cv-02086, 2014 WL 12614418 (D.S.C. Oct. 8, 2014) ................................................17

*Swearingen v. LateJulySnacks LLC*
No. C-13-4324 EMC, 2014 U.S. Dist. LEXIS 74114 (N.D. Cal. May 29, 2014) ......................7

*United States v. Garcia-Gomez*
No. 14-cr-00120-EMC-5, 2019 U.S. Dist. LEXIS 12623 (N.D. Cal. Jan. 25,
2019) ...................................................................................................................................10, 11

Statutes

47 U.S.C. § 227(b)(2) .........................................................................................................8, 16

47 U.S.C. § 227 *et seq.* .............................................................................................................3

Other Authorities

47 C.F.R. § 1.2(a) ..................................................................................................................16

SMRH:4848-5060-2422.1
SQUARE'S MOTION TO STAY PENDING DECISION BY
THE SUPREME COURT AND/OR THE FCC DEFINING ATDS

1   <u>**NOTICE OF MOTION AND MOTION TO STAY**</u>

2   **TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF**

3   **RECORD:**

4     **PLEASE TAKE NOTICE** that that on October 1, 2020, at 1:30 p.m., or as soon thereafter

5   as the matter may be heard, in Courtroom 5 on the 17th Floor of the United States District Court

6   for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

7   California 94102, the Honorable Edward M. Chen presiding, Defendant Square, Inc. ("Square")

8   will and hereby does move this Court to for an order staying all proceedings in this action,

9   including discovery, pending the Supreme Court's decision in *Facebook Inc. v. Duguid*, No. 19-

10   511 and/or the Federal Communications Commission's ("FCC") anticipated ruling on the

11   definition of "Automatic Telephone Dialing System" ("ATDS") under the Telephone Consumer

12   Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

13     The motion is brought pursuant to the Court's own inherent powers and the primary

14   jurisdiction doctrine on the grounds that the Supreme Court's and the FCC's anticipated ruling

15   interpreting the definition of ATDS will directly affect Plaintiffs Mishari Aleisa and Nicole

16   Belluomini's claims, as Plaintiffs must prove as an element of liability under the TCPA that the

17   text messages at issue here were sent via ATDS.  Currently, there is a circuit split on the definition

18   of ATDS.  The Supreme Court and the FCC's expected ruling will provide a uniform definition,

19   simplify the issues, narrow discovery, and potentially dispose of—or at least define—a necessary

20   element of Plaintiffs' claim.

21     This Motion is based upon this Notice, the concurrently filed Memorandum of Points and

22   Authorities, the Declaration of Lisa S. Yun, all other pleadings, papers, records, and documentary

23   material on file or deemed to be on file in this action, and upon such further oral or documentary

24   evidence and argument as may be presented at or before the hearing, and any other matter the

25   Court may deem appropriate.

26

27

28

SMRH:4848-5060-2422.1

1 | Dated:  August 7, 2020

2 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3 | By _____
_/s/Lisa S. Yun_

4 | SHANNON Z. PETERSEN
LISA S. YUN

5 | SIEUN J. LEE

6 | Attorneys for Defendant
SQUARE, INC.

7 |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendant Square, Inc. submits this memorandum of points and authorities in support of its motion to stay this action pending the U.S. Supreme Court's review of Ninth Circuit law in *Facebook, Inc. v. Duguid*, No. 19-511 ("*Duguid*") defining "Automatic Telephone Dialing System" ("ATDS") under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  In addition to, or in the alternative, Square request a stay pending the expected ruling by the Federal Communications Commission ("FCC") defining ATDS.

## I.      <u>INTRODUCTION</u>

The Court should stay this action pending the Supreme Court's review of the Ninth Circuit's decision in *Duguid* defining ATDS.  To prevail on their claims under the TCPA, Plaintiffs must prove that Square sent them text messages via an ATDS without sufficient prior express consent.  Proving that Square used an ATDS to send such messages is an element of Plaintiffs' claims.  However what is—and is not—an ATDS is, at present, very much an open question, one that will not be resolved until the Supreme Court issues its decision in 2021.  In the interest of judicial economy and to preserve the parties' resources, the Court should stay this case until the Supreme Court rules next term.

For over a decade, courts have disagreed on the meaning of ATDS.  In 2015, the FCC seemed to resolve the debate by issuing its own definition.  In 2018, however, the D.C. Circuit struck down the FCC's definition of ATDS after finding it to be unreasonably expansive and ordered the FCC to reformulate its definition.  Without national controlling authority, a half-dozen U.S. Courts of Appeal have issued their own, conflicting definitions, with the Ninth, Second, and Sixth Circuits adopting an expansive definition, and the Third, Seventh, and Eleventh Circuits adopting narrow ones.

Last month, the Supreme Court accepted review of the Ninth Circuit's decisions broadly defining what qualifies as an ATDS as stated in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) and *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019).  *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020).  In doing so, the Supreme Court will now address the issue that has bedeviled courts since the FCC's 2015

1   decision, and that is central to Square's alleged liability here:  whether the definition of ATDS in

2   the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers,

3   even if the device does not "use a random or sequential number generator."

4        If the Supreme Court agrees with the Third, Seventh, and Eleventh Circuits in finding that

5   an ATDS must actually have the statutorily required "random or sequential" capacity, Plaintiffs'

6   Complaint should be subject to dismissal with prejudice.  At a minimum, the Supreme Court's

7   anticipated ruling on the meaning of ATDS will directly impact the adjudication of this case and

8   will narrow the issues and provide controlling authority for this Court.

9        Pursuant to its inherent powers, the Court should stay this action pending the Supreme

10  Court's decision.  All three factors that courts consider when determining whether to issue a stay

11  under their inherent powers weigh in favor of a stay here.  First, a stay will simplify the issues,

12  narrow discovery, and potentially dispose of—or at least define—a necessary element of

13  Plaintiffs' claims.  Second, a stay pending the Supreme Court's decision in *Duguid* will not cause

14  any significant risk or prejudice to Plaintiffs, who waited more than two years after receiving the

15  first text message at issue before filing their claims.  Further, relatively little substantive work has

16  been done in this case and there is no threat Plaintiffs will receive any future messages.  Third,

17  staying the case will conserve the resources of the Court and the parties, and avoid the risk of a

18  ruling by this Court on the meaning of ATDS that turns out to be inconsistent with the Supreme

19  Court's later ruling.

20       In addition, or in the alternative, the Court should stay this action pending the FCC's ruling

21  on ATDS under the so-called "primary jurisdiction doctrine," under which a court can stay an

22  action pending a decision by an administrative agency which has the authority to decide such

23  regulatory issues.  The FCC has such authority under the TCPA.

24       Accordingly, the Court should stay this action pending the Supreme Court's decision

25  and/or the FCC's ruling defining ATDS, whichever comes first.

26

27

28

## II.   <u>BACKGROUND</u>

**A.   Plaintiffs Allege Square Sent Them Text Messages via ATDS**

Plaintiffs' core allegation is that Square sent them text messages via an ATDS without sufficient prior express consent in violation of the TCPA.  Based on that allegation, Plaintiffs seek statutory penalties of at least $500 for each text message sent via ATDS on behalf of themselves and a putative nationwide class.  Compl. ¶¶ 133-135.

Plaintiff Aleisa alleges that, on July 28, 2018, he visited Samovar Teahouse Café ("Samovar") in San Francisco.  *Id.* ¶ 58.  After using his credit card on Square's point-of-sale ("POS") system to make his purchase, he was invited to join Samovar's loyalty program.  *Id.* ¶ 60.  When Plaintiff signed up for Samovar's loyalty program, he had an opportunity to provide his phone number.  *Id.*  Before providing his phone number, Plaintiff alleges he saw the following written disclosure: "by providing your contact information, you agree businesses you frequent may send you digital receipts, marketing and messages via Square."  *See id.* ¶ 45; *Id.* at Figure 5.  Plaintiff Aleisa had the option of either providing his phone number, his email address, or pressing "No Thanks," and not providing any contact information.  *Id.*  Plaintiff decided to provide his phone number.  *Id.*  Soon after, Plaintiff claims he received a text message via ATDS stating that he earned a "loyalty star" from Samovar because of his purchase, which he could accumulate toward free products.  *Id.* ¶ 61.  Plaintiff Aleisa also claims he later received three other text messages via ATDS following purchases at other food and beverage retailers.  *Id.* ¶¶ 65, 69, 71-73.

Plaintiff Belluomini alleges that, on May 12, 2017, she visited Taste Kitchen & Table ("Taste") in Fairfax, California.  *Id.* ¶ 81.  She, like Aleisa, alleges that she made a purchase at Taste using Square's POS system.  *Id.*  Belluomini alleges "on information and belief," that she did not provide her phone number as part of this transaction.  *Id.* ¶ 83.  She alleges that she then received a text message via ATDS.[1]  *Id.* ¶¶ 84-85.

---

[1] In its separately filed motion to dismiss for lack of subject matter jurisdiction, Square demonstrates how Plaintiff Belluomini agreed to – and, in fact, requested – the one text message she received.

1   While plaintiffs are somewhat loose in how they state their claims—sometimes using the

2   word "automated" interchangeably with "ATDS"—their TCPA claims are all premised on

3   receiving text messages via an ATDS without consent following purchases made at merchants

4   who use Square's POS system and a contention that the platform that sent the text messages at

5   issue is an ATDS under the TCPA.  *Id.* ¶¶ 53, 61, 65, 69, 71-73, 76-77, 84-95.

6   Square contends, among other defenses, that:  (1) the messages were not sent via ATDS;

7   (2) Square did not send or "make" the text messages here; and (3) there was sufficient prior

8   express written consent for each message sent.

9   **B.    Procedural Background**

10  On February 3, 2020, Plaintiffs filed a Complaint against Square, alleging two claims

11  under the TCPA.  In response, on April 17, 2020, Square filed a motion to dismiss for lack of

12  subject matter jurisdiction.  ECF No. 23.  Subsequently, on May 11, 2020, Square filed a motion

13  to stay pending the FCC's definition of ATDS.  ECF No. 25.

14  In light of the Supreme Court's grant of *certiorari* in *Facebook, Inc. v. Duguid* on July 9,

15  2020, the parties stipulated in part that Square would file an amended motion to stay by August 7,

16  2020.  ECF No. 34.  At the time Square submitted the initial motion to stay, Square expected the

17  FCC to issue its ruling defining ATDS sometime by the end of 2020.  However, now that the

18  Supreme Court has granted certiorari in *Duguid*, Square now expects the FCC will likely wait to

19  issue its own ruling until after the Supreme Court addresses the issue.  Thus, Square now requests

20  that the Court stay this action pending the Supreme Court's decision in *Duguid* and/or pending the

21  FCC's decision, whichever comes first.

22  **III.    THE LEGAL STANDARD**

23  As "the Supreme Court explained in *Landis v. North American Co.*, 299 U.S. 248, 57 S.

24  Ct. 163, 81 L. Ed. 153 (1936), a district court possesses the inherent power to control its docket

25  and promote efficient use of judicial resources by staying proceedings."  *United States v. Garcia-*

26  *Gomez*, 2019 WL 331279, at *1 (N.D. Cal. Jan. 25, 2019) (Chen, J.) (internal quotations omitted).

27  "To determine whether a *Landis* stay should be implemented, courts consider: (1) the possible

28  damage which may result from the granting of a stay, (2) the hardship or inequity which a party

may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (internal quotations omitted).

In addition, "[t]he primary jurisdiction doctrine allows courts to stay proceedings . . . pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). In determining whether primary jurisdiction applies, "courts have traditionally examined the following factors, (1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Swearingen v. Late July Snacks LLC*, 2014 WL 2215878, at *2 (N.D. Cal. May 29, 2014) (Chen, J.) (internal quotations omitted). "District Courts have the discretion to either stay or dismiss an action without prejudice under the primary jurisdiction doctrine." *Id.* at *3.[2]

## IV.   THE COURT SHOULD STAY THIS ACTION PENDING CONTROLLING DEFINITION OF ATDS

### A.   The Relevant Legal History Behind the TCPA and ATDS Requirement

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) *using an automatic telephone dialing system*; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (emphasis added). The TCPA defines an ATDS as "equipment which has the capacity—(A) *to store* or *produce telephone numbers to be called, using a random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphases added). The TCPA provides that

---

[2] *See also Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1039 (N.D. Cal. 2013) (Chen, J.) (describing the primary jurisdiction doctrine but declining to apply it because Wells Fargo was not asking to refer the TILA and RESPA claims to a federal agency with power to regulate those claims); *Sciortino v. Pepsico*, 108 F. Supp. 3d 780 (N.D. Cal. 2015) (Chen, J.) (describing the primary jurisdiction doctrine but declining to apply it because the plaintiffs' state false advertising claims did not clearly fall within the labeling jurisdiction of the FDA). In contrast here, the FCC clearly has jurisdiction to define ATDS under the TCPA.

1  the FCC has authority to prescribe regulations and issue rulings under the TCPA.   47 U.S.C.

2  § 227(b)(2); 47 C.F.R. § 1.2(a).

3          1.       *In 2018, the D.C. Circuit set aside the FCC's interpretation of ATDS*

4         In July 2015, the FCC issued a declaratory ruling expansively defining ATDS.  *In the*

5  *Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd.

6  7961 (July 10, 2015) ("2015 Order").  In its 2015 Order, the FCC ruled that the TCPA's definition

7  of ATDS included any equipment with the *potential* capacity to generate random or sequential

8  telephone numbers – "even if it is not presently used for that purpose, including when the caller is

9  calling a set list of consumers."  *Id.* at 7971-72 ¶ 10.  On March 16, 2018, the D.C. Circuit issued

10  an opinion setting aside the FCC's definition of ATDS as overbroad.  *ACA International v. FCC*,

11  885 F.3d 687, 692 (D.C. Cir. 2018).

12          2.       *After ACA International, Circuit Courts have split on defining ATDS*

13         After *ACA International*, and in the vacuum of FCC rulemaking defining what qualifies as

14  an ATDS, many Circuit Courts have issued their own interpretations of ATDS.  The Third,

15  Seventh, and Eleventh Circuits have issued narrow interpretations, holding that "to be an auto-

16  dialer, the equipment must (1) store telephone numbers using a random or sequential number

17  generator and dial them or (2) produce such numbers using a random or sequential number

18  generator and dial them."  *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir.

19  2020); *see Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. 2020) (dialing numbers

20  from a customer database is not ATDS because such numbers have not "been generated using a

21  random or sequential number generator"); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir.

22  2018) (finding that functionality of ATDS is "randomly or sequentially generating telephone

23  numbers, and dialing those numbers"); *see also Suttles v. Facebook, Inc.*, 2020 WL 2763383, at *5

24  (W.D. Tex. May 20, 2020) ("an ATDS must either have the capacity to store telephone numbers to

25  be called using a random or sequential number generator or produce telephone numbers to be

26  called using a random or sequential number generator.").

27         Under this definition adopted by the Third, Seventh, and Eleventh Circuits, the equipment

28  used to send the loyalty text messages to customers here is not ATDS because, even as alleged in

Case No. 3:20-cv-00806-EMC

SQUARE'S MOTION TO STAY PENDING DECISION BY
THE SUPREME COURT AND/OR THE FCC DEFINING ATDS

1   the Complaint, the messages were sent only to specific customers immediately following their

2   transactions, and were not sent randomly or sequentially.

3       While the "random or sequential" requirement is the most natural and proper reading of the

4   statute, it has not prevailed in the Ninth, Second, and Sixth Circuits.  Specifically, the Ninth

5   Circuit has held that the term ATDS means "equipment which has the capacity—(1) to store

6   numbers to be called or (2) to produce numbers to be called, using a random or sequential number

7   generator—and to dial such numbers automatically."  *Marks*, 904 F.3d at 1053; *see also Duran v.*

8   *La Boom Disco, Inc.*, 955 F.3d 279, 280 (2d Cir. 2020) (same); *Allan v. Pennsylvania Higher*

9   *Educ. Assistance Agency*, __ F.3d __, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020) (same);

10  *Duguid*, 926 F.3d at 1151 (reaffirming *Marks*).  The Ninth Circuit concluded that the statutory

11  definition of an ATDS "includes a device that stores telephone numbers to be called, whether or

12  not those numbers have been generated by a random or sequential number generator."  *Marks*, 904

13  F.3d at 1043

14      In *Duguid*, the plaintiff alleged that Facebook violated the TCPA by sending text messages

15  using an ATDS.  926 F.3d at 1149.  The plaintiff alleged that "Facebook maintained a database of

16  phone numbers and—using a template and coding that automatically supplied the browser

17  information and time of access—programmed its equipment to send automated messages to those

18  numbers."  *Id.* at 1150.  The district court concluded that Facebook's platform was not an ATDS

19  because the system, as alleged, involved direct targeting, which is inconsistent with the random or

20  sequential number generation required by the statutory text of the TCPA.  *Duguid v. Facebook,*

21  *Inc.*, 2017 WL 635117, at *5 (N.D. Cal. Feb. 16, 2017).  The Ninth Circuit reversed.  It reiterated

22  its decision in *Marks* that "an ATDS need not be able to use a random or sequential generator to

23  store numbers."  The court explained that "it suffices to merely have the capacity to 'store

24  numbers to be called' and 'to dial such numbers automatically.'"  *Duguid*, 926 F.3d at 1151.

25      3.      The FCC is redefining ATDS in light of *ACA International* and *Marks*

26      Following *ACA International*, on May 14, 2018, the FCC released a Public Notice seeking

27  comments on what constitutes ATDS.  *See* Yun Decl., Ex. A (May 2018 FCC Public Notice, at 1–

28  3 and n.23., and Ex. B (May 2018 Petition, at 27).  On October 3, 2018, in response to the Ninth

1   Circuit's decision in *Marks*, the FCC released another Public Notice, seeking additional comments

2   on what constitutes an ATDS.  *See* Yun Decl., Ex. C (*Marks* Public Notice).  Comments were

3   submitted in 2018.  *Id.* at p. 1.  On February 5, 2020, nineteen organizations collectively submitted

4   an *ex parte* letter to the FCC urging it to "clarify expeditiously" the TCPA's definition of ATDS

5   by acting on the May 2018 Petition.  Yun Decl., Ex. D.  After considering these comments, the

6   FCC will likely issue its new rule defining ATDS soon.  *See*, *e.g.*, *Barnes v. CS Mktg. LLC*, 430 F.

7   Supp. 3d 1309, 1313 (S.D. Fla. Jan. 2, 2020) (staying TCPA case pending FCC's decision on

8   ATDS and noting that the "period for public comment on the issue has closed the FCC ruling on

9   the interpretation of the definition of ATDS is expected to be forthcoming.").

10          4.      The Supreme Court grants certiorari in *Facebook, Inc. v. Duguid*

11          On July 9, 2020, the Supreme Court granted certiorari with respect to the issue of

12   "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and

13   'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential

14   number generator.'"  *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252 (U.S. July 9,

15   2020); Yun Decl., Exs. F-G.  The Supreme Court's decision, which is expected in the first half of

16   2021, should resolve the split in authority and provide a uniform definition of ATDS.  It is

17   possible that the FCC will now wait for the Supreme Court to rule first.

18   **B.     This Case Should Be Stayed Pursuant to the Court's Inherent Power Pending the**

19          **Supreme Court's Decision in *Duguid***

20          The Court should grant a stay under its inherent powers pending the Supreme Court's

21   decision in *Duguid*.  To make this determination, the Court should consider: "(1) 'the possible

22   damage which may result from the granting of a stay,' (2) 'the hardship or inequity which a party

23   may suffer in being required to go forward,' and (3) 'the orderly course of justice measured in

24   terms of the simplifying or complicating of issues, proof, and questions of law which could be

25   expected to result from a stay.'"  *Garcia-Gomez*, 2019 WL 331279, at *1 (quoting *CMAX, Inc. v.*

26   *Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

27

28

1.       *A stay will simplify the issues in this case and potentially dispose of the TCPA claims against Square*

"The exercise of discretion [staying a case] is appropriate when the resolution of another matter will have a direct impact on the issues before the court, substantially simplifying issues presented." *In re Sequenom, Inc. Stockholder Litig.*, 2019 WL 1200091, at *1 (S.D. Cal. Mar. 13, 2019). "Efficiency and simplification resulting from the abatement of a federal action may weigh in favor of a stay." *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571, at *3 (N.D. Cal. June 17, 2014) (Davila, J.); *Garcia-Gomez*, 2019 WL 331279, at *2 (finding the third *Landis* factor favored a stay where there was circuit split on whether the terms in a statute were unconstitutionally vague; noting that the issues "will likely be simplified" by decisions from the Supreme Court and the Ninth Circuit).

Indeed, many district courts recently stayed TCPA cases pending a decision by the Supreme Court in *Barr v. Am. Ass'n of Political Consultants Inc.*, 140 S. Ct. 2335 (2020), which tested the constitutionality of the TCPA. *See e.g., Nakai v. Charter Communs., Inc.*, 2020 WL 1908949, at *6 (C.D. Cal. Apr. 15, 2020) (staying action pending the Supreme Court's decision in *Barr*); *Seefeldt v. Entm't Consulting Int'l*, 441 F. Supp. 3d 775, 779 (E.D. Mo. Feb. 25, 2020) (same); *Loftus v. Signpost Inc.*, No. 19-7984 (JGK), ---F. Supp. 3d---, 2020 WL 2848231, at *3 (S.D.N.Y. June 2, 2020) (same); *Whittaker v. All Reverse Mortg., Inc.*, 20 WL 2829785, at *2 (D. Ariz. May 29, 2020) (same); *Lacy v. Comcast Cable Communs., LLC*, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (same); *Boger v. Citrix Sys.*, 2020 WL 1939702, at *4 (D. Md. Apr. 22, 2020) (same); *Wright v. Exp Realty, LLC*, 2020 WL 1149906, at *1 (M.D. Fla. Feb. 7, 2020) (same).

Given how central the question of what ATDS is to a TCPA case, multiple courts have even suggested or invited motions to stay if the Supreme Court were to grant *certiorari* in *Duguid*. *See e.g. Calhoun v. FLRish, Inc.*, 2020 U.S. Dist. LEXIS 84485, at *6-7 (N.D. Cal. May 13, 2020) (Spero, J.) (inviting the defendant to "renew its motion [to stay] as to [*Duguid*] if the Supreme Court both grants certiorari in *Duguid* and resolves *[Barr]* in a manner that allows [the plaintiff's] ATDS claim to proceed."); *Seefeldt*, 441 F. Supp. 3d at 778-79 (noting that the "best approach is

to wait for much-needed clarity from the Supreme Court" at least as to *Barr* and "potentially the definitional problem" re ATDS in the event that the Supreme Court takes it up on review in *Duguid*); *A.M. v. Bridgecrest Acceptance Corp.*, 2020 WL 3489280, at *3 (E.D. Mo. June 26, 2020) (noting that "that *were* the Supreme Court to grant certiorari in [*Duguid v.*] *Facebook*, there might be good reason to stay this case pending resolution of that one.").

Further, many district courts have previously stayed TCPA cases pending controlling decisions about the meaning of ATDS by higher courts.  *See*, *e.g.*, *Salehi v. Bluestem Brands, Inc.*, 2016 WL 10459422, at *2 (S.D. Cal. Aug. 9, 2016) (staying TCPA case pending decision by the D.C. Circuit in *ACA International* on the meaning of ATDS); *Ambrezewicz v. LeadPoint, Inc.*, 2017 WL 8185862, at *4 (C.D. Cal. May 8, 2017) (same, and ruling that "granting a stay would clarify the law to conserve judicial resources and avoid duplicative proceedings."); *Errington v. Time Warner Cable Inc.*, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (staying TCPA case pending decision by the D.C. Circuit in *ACA International* on the meaning of ATDS); *Small v. GE Capital, Inc.*, 2016 WL 4502460, at *3 (C.D. Cal. June 9, 2016) (same).

Moreover, district courts have routinely stayed cases pending a Supreme Court decision that would have an important impact on the case.  *See*, *e.g.*, *Robledo v. Randstad US, L.P.*, 2017 WL 4934205, at *4 (N.D. Cal. Nov. 1, 2017) (Freeman, J.) (staying case pending the Supreme Court's decision in *Morris* because "the outcome of Morris will have a significant bearing on [defendant]'s motion to compel arbitration."); *Hughes v. S.A.W. Entm't, LTD*, 2017 WL 6450485, at *8 (N.D. Cal. Dec. 18, 2017) (Beeler, J.) (same, and stating "[i]t would be far simpler for the court to address the arbitration question and, if necessary, the remainder of these cases, after the Supreme Court issues its *Morris* decision and clarifies the law surround arbitration provisions in putative class actions."); *Matera v. Google Inc.*, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) (Koh, J.) (staying case pending the Supreme Court's decision in *Spokeo* because it "is likely to be instructive in this case"); *Larroque v. First Advantage Lns Screening Sols., Inc.*, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4, 2016) (Corley J.) (similar); *Patel v. Trans Union, LLC*, 2015 WL 13657182, at *2 (N.D. Cal. Sept. 3, 2015) (Beeler, J.) (similar).

1    As discussed above, Plaintiffs must prove that the text messaging platform here, which

2    allowed Plaintiffs to initiate text messages to themselves through a Square device after entering

3    their phone numbers, is an ATDS, otherwise, their claim fails.  To that end, Plaintiffs allege that

4    the telephone equipment used to transmit the text messages targets phone numbers from a stored

5    list (Compl. ¶¶ 10-18), not that the equipment has the capacity to store or produce numbers to be

6    called "using a random or sequential number generator."  47 U.S.C. § 227(a)(1).  Thus, the

7    Complaint could only proceed under the Ninth Circuit's broader ATDS standard, and should be

8    subject to dismissal with prejudice if the Supreme Court agrees with the Third, Seventh, and

9    Eleventh Circuits in finding that an ATDS must actually have the statutorily required "random or

10   sequential" capacity.  Any liability will therefore turn on the precise issue the Supreme Court will

11   decide, i.e. whether an ATDS requires random or sequential number generation.  The Supreme

12   Court's anticipated ruling on the meaning of ATDS will provide much needed clarification and

13   resolve the circuit split.  Moreover, it will directly impact the adjudication of this case and will at

14   least narrow the issues and provide controlling authority for this Court.  Accordingly, a stay will

15   simplify the issues in this case, and this factor weighs in favor of a stay.

16       2.    *A brief stay will not cause significant risk or prejudice*

17   A stay will not cause any significant risk or prejudice to Plaintiffs.  First, "very little

18   substantive work has been done in this case . . . there are no immediately pressing deadlines or

19   trial dates."  *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 2015 WL 1006582, at *2 (N.D. Cal. Mar.

20   6, 2015) (Chen, J.).  The pleadings are not yet, and, as ordered by the Court (ECF No. 29), only

21   preliminary discovery is underway.  Thus, "very little substantive work has been done in this case,

22   and there are no immediately pressing deadlines or trial dates."  *Id.*

23   The Supreme Court has already granted review in *Duguid* and it will likely be decided in

24   the Court's next term in the first half of 2021.  Thus, a stay here will likely be brief.  *See Stone v.*

25   *Sterling Infosystems, Inc.*, 2015 WL 4602968, at *2 (E.D. Cal. July 29, 2015) (finding that "the

26   risk of prejudice from delaying a decision on this case for one year is low" as "the Supreme Court

27   will decide [the relevant case] within the next twelve months per the Supreme Court's customary

28   practice."); *Larson v. Trans Union, LLC*, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015)

-13-

1   (finding a stay warranted where "[t]he Supreme Court [was] likely to issue a decision in the

2   [relevant] case within one year").

3          Moreover, Plaintiffs have not suggested any need for immediate relief, or that any serious

4   harm would arise from a brief stay.  Indeed, any delay in receiving a monetary penalty is not

5   sufficient to deny a stay.  *See, e.g.*, *Nguyen v. Marketsource, Inc.*, 2018 WL 2182633, at *6 (S.D.

6   Cal. May 11, 2018) (finding the plaintiff will not be harmed by a stay pending a decision by the

7   Supreme Court as plaintiff "seeks monetary damages in the form of unpaid wages and

8   reimbursements and will therefore not be unduly prejudiced or harmed by a delay in receiving

9   monetary relief."); *Arris Sols., Inc. v. Sony Interactive Entm't LLC*, 2017 WL 4536415, at *2

10  (N.D. Cal. Oct. 10, 2017) (issuing a stay and holding that plaintiff could not "in good faith" argue

11  harm "because only monetary damages, as opposed to injunctive relief, are at issue."); *Bay*

12  *AreaSurgical Grp., Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014)

13  ("A delay in compensation for past harms does not equate to a strong showing of prejudice."

14  (citing *CMAX, Inc.*, 300 F.2d at 268-69)).  This is especially true here where Plaintiffs have not

15  suffered any actual monetary loss or injury but merely seek statutory penalties.  Nor can Plaintiffs

16  claim any harm by the threat of any future messages.  Since filing suit, Plaintiffs have not and will

17  not receive any additional messages.  They cannot show otherwise.

18         Accordingly, a brief stay will not cause any prejudice to Plaintiffs here, and this factor also

19  weighs in favor of a stay.

20         3.       *The balance of hardships favor a stay*

21         "In the absence of a stay, the parties will have to expend time and money conducting

22  discovery on an issue central to Defendant's liability [i.e. what constitutes an ATDS] while

23  lacking a clear idea of the law that will ultimately apply at summary judgment or at trial."

24  *Ambrezewicz*, 2017 WL 8185862, at *4; *see also Nguyen*, 2018 WL 2182633, at *6 (finding the

25  balance of hardships weigh in favor of a stay as parties "would have to engage in collective and

26  class action discovery, which would be a waste of time and resources pending the outcome of" the

27  Supreme Court's decision); *Cook v. Rent-A-Ctr., Inc.*, 2017 WL 4270203, at *4 (E.D. Cal. Sept.

28  26, 2017) ("Requiring the parties to go forward with litigation given the uncertainty [of how the

-14-

1   Supreme Court will rule] would waste the time and resources of both the parties and the Court.");

2   *Stone*, 2015 WL 4602968, at *2 (similar).

3        The Supreme Court will decide the precise issue of what constitutes an ATDS, which

4   would directly affect any merits determination in this case.  Going forward with this case now

5   would require extensive discovery and motion practice, attorneys' fees and costs, and judicial

6   resources.  Indeed, the parties and the Court "would all face the risk of dedicating substantial

7   resources to proceedings that may ultimately prove unnecessary."  *Larson*, 2015 WL 3945052, at

8   *8; *see also Tuan Vo v. LoanMe, Inc*., 2017 WL 8230897, at *2 (C.D. Cal. July 24, 2017) ("The

9   Supreme Court's resolution of the circuit split over the issue here may end up conserving

10  resources for both the Court and the parties.  Particularly in this case, which is still at the pleading

11  stage.").  Indeed, Square should not be required to "defend a large putative class action—engaging

12  in expansive discovery and possibly class certification briefing—that may be rendered moot and

13  unnecessary within" a few months.  *Larroque*, 2016 WL 39787, at *2.

14       Accordingly, the balance of hardships and judicial economy favor a stay.

15  **C.**    **In Addition, Or In The Alternative, This Case Should Be Stayed Under the Primary**

16           **Jurisdiction Doctrine Pending the FCC's Definition of ATDS**

17       The primary jurisdiction doctrine is appropriately invoked when there is: "(1) [a] need to

18  resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative

19  body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

20  comprehensive regulatory authority that (4) requires expertise or uniformity in administration[.]"

21  *Clark,* 523 F.3d at 1115.  Each factor here favors staying this action pending the FCC's ruling.

22           *1.      The FCC's ruling will directly affect Plaintiffs' claims*

23       The first factor—a "need to resolve an issue"—weighs in favor of staying this proceeding

24  under the primary jurisdiction doctrine.  As explained above, to prevail on their TCPA claim,

25  Plaintiffs must prove that Square used an ATDS to send the text messages at issue.  *Meyer*, 707

26  F.3d at 1043 (noting that an element of a TCPA claim includes "using an automatic telephone

27  dialing system [ATDS]").  Thus, the FCC's anticipated ruling on the meaning of ATDS will

28  significantly impact the adjudication of this case.

1    Indeed, many district courts have previously stayed TCPA cases pending decisions by the

2    FCC.  *See*, *e.g.*, *Barnes*, 430 F. Supp. 3d at 1313 (granting a motion to stay pending the FCC's

3    decision regarding the interpretation of an ATDS post-*ACA International*); *Secure v. Ultimate*

4    *Fitness Grp., LLC*, 2019 WL 1612623, at *1 (S.D. Fla. Mar. 18, 2019) (granting a stay post-*ACA*

5    *International* on the grounds that "the FCC is currently seeking public comment and reconsidering

6    the definition of ATDS"); *Glauser v. Twilio, Inc.*, 2012 WL 259426, at *3 (N.D. Cal. Jan. 27,

7    2012) (Hamilton, J.) (staying TCPA case because "the benefit to be provided by FCC guidance on

8    potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the

9    action to proceed"); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, 2014

10   WL 12603110, at *3 (S.D. Cal. May 20, 2014) (staying a TCPA case because "the benefit of FCC

11   guidance necessitates a stay of this action pending the FCC's resolution of the issues presently

12   before it.").

13   Though the Ninth Circuit has issued its own definition of ATDS, it will defer to any new

14   definition by the FCC.  *See Marks*, 904 F. 3d at 1045-1047 (relying heavily on prior FCC

15   definitions of ATDS and implying that the FCC's definition controls); *Satterfield*, 569 F.3d at 953

16   (holding that the FCC's interpretation of the TCPA "has the force of law and is therefore entitled

17   to *Chevron* deference").  Under these circumstances, "allowing the FCC to resolve the foregoing

18   issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the

19   FCC's guidance, is appropriate." *Glauser*, 2012 WL 259426, at *3 (staying case because "the

20   benefit to be provided by FCC guidance on potentially dispositive issues in this litigation

21   outweighs the benefit to plaintiff in allowing the action to proceed").

22   Accordingly, given that the FCC is considering a core issue that is likely dispositive of this

23   litigation, the first primary-jurisdiction consideration militates strongly in favor of a stay.

24       2.    *The FCC has jurisdiction to interpret, administer, and regulate the TCPA*

25   The second factor—whether the issue is "within the jurisdiction of an administrative body

26   having regulatory authority"—also weighs in favor of a stay because the FCC has primary

27   jurisdiction over the TCPA technical specifications, including the meaning of ATDS.  *Clark*, 523

28   F.3d at 1115; 47 U.S.C. § 227(b)(2); 47 C.F.R. § 1.2(a).  "Congress vested the FCC with

-16-

SQUARE'S MOTION TO STAY PENDING DECISION BY
THE SUPREME COURT AND/OR THE FCC DEFINING ATDS

considerable authority to implement the Telephone Act. The Act gives the agency power to 'prescribe regulations to implement' the legislation." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010). "In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the Telephone Act[.]" *Id.* This includes the power to construe the meaning of ATDS. *See Glauser*, 2012 WL 259426, at *2 (noting that the issue of what "qualifies as an auto-dialer" is "within the jurisdiction of the FCC" and thus staying TCPA action pending the FCC's resolution of what "qualifies as an auto-dialer"). Accordingly, this second factor weighs in favor of a stay under the primary jurisdiction doctrine.

   3.   *The TCPA imposes a comprehensive regulatory scheme administered by the FCC*

   The third factor—whether the TCPA imposes a comprehensive regulatory scheme—also weighs in favor of a stay. *Clark*, 523 F.3d at 1115. "Congress granted the FCC the authority to promulgate regulations to implement the TCPA." *Gusman v. Comcast Corp.*, 2014 WL 2115472, at *3 (S.D. Cal. May 21, 2014) (citing 47 U.S.C. § 227(b)(2)). "The FCC has regulatory authority that subjects the 'industry to a comprehensive regulatory scheme that requires expertise or uniformity in administration.'" *Id.* (quoting *Matlock v. United Healthcare*, 2014 WL 1155541, at *2 (E.D. Cal. Mar. 20, 2014)); *see also Bondhus v. Henry Schein, Inc.*, No 2015 WL 1968841, at *3 (S.D. Fla. Apr. 30, 2015) (noting the TCPA and the FCC's implementing regulations constitute "comprehensive regulatory schemes governing the use of automated telephone and facsimile equipment."). The TCPA contains a complex scheme governing automated calls/texts, and the FCC has promulgated extensive rules, regulations, and declaratory rulings interpreting and enforcing the statute. *Id.* The issue of what type of equipment constitues an ATDS under the TCPA falls squarely within this comprehensive regulatory scheme. *Id.* Given the comprehensive regulatory scheme, the third primary jurisdiction factor also weighs in favor of staying this case.

   4.   *The FCC is the expert agency charged with defining ATDS*

   The fourth factor—whether the matter at issue requires expertise or uniformity in administration—also weighs in favor of a stay. *Clark*, 523 F.3d at 1115. In particular, technical questions like what type of equipment constitutes an ATDS are "clearly within the FCC's precise field of expertise and discretion and outside of the conventional experience of the Court." *Stewart*

*v. T-Mobile USA, Inc.*, 2014 WL 12614418, at *4 (D.S.C. Oct. 8, 2014) (stating resolution of plaintiff's TCPA claim "would require interpreting and considering technical terms and industry policies" which "turn on the 1991 Act and its implementing regulations, all of which come within the bailiwick of the FCC"); *In re Portfolio Recovery Associates, LLC*, 2014 WL 12603110, at *3 (concluding that determining the meaning of "capacity" as applied to an ATDS "is not within the conventional experience of judges but, instead involves technical or policy considerations within the FCC's particular field of expertise, and a substantial danger of inconsistent rulings exist if a stay is not implemented."); *Sprint Commc'ns Co., L.P. v. Ntelos Tel. Inc.*, 2012 WL 3255592, at *15 (W.D. Va. Aug. 7, 2012) ("Such 'technical considerations are best resolved, in the first instance, by the FCC, the agency with both the expertise in these technical issues and the mandate to elucidate and implement the [TCPA].'").  As these cases also demonstrate, the last time the FCC considered the definition of ATDS, resulting in the FCC's 2015 definition, many courts stayed their TCPA cases pending that decision.

A stay is particularly appropriate where, like here, a "matter that is not only within the expertise and authority of the agency, [bu]t is before the agency at this moment."  *See Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941 (N.D. Cal. 2014) (Rogers, J.) (dismissing case under the primary jurisdiction doctrine where the FDA had issued notice and solicited comments regarding regulation of certain terms; noting the FDA's position on the term "is not only . . . 'not settled,' it is also under active consideration by the FDA."); *Barrera v. Comcast Holdings Corp.*, 2014 WL 1942829, at *3 (N.D. Cal. May 12, 2014) (Henderson, J.) ("Congress has placed the interpretation and enforcement of the TCPA's provisions within the primary jurisdiction of the FCC, and a stay of this case would promote uniformity in the administration of the TCPA because a central issue presented in this case . . . is already under submission before the FCC . . ."); *Clark*, 523 F.3d at 1115 (noting that "the FCC's Notice of Proposed Rulemaking demonstrates that the agency is actively considering how it will regulate VoIP services and that the agency's development of a uniform regulatory framework to confront this emerging technology is important to federal telecommunications policy."); *In re Portfolio Recovery Associates, LLC*, 2014 WL 12603110, at *3 ("the FCC is in the process of utilizing its recognized expertise in considering issues currently

1    pending before this Court, thereby satisfying the prerequisites for application of the primary

2    jurisdiction doctrine.").

3          Here, interpreting and analyzing such technical matters is within the expertise and

4    authority of the FCC.  Further, the FCC has publicly and explicitly expressed a desire to address

5    the meaning of ATDS.  In fact, this matter is currently before the FCC.  The May 2018 Petition,

6    which asks the FCC to clarify its interpretation of ATDS in light of *ACA International*, is still

7    pending.  Moreover, the FCC has issued, not one—but *two*—Public Notices requesting comments

8    on what constitutes an ATDS.  Thus, the fourth factor also favors a stay under the primary

9    jurisdiction doctrine.  Because all four primary jurisdiction factors weigh heavily in favor of a

10   stay, the Court should stay these proceedings pending a decision by the FCC on the meaning of

11   ATDS.

12                   **V.**     **CONCLUSION**

13          For these reasons, Square respectfully requests that the Court grant its motion to stay these

14   proceedings pending the Supreme Court's decision in *Duguid* and/or FCC's definition of ATDS.

15

16   Dated: August 7, 2020

17                      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

18                   By

19                               */s/Lisa S. Yun*

                              SHANNON Z. PETERSEN

20                               LISA S. YUN

                              SIEUN J. LEE

21                         Attorneys for Defendant

                            SQUARE, INC.

22

23

24

25

26

27

28