# EXHIBIT A



# PUBLIC NOTICE

**Federal Communications Commission**
445 12th St., S.W.
Washington, D.C. 20554

News Media Information 202 / 418-0500
Internet: https://www.fcc.gov
TTY: 1-888-835-5322

**DA 18-493**
**Released: May 14, 2018**

## CONSUMER AND GOVERNMENTAL AFFAIRS BUREAU SEEKS COMMENT ON INTERPRETATION OF THE TELEPHONE CONSUMER PROTECTION ACT IN LIGHT OF THE D.C. CIRCUIT'S ACA INTERNATIONAL DECISION

**CG Docket No. 18-152**
**CG Docket No. 02-278**

**Comment Date: June 13, 2018**
**Reply Comment Date: June 28, 2018**

With this Public Notice, we seek comment on several issues related to interpretation and implementation of the Telephone Consumer Protection Act (TCPA),[1] following the recent decision of the U.S. Court of Appeals for the District of Columbia in *ACA International v. FCC*.[2]

*First*, we seek comment on what constitutes an "automatic telephone dialing system."[3]  The TCPA defines an automatic telephone dialing system as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[4]  The Commission had interpreted the term "capacity" to include a device "even if, for example, it requires the addition of software to actually perform the functions described in the definition"[5]—"an expansive interpretation of 'capacity' having the apparent effect of embracing any and all smartphones."[6]  The court set aside this interpretation, finding the agency's "capacious understanding

---

[1] The TCPA is codified at 47 U.S.C. § 227.  The Commission's implementing rules are codified at 47 CFR § 64.1200.

[2] *ACA Int'l, et al. v. FCC*, 885 F.3d 687 (D.C. Cir. 2018) (mandate issued May 8, 2018) (affirming in part and vacating in part *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961 (2015) (*2015 TCPA Declaratory Ruling and Order*)).

[3] *See* 47 U.S.C. § 227(a)(1); 47 CFR § 64.1200(a)(1).  The Commission's rules also use the term "autodialer," which we have defined as synonymous with an automatic telephone dialing system.  *See* 47 CFR § 64.1200(f)(2).

[4] 47 U.S.C. § 227(a)(1) (emphasis added).

[5] *2015 TCPA Declaratory Ruling and Order*, 30 FCC Rcd at 7975, para. 18.

[6] *ACA Int'l*, 885 F.3d at 696.

of a device's 'capacity' lies considerably beyond the agency's zone of delegated authority."[7]

We seek comment on how to interpret "capacity" in light of the court's guidance. For example, how much user effort should be required to enable the device to function as an automatic telephone dialing system? Does equipment have the capacity if it requires the simple flipping of a switch? If the addition of software can give it the requisite functionality? If it requires essentially a top-to-bottom reconstruction of the equipment? In answering that question, what kinds (and how broad a swath) of telephone equipment might then be deemed to qualify as an automatic telephone dialing system?[8] Notably, in light of the court's guidance that the Commission's prior interpretation had an "eye-popping sweep,"[9] we seek comment on how to more narrowly interpret the word "capacity" to better comport with the congressional findings and the intended reach of the statute.[10]

We seek further comment on the functions a device must be able to perform to qualify as an automatic telephone dialing system. Again, the TCPA defines an "*automatic* telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial *such numbers*."[11] Regarding the term "automatic," the Commission explained that the "basic function[]" of an automatic telephone dialing system is to "dial numbers without human intervention"[12] and yet "declined to 'clarify[] that a dialer is not an [automatic telephone dialing system] unless it has the capacity to dial numbers without human intervention.'"[13] As the court put it, "[t]hose side-by-side propositions are difficult to square."[14] The court further noted the Commission said another basic function was to "dial thousands of numbers in a short period of time,"[15] which left parties "in a significant fog of uncertainty" on how to apply that notation.[16] How "automatic" must dialing be for equipment to qualify as an automatic telephone dialing system? Does the word "automatic" "envision non-manual dialing of telephone numbers"?[17] Must such a system dial numbers without human intervention? Must it dial thousands of numbers in a short period of time? If so, what constitutes a short period of time for these purposes?

Regarding the provisions concerning a "random or sequential number generator," the court noted that "the 2015 ruling indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer, [and] it also suggests a competing view: that equipment can meet the statutory definition even if it lacks that capacity."[18] The court explained "the Commission cannot, consistent with reasoned decisionmaking, espouse both competing

---

[7] *ACA Int'l*, 885 F.3d at 698.

[8] *Id.* at 696.

[9] *Id.* at 697.

[10] *Id.* at 698.

[11] 47 U.S.C. § 227(a)(1) (emphasis added).

[12] *2015 TCPA Declaratory Ruling and Order*, 30 FCC Rcd at 7975, para. 17.

[13] *Id.* at 7976, para. 20.

[14] *ACA Int'l*, 885 F.3d at 703.

[15] *2015 TCPA Declaratory Ruling and Order*, 30 FCC Rcd at 7975, para. 17.

[16] *ACA Int'l*, 885 F.3d at 703.

[17] *Id.*

[18] *Id.* at 702.

2

interpretations in the same order."[19]  And so, like the court, we seek comment on "which is it?"  If equipment cannot itself dial random or sequential numbers, can that equipment be an automatic telephone dialing system?

The court also noted that the statute prohibits "mak[ing] any call . . . using any automatic telephone dialing system"[20]—leading to the question "does the bar against 'making any call using' an [automatic telephone dialing system] apply only to calls made using the equipment's [automatic telephone dialing system] functionality?"[21]  We seek comment on this question.  If a caller does not use equipment as an automatic telephone dialing system, does the statutory prohibition apply?  The court also noted that adopting such an interpretation could limit the scope of the statutory bar: "the fact that a smartphone could be configured to function as an autodialer would not matter unless the relevant software in fact were loaded onto the phone and were used to initiate calls or send messages."[22]  Should we adopt this approach?  More broadly, how should we interpret these various statutory provisions in harmony?  We also seek comment on a petition for declaratory ruling filed by the U.S. Chamber Institute for Legal Reform and several other parties, asking the Commission to clarify the definition of "automatic telephone dialing system" in light of the D.C. Circuit's decision.[23]

*Second*, we seek comment on how to treat calls to reassigned wireless numbers under the TCPA.  The statute carves out calls "made with the prior express consent of the called party" from its prohibitions.[24]  The court vacated as arbitrary and capricious the Commission's interpretation of the term "called party," including a one-call safe harbor for callers to detect reassignments,[25] and noted that the Commission "consistently adopted a 'reasonable reliance' approach when interpreting the TCPA's approval of calls based on 'prior express consent.'"[26]  We seek comment on how to interpret the term "called party" for calls to reassigned numbers.[27]  Does the "called party" refer to "the person the caller expected to reach"?  Or does it refer to the party the caller reasonably expected to reach?  Or does it refer to "the person actually reached, the wireless number's present-day subscriber after reassignment"?[28]  Or does it refer to a "'customary user' ('such as a close relative on a subscriber's family calling plan'), rather than . . . the subscriber herself"?[29]  What interpretation best implements the statute in light of the

---

[19] *Id.* at 703; *see also id.* at 702 (explaining that dialing numbers from a set list cannot, by itself, qualify as dialing random or sequential numbers since "[a]nytime phone numbers are dialed from a set list, the database of numbers must be called in some order—either in a random or some other sequence").

[20] 47 U.S.C. § 227(b)(1)(A).

[21] *See ACA Int'l*, 885 F.3d at 704.

[22] *Id.*

[23] U.S. Chamber Institute for Legal Reform *et al.*, Petition for Declaratory Ruling, CG Docket No. 02-278 (filed May 3, 2018).

[24] 47 U.S.C. § 227(b)(1)(A).

[25] *ACA Int'l*, 885 F.3d at 708-09.

[26] *Id.* at 707.

[27] We ask parties to also address the significance of other court rulings on this point.  *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638–42 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250–52 (11th Cir. 2014).

[28] *ACA Int'l*, 885 F.3d at 705.

[29] *Id.* at 707.

decision? Should we maintain our reasonable-reliance approach to prior express consent? Is a reassigned numbers safe harbor necessary, and if so, what is our specific statutory authority for such a safe harbor? May we, consistent with the statute, interpret the term "called party" to mean different things in differing contexts?[30] How should the Commission's proceeding to establish a reassigned numbers database impact our interpretation, if at all?

*Third*, we seek comment on how a called party may revoke prior express consent to receive robocalls. The court found that "a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller."[31] Such a standard, the court made clear, means "callers . . . have no need to train every retail employee on the finer points of revocation" and have "every incentive to avoid TCPA liability by making available clearly-defined and easy-to-use opt-out methods."[32] We seek comment on what opt-out methods would be sufficiently clearly defined and easy to use such that "any effort to sidestep the available methods in favor of idiosyncratic or imaginative revocation requests might well be seen as unreasonable."[33] For example, what opt-out method would be clearly defined and sufficiently easy to use for unwanted calls? Pushing a standardized code (such as "*7")? Saying "stop calling" in response to a live caller? Offering opt-out through a website? For unwanted texts, would a response of "stop" or similar keywords be sufficiently easy to use and clearly defined? What other methods would be sufficient? And must callers offer all or some combination of such methods to qualify?

*Fourth*, in light of the court's decision on several key TCPA issues, we seek renewed comment on two pending petitions for reconsideration of the Commission's *Broadnet Declaratory Ruling*.[34] In the first, National Consumer Law Center asks the Commission to reconsider its interpretation of "person"[35] and clarify that federal government contractors, regardless of their status as common-law agents, are "persons" under the TCPA.[36] In the second, Professional Services Council asks the Commission to reconsider its reliance on common-law agency principles and clarify that contractors acting on behalf of the federal government are not "persons" under the TCPA.[37]

---

[30] *Cf. id.* at 706-07 (noting that although the Commission had interpreted "called party" to mean the "present subscriber," "[f]or that one call [of the safe harbor], the Commission understood the statutory term 'prior express consent' to refer to the consent given by the previous subscriber" or a "wireless number's 'customary user'").

[31] *Id.* at 692.

[32] *Id.* at 709.

[33] *Id.* at 710.

[34] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Broadnet Teleservices LLC Petition for Declaratory Ruling*, CG Docket No. 02-278, Declaratory Ruling, 31 FCC Rcd 7394 (2016) (*Broadnet Declaratory Ruling* or *Broadnet*).

[35] *See* 47 U.S.C. §227(b)(1) (making it unlawful for "any *person* within the United States, or any *person* outside the United States if the recipient is within the United States" to place an autodialed or prerecorded or artificial voice call to a wireless telephone number, except with the prior express consent of the called party or in an emergency, or unless the call is solely to collect a debt owed to or guaranteed by the United States) (emphasis added).

[36] Petition of National Consumer Law Center et al. for Reconsideration of Declaratory Ruling and Request for Stay Pending Reconsideration, CG Docket No. 02-278 (filed July 26, 2016); *Consumer and Governmental Affairs Bureau Seeks Comment on National Consumer Law Center Petition for Reconsideration of the FCC's Broadnet Declaratory Ruling*, CG Docket No. 02-278, Public Notice, 31 FCC Rcd 8725 (2016).

[37] Professional Services Council Petition for Reconsideration, CG Docket No. 02-278 (filed Aug. 4, 2016); *Consumer and Governmental Affairs Bureau Seeks Comment on Professional Services Council Petition for*

4

EXHIBIT A
- 8 -

We seek comment on issues raised in those petitions and whether contractors acting on behalf of federal, state, and local governments are "persons" under the TCPA.[38] While the question of whether contractors acting on behalf of state and local governments are "persons" for purposes of the TCPA is not raised in the pending petitions for reconsideration of the *Broadnet Declaratory Ruling*, the Commission has not addressed these questions.[39] Should it do so now? Are all three levels of government subject to the same legal framework in determining whether they are "persons"? How is a state or local government official, or a contractor making calls on their behalf, legally similar to or different from federal government callers?

*Fifth*, we seek renewed comment on the pending petition for reconsideration of the *2016 Federal Debt Collection Rules*,[40] filed by Great Lakes Higher Education Corp. *et al*.[41] Great Lakes asks the Commission to reconsider several aspects of the rules, including the applicability of the TCPA's limits on calls to reassigned wireless numbers.[42] In light of the court's opinion on reassigned numbers, we seek renewed comment on this and other issues raised by the petition.

We also seek comment on the interplay between the *Broadnet* decision and the Budget Act amendments[43]—if a federal contractor is not a "person" for purposes of the TCPA (as the Commission held in *Broadnet*), would the rules adopted in the *2016 Federal Debt Collection Rules* even apply to a federal contractor collecting a federal debt? Do persons who are not federal contractors collect federal debts? Or does the Budget Act amendment underlying the *2016 Federal Debt Collection Rules* undermine the rationale of *Broadnet*?

Pursuant to sections 1.2 and 1.429 of the Commission's rules,[44] interested parties may file comments and reply comments on or before the dates indicated on the first page of this document. Comments may be filed using the Commission's Electronic Comment Filing System (ECFS). *See Electronic Filing of Documents in Rulemaking Proceedings*, 63 FR 24121 (1998).

---

*Reconsideration of the FCC's Broadnet Declaratory Ruling*, CG Docket No. 02-278, Public Notice, 31 FCC Rcd 8931 (2016).

[38] *See* Petition of Broadnet Teleservices LLC for Declaratory Ruling, CG Docket No. 02-278 (filed Sept. 16, 2015).

[39] *See Broadnet Declaratory Ruling*, 31 FCC Rcd at 7399, para. 11 n.60.

[40] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 31 FCC Rcd 9074 (2016) (*2016 Federal Debt Collection Rules*).

[41] *See* Petition for Reconsideration of Great Lakes Higher Education Corp.; Nelnet, Inc.; Pennsylvania Higher Education Assistance Agency; and the Student Loan Servicing Alliance, CG Docket No. 02-278 (filed Dec. 16, 2016); *Petition for Reconsideration of Action in Rulemaking Proceeding*, CG Docket No. 02-278, Public Notice, 2017 WL 68132 (Jan. 6, 2017); Petition for Reconsideration of Action in Rulemaking Proceeding, 82 Fed. Reg. 4837 (Jan. 17, 2017).

[42] *See* Petition for Reconsideration of Great Lakes Higher Education Corp.; Nelnet, Inc.; Pennsylvania Higher Education Assistance Agency; and the Student Loan Servicing Alliance, CG Docket No. 02-278, at 13-14 (filed Dec. 16, 2016).

[43] The Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584 (Budget Act), amended the TCPA. *See* Budget Act § 301(a)(1)(A) (amending 47 U.S.C. § 227(b)(1)(A)); *see also id.* § 301(a)(1)(B) (amending 47 U.S.C. § 227(b)(1)(B) to read, in part, that artificial or prerecorded voice calls cannot be made to a residential telephone line without the consent of the called party unless the call is "made solely pursuant to the collection of a debt owed to or guaranteed by the United States").

[44] 47 CFR §§ 1.2, 1.429.

- Electronic Filers:  Comments may be filed electronically using the Internet by accessing the ECFS:  http://www.fcc.gov/ecfs/.

- Paper Filers:  Parties who choose to file by paper must file an original and one copy of each filing.  If more than one docket or rulemaking number appears in the caption of this proceeding, filers must submit two additional copies for each additional docket or rulemaking number.

  Filings can be sent by hand or messenger delivery, by commercial overnight courier, or by first-class or overnight U.S. Postal Service mail.  All filings must be addressed to the Commission's Secretary, Office of the Secretary, Federal Communications Commission.

    - All hand-delivered or messenger-delivered paper filings for the Commission's Secretary must be delivered to FCC Headquarters at 445 12th St., SW, Room TW-A325, Washington, DC 20554.  The filing hours are 8:00 a.m. to 7:00 p.m.  All hand deliveries must be held together with rubber bands or fasteners.  Any envelopes and boxes must be disposed of <u>before</u> entering the building.

    - Commercial overnight mail (other than U.S. Postal Service Express Mail and Priority Mail) must be sent to 9050 Junction Drive, Annapolis Junction, MD 20701.

    - U.S. Postal Service first-class, Express, and Priority mail must be addressed to 445 12th Street, SW, Washington, DC 20554.

People with Disabilities:  To request materials in accessible formats for people with disabilities (Braille, large print, electronic files, audio format), send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau at 202-418-0530 (voice), 202-418-0432 (tty).

*Ex Parte Rules*.  This proceeding shall be treated as a "permit-but-disclose" proceeding in accordance with the Commission's *ex parte* rules.[45]  Persons making *ex parte* presentations must file a copy of any written presentation or a memorandum summarizing any oral presentation within two business days after the presentation (unless a different deadline applicable to the Sunshine period applies). Persons making oral *ex parte* presentations are reminded that memoranda summarizing the presentation must: (1) list all persons attending or otherwise participating in the meeting at which the *ex parte* presentation was made; and (2) summarize all data presented and arguments made during the presentation.  If the presentation consisted in whole or in part of the presentation of data or arguments already reflected in the presenter's written comments, memoranda, or other filings in the proceeding, the presenter may provide citations to such data or arguments in his or her prior comments, memoranda, or other filings (specifying the relevant page and/or paragraph numbers where such data or arguments can be found) in lieu of summarizing them in the memorandum.  Documents shown or given to Commission staff during *ex parte* meetings are deemed to be written *ex parte* presentations and must be filed consistent with section 1.1206(b) of the Commission's rules.[46]  In proceedings governed by section 1.49(f) of the rules or for which the Commission has made available a method of electronic filing, written *ex parte* presentations and memoranda summarizing oral *ex parte* presentations, and all attachments thereto, must be filed through the electronic comment filing system available for that proceeding, and must be filed in their native format (*e.g.*, .doc, .xml, .ppt, searchable .pdf).[47]  Participants in this proceeding should familiarize themselves with the Commission's *ex parte* rules.

---

[45] *See id.* §§ 1.1200 *et seq*.

[46] *Id.* § 1.1206(b).

[47] *Id.* § 1.49(f).

*Additional Information.* For further information, contact Kristi Thornton of the Consumer and Governmental Affairs Bureau at (202) 418-2467 or Kristi.Thornton@fcc.gov; Christina Clearwater at (202) 418-1893 or Christina.Clearwater@fcc.gov; or Karen Schroeder at (202) 418-0654 or Karen.Schroeder@fcc.gov.