# EXHIBIT D

February 5, 2020

**VIA ECFS**

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
445 12th Street, S.W.
Washington, DC 20554

**Re: Ex Parte Presentation; CG Docket Nos. 02-278, 18-152**

Dear Ms. Dortch:

On behalf of the U.S. Chamber of Commerce, the U.S. Chamber Institute for Legal Reform, and the U.S. Chamber Technology Engagement Center (collectively "the Chamber"), ACA International, American Association of Healthcare Administrative Management, American Bankers Association, American Financial Services Association, Consumer Bankers Association, Credit Union National Association, Edison Electric Institute, Electronic Transactions Association, Home Furnishings Association, Insights Association, Mortgage Bankers Association, National Association of Federally-Insured Credit Unions, National Association of Mutual Insurance Companies, National Retail Federation, Restaurant Law Center, and Student Loan Servicing Alliance, we respectfully submit this *ex parte* letter to urge the Federal Communications Commission ("FCC" or "Commission") to clarify expeditiously the Telephone Consumer Protection Act's ("TCPA") definition of automatic telephone dialing system ("ATDS") by acting on the Petition for Declaratory Ruling ("ATDS Petition" or "Petition"), which was filed more than 21 months ago by a number of the signatories to this letter.[1]

Doing so would bring much-needed clarity to the definition of ATDS and stop the spread of differing court interpretations that have followed in the wake of the D.C. Circuit's decision in *ACA International v. FCC*,[2] which was pending before the

---

[1] *See* Petition for Declaratory Ruling, CG Docket No. 02-278 (filed May 3, 2018) ("ATDS Petition"). The coalition that filed the ATDS Petition consists of: the U.S. Chamber of Commerce, the U.S. Chamber Institute for Legal Reform, and the U.S. Chamber Technology Engagement Center (collectively "the Chamber"); ACA International; American Association of Healthcare Administrative Management; American Bankers Association; American Financial Services Association; Consumer Bankers Association; Consumer Mortgage Coalition; Credit Union National Association; Edison Electric Institute; Electronic Transactions Association; Financial Services Roundtable; Insights Association; Mortgage Bankers Association; National Association of Federally-Insured Credit Unions; National Association of Mutual Insurance Companies; Restaurant Law Center; and Student Loan Servicing Alliance.
[2] 885 F.3d 687 (D.C. Cir. 2018) ("*ACA International*").

Ms. Marlene H. Dortch
February 5, 2020
Page 2

court for over two years after the Commission issued its 2015 Declaratory Ruling and Order.[3] In fact, just a few days ago, the Eleventh Circuit[4] rejected the overly expansive ATDS definition adopted by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*.[5] Swift action on the Petition will help facilitate the important, and often time-sensitive, calls that customers receive from healthcare providers, pharmacies, grocers, retailers, utility companies, banks, credit unions, and other financial service providers, among others. Action also will help stem the tide of abusive TCPA litigation, which has been fueled by uncertainty regarding the definition of ATDS.

We support the Commission's efforts to combat illegal calls, including its aggressive enforcement and regulatory actions to protect consumers from illegal caller ID spoofing and to promote call authentication. The Pallone-Thune TRACED Act, enacted into law on December 30, 2019, provides the Commission with additional tools to prosecute those who place illegal calls in an effort to defraud consumers. These actions by Congress and the Commission are significant steps in the fight against illegal calls.

With substantial progress made to combat illegal calls, the Commission should take action to ensure that consumers receive the important, and often time-sensitive, informational calls that legitimate businesses place by reforming the Commission's TCPA interpretations. Addressing unresolved TCPA issues should be one of the Commission's very top priorities in 2020. The Commission has received extensive input from a diverse array of stakeholders on the definition of ATDS, including the D.C. Circuit. It is imperative that the Commission take action to ensure that the definition of ATDS conforms to the text of the statute and provides certainty for actors in the calling ecosystem.

The ATDS Petition makes two common-sense requests of the Commission: "(1) make clear that to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention, and (2) find that only calls made using actual ATDS capabilities are subject to the TCPA's restrictions."[6] As the Chamber has explained,[7] these

---

[3] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, et al.*, Declaratory Ruling and Order, 30 FCC Rcd 7961 (2015).
[4] *See Glasser v. Hilton Grand Vacations Co., LLC*, --- F.3d ---, 2020 WL 415811 (11th Cir. 2020).
[5] 904 F.3d 1041 (9th Cir. 2018).
[6] ATDS Petition at 27.
[7] *See generally* ATDS Petition; *see also, e.g.*, Comments of U.S. Chamber Institute for Legal Reform on ACA International PN, at 10-12 (filed June 13, 2018 in CG Docket Nos. 02-278, 18-152) ("Chamber ACA International PN Comments"); Reply Comments of U.S. Chamber Institute for Legal Reform and U.S. Chamber Technology Engagement Center on ACA International PN, at 6-7 (filed June 28, 2018 in CG Docket Nos. 02-278, 18-152) ("Chamber ACA International

Ms. Marlene H. Dortch
February 5, 2020
Page 3

proposals are faithful to the plain language of the TCPA, closely follow the D.C. Circuit's decision in *ACA International*, and have strong support in the record. The Commission immediately should act to clarify the definition of ATDS and grant the Petition for five reasons.

**First**, uncertainty about the scope of the ATDS definition has led to divergent TCPA interpretations among the federal courts, greatly complicating legal callers' compliance efforts. The definition of ATDS has been a longstanding source of confusion.[8] In *ACA International*, the D.C. Circuit rejected the FCC's prior "unreasonably expansive interpretation" and noted that the Commission's "prior rulings left significant uncertainty" about the definition.[9] During the two years since that decision, Commission inaction has led to a patchwork of conflicting interpretations, compounding the uncertainty the court directed the Commission to address. For example, a recent Petition for Certiorari to the Supreme Court filed by Facebook explains that the Ninth Circuit's interpretation of ATDS in *Marks v. Crunch San Diego*[10] conflicts with the interpretations of the Third[11] and D.C. Circuits.[12] Furthermore, as mentioned at the outset of this letter, the Eleventh Circuit echoed the D.C. Circuit's concerns and rejected the Ninth Circuit's problematic ATDS interpretation.[13]

**Second,** consumers are harmed when they do not receive time-critical, non-telemarketing communications from healthcare providers, pharmacies, grocers, retailers, utility companies, banks, credit unions, and other financial service providers

---

PN Reply Comments"); Comments of U.S. Chamber Institute for Legal Reform on Marks PN, at 1-2, 9-16 (filed Oct. 17, 2018 in CG Docket Nos. 18-152, 02-278) ("Chamber Marks PN Comments").

[8] For example, in the 2015 Omnibus Order, the Commission explained that it was defining ATDS in the face of "*21 separate requests* for clarification or other action regarding the TCPA or the Commission's rules and orders." *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, ¶ 2 (2015) (emphasis added) ("2015 Omnibus Order").

[9] 885 F.3d at 701.

[10] 904 F.3d 1041 (9th Cir. 2018).

[11] *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018).

[12] *See ACA International*; *see also* Petition for Writ of Certiorari, *Facebook v. Duguid*, et al., at 29-34 No.19-511 (Oct.17, 2019) ("Facebook Petition"); Chamber Marks PN Reply Comments at 5-9.
The chasm between the decisions by the D.C. and Third Circuits, on the one hand, and by the Ninth Circuit, on the other, cannot be overstated. For example, the D.C. Circuit took issue with defining ATDS to subject every smartphone to the TCPA's prohibitions, but the Ninth Circuit acknowledged that its interpretation could do just that, in that its decision would bring all "devices with the capacity to dial stored numbers automatically"—which includes smartphones—under the TCPA's restrictions. *Marks*, 904 F.3d at 1052.
As to be expected, the lower courts struggle with the conflicting interpretations of the ATDS definition. Facebook's Petition for Certiorari cites *twenty-five* district court opinions issued after the D.C. Circuit opinion in *ACA International*, explaining that most district courts follow the Third Circuit, but that a sizable minority have followed the Ninth Circuit. *See* Facebook Petition at 32-33 n. 3-4. The Commission should act now to stop the spread of this patchwork of inconsistent rulings. Immediate action will help to provide much-needed certainty for both callers and call recipients.

[13] *Glasser v. Hilton Grand Vacations Co., LLC*, --- F.3d ---, 2020 WL 415811 (11th Cir. 2020).

Ms. Marlene H. Dortch
February 5, 2020
Page 4

because the business is discouraged from placing the call due to litigation risk. These valuable communications include prescription reminders, utility outage notifications, fraud alerts, data breach notifications, low-balance and overdue payment notifications, and urgent product safety recall notifications. Many of these communications must be placed immediately after a transaction or other event, requiring the use of automated technology. Because of the Commission's past, expansive interpretation of the definition of ATDS, however, unless the business has the customer's documented consent, it may not be able to place these critical calls using automated technology. Data provided to the Commission show that businesses are not able to contact millions of customers with time-sensitive informational messages because of the existing TCPA legal regime created by the Commission's past interpretations.[14]

**Third**, clarification of the definition of ATDS is needed to bring the definition into conformity with the text of the statute and congressional intent. Congress passed the TCPA primarily to combat abusive telemarketing.[15] In drafting the TCPA, Congress did not restrict the use of *any* efficient dialing technology; rather, Congress restricted only a specific type of dialing equipment — an "automatic telephone dialing system" (ATDS) — which Congress limited to equipment that uses "a random or sequential number generator" to store or produce telephone numbers to be called and to dial such numbers.[16] As a Commissioner, Chairman Pai explained that "the TCPA has strayed far from its original purpose[,] [a]nd the FCC has the power to fix that."[17] Chairman Pai further observed:

> The statute lays out two things that an automatic telephone dialing system must be able to do or, to use the statutory term, must have the "capacity" to do. If a piece of equipment *cannot* do those two things—if it *cannot* store or produce telephone numbers to be called using a random or sequential number generator and if it *cannot* dial such numbers—then how can it possibly meet the statutory definition? It cannot.[18]

---

[14] Letter from Jonathan Thessin, Am. Bankers Ass'n, to Marlene Dortch, Sec., Fed. Commc'ns Comm'n (Nov. 4, 2019), https://www.aba.com/advocacy/policy-analysis/letter-to-fcc-telephone-consumer-protection-act.

[15] *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(1), 105 Stat. 2394 (2012) (observing the "increased use of cost-effective telemarketing techniques"); H.R. Rep. No. 102-317, at 6 (observing that automatic dialing systems permit telemarketers to provide a message to potential customers "without incurring the normal cost of human intervention").

[16] 47 U.S.C.§ 227(a)(1).

[17] 2015 Omnibus Order at 8073 (Dissenting Statement of then-Commissioner Ajit Pai) ("Pai Dissent").

[18] *Id.*at 8074 (emphasis in original).

Ms. Marlene H. Dortch
February 5, 2020
Page 5

We agree. The Commission should implement the legal position Chairman Pai recognized years ago and clarify the definition of ATDS to reflect the statute's purpose and plain language.

**Fourth**, the ongoing uncertainty surrounding the definition of ATDS continues to fan the flames of abusive TCPA litigation. As then-Commissioner Pai observed in 2015, "trial lawyers have found legitimate, domestic businesses a much more profitable target" than "the illegal telemarketers, the over-the-phone scam artists, and the foreign fraudsters" that Congress intended the TCPA to address.[19] As the U.S. Chamber Institute for Legal Reform has explained, U.S. businesses are under siege from TCPA litigation, much of which is initiated by a small number of serial TCPA plaintiffs and plaintiffs' attorneys that target legitimate companies acting in good faith.[20] In the 14 months since the Commission sought public comment following the *Marks* decision, plaintiffs filed more than *three thousand* additional TCPA lawsuits.[21] The average cost to settle just one of these lawsuits is $6.6 *million*, an amount that is more than capable of bankrupting a small business.[22] The high settlement value of these cases is unrelated to actual culpability of the business that is sued.

Chairman Pai and other Commissioners have recognized the scourge of abusive TCPA litigation. Chairman Pai has called the TCPA "the poster child for lawsuit abuse,"[23] and Commissioner O'Rielly has explained that "TCPA rules have created a crippling litigation threat for businesses in virtually all industries."[24] The Commission should take action now to clarify the definition of ATDS in a way that will "protect consumers and legitimate businesses while targeting unlawful scammers and robocallers."[25] Indeed, "[t]he longer [the Commission] wait[s] to take these

---

[19] *Id.* at 8072–73.
[20] *See e.g.*, ATDS Petition at 12-16; Chamber ACA International PN Comments at 3-8; Chamber ACA International PN Reply Comments at 2-4; Chamber Marks PN Comments at 2-3; *TCPA Litigation Sprawl*, U.S. Chamber Institute for Legal Reform (Aug. 2017), https://www.instituteforlegalreform.com/uploads/sites/1/TCPA_Paper_Final.pdf.
[21] *See WebRecon Stats for Dec. 2018: 2018 Ends With a Wimper*, WebRecon LLC, https://webrecon.com/webrecon-stats-for-dec-2018-2018-ends-with-a-whimper/ (last visited Dec. 9, 2019) (counting 223 TCPA suits in December 2018 and 285 in November 2018); *WebRecon Stats for Oct 2019: Litigation Up Across the Board*, WebRecon LLC, https://webrecon.com/webrecon-stats-for-oct-2019-litigation-up-across-the-board/ (last visited Dec. 9, 2019) (counting 2,767 TCPA lawsuits as of October 31, 2019).
[22] *TCPA Lawsuits are HOW Expensive??*, U.S. Chamber Institute for Legal Reform (Dec. 9, 2018), https://www.instituteforlegalreform.com/resource/tcpa-lawsuits-are-how-expensive.
[23] *See* Pai Dissent at 8073.
[24] Remarks of FCC Commissioner Michael O'Rielly Before the ACA International Washington Insights Conference, at 2 (May 16, 2019), https://docs.fcc.gov/public/attachments/DOC-357496A1.pdf ("O'Rielly Remarks").
[25] *See* Statement of Commissioner Brendan Carr on D.C. Circuit Decision in ACA International v. FCC (March 16, 2018), https://docs.fcc.gov/public/attachments/DOC-349769A1.pdf.

Ms. Marlene H. Dortch
February 5, 2020
Page 6

necessary actions, the greater the harms that are inflicted on both organizations and consumers."[26]

**Fifth**, the Commission has had ample time to consider the definition of ATDS. The D.C. Circuit decision vacating the Commission's 2015 interpretation of the term was issued nearly two *years* ago. The Commission has continued to build a robust record since then, including through two Public Notices following the *ACA International* decision and the ATDS Petition,[27] and the *Marks* decision.[28] Through these Public Notices alone, the Commission has amassed a significant administrative record.[29] Importantly, the robust record shows broad-based support for the interpretation of ATDS put forward by the ATDS Petition.[30]

With uncertainty continuing to grow through a confusing patchwork of court interpretations and abusive TCPA litigation continuing to threaten legitimate U.S. businesses, we urge the Commission to act immediately to clarify the definition of ATDS. The Commission can issue an interpretation of ATDS that facilitates the ability of businesses to use modern technologies to communicate with their customers effectively and efficiently. The Commission can take this action without impairing its important work to combat illegal automated calls. There is no reason for further delay.

Respectfully Submitted,

/s/ Harold Kim
Harold Kim
President
U.S. Chamber Institute for Legal Reform
1615 H Street, NW
Washington, DC 20062

---

[26] O'Rielly Remarks at 2.
[27] *See Interpretation of the Telephone Consumer Protection Act in Light of DC Circuit's ACA International Decision*, Public Notice, DA 18-493 (May 14, 2018) ("ACA International PN").
[28] *See Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, Public Notice, DA 18-1014 (Oct. 3, 2018) ("Marks PN").
[29] This record adds to the hundreds of commenters that weighed in when the FCC promulgated the now-vacated definition of ATDS in 2015. *See* 2015 Omnibus Order at 8042-65.
[30] *See, e.g.*, Chamber ACA International PN Reply Comments at 7 n. 21 (collecting comments supportive of the ATDS Petition's approach); Chamber Marks PN Comments at 1 (explaining that the ATDS Petition was filed "in conjunction with 17 other trade associations, collectively representing nearly every sector of the economy and millions of businesses worldwide").

EXHIBIT D
- 62 -

Ms. Marlene H. Dortch
February 5, 2020
Page 7

/s/ Tim Day
Tim Day
Senior Vice President
U.S. Chamber Technology Engagement Center
1615 H Street, NW
Washington, DC 20062

/s/ Leah Dempsey
Leah Dempsey
Vice President & Senior Counsel
ACA International
509 2nd Street, NE
Washington, D.C. 20002

/s/ Mark W. Brennan
Mark W. Brennan
Lead Innovation Partner
Hogan Lovells US LLP
555 13th Street, NW
Washington, DC 20004
*On behalf of the American Association of Healthcare Administrative Management*

/s/ Virginia O'Neill
Virginia O'Neill
Executive Vice President
American Bankers Association
1120 Connecticut Avenue, NW
Washington, DC 20036

/s/ Celia Winslow
Celia Winslow
Senior Vice President
American Financial Services Association
919 18th Street, NW, Suite 300
Washington, DC 20012

Ms. Marlene H. Dortch
February 5, 2020
Page 8

/s/ Richard Hunt
Richard Hunt
President & Chief Executive Officer
Consumer Bankers Association
1225 I Street, NW, STE 550
Washington, DC 20005

/s/ Ryan Donovan
Ryan Donovan
Chief Advocacy Officer
Credit Union National Association
99 M Street, SE, Suite 300
Washington, DC 20003

/s/ Aryeh B. Fishman
Aryeh B. Fishman
Associate General Counsel,
Regulatory Legal Affairs
Edison Electric Institute
701 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Scott Talbott
Scott Talbott
Senior Vice President,
Government Relations
Electronic Transactions Association
1620 L Street, NW, #1020
Washington, DC 20036

/s/ Mark Schumacher
Mark Schumacher
Executive Vice President
Home Furnishings Association
500 Giuseppe Court, Suite 6
Roseville, CA 95678

Case 3:20-cv-00806-EMC   Document 42-5   Filed 08/07/20   Page 10 of 11

Ms. Marlene H. Dortch
February 5, 2020
Page 9

/s/ Howard Fienberg

Howard Fienberg
Vice President, Advocacy
Insights Association
1156 15th Street, NW, Suite 302
Washington, DC 20003

/s/ Justin Wiseman

Justin Wiseman
Associate Vice President & Managing Regulatory Counsel
Mortgage Bankers Association
1919 M Street, NW, 5th Floor
Washington, DC 20036

/s/ Carrie R. Hunt

Carrie R. Hunt
Executive Vice President of Government Affairs & General Counsel
National Association of Federally-Insured Credit Unions
3138 10th Street North
Arlington, VA 22201

/s/ Thomas Karol

Thomas Karol
General Counsel
National Association of Mutual Insurance Companies
3601 Vincennes Road
Indianapolis, IN 46268

/s/ Paul Martino

Paul Martino
Vice President & Senior Policy Counsel
National Retail Federation
1101 New York Avenue, Suite 1200
Washington, D.C. 20005

Ms. Marlene H. Dortch
February 5, 2020
Page 10

/s/ Angelo I. Amador

Angelo I. Amador
Executive Director
Restaurant Law Center
2055 L Street, NW
Washington, DC 20036

/s/ Winfield P. Crigler

Winfield P. Crigler
Executive Director
Student Loan Servicing Alliance
1100 Connecticut Avenue, NW, Suite 1200
Washington, DC 20036