# EXHIBIT G

No. _____

In the

# Supreme Court of the United States

———————

FACEBOOK, INC.,

*Petitioner*,

v.

NOAH DUGUID, individually and on behalf of
himself and all others similarly situated,

*Respondent,*

and

UNITED STATES OF AMERICA,

*Respondent-Intervenor*

———————

**On Petition for Writ of Certiorari to the
United States Court of Appeals
for the Ninth Circuit**

———————

**PETITION FOR WRIT OF CERTIORARI**

———————

ANDREW B. CLUBOK
ROMAN MARTINEZ
SUSAN E. ENGEL
SAMIR DEGER-SEN
GREGORY B.
 IN DEN BERKEN
LATHAM
 & WATKINS LLP
555 Eleventh Street, NW
 Suite 1000
Washington, DC 20004

PAUL D. CLEMENT
 *Counsel of Record*
DEVIN S. ANDERSON
KASDIN M. MITCHELL
LAUREN N. BEEBE
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
paul.clement@kirkland.com

*Counsel for Petitioner*

October 17, 2019

## QUESTIONS PRESENTED

Congress enacted the Telephone Consumer Protection Act of 1991 ("TCPA") to prohibit calls made to a cell phone without consent using an "automatic telephone dialing system" ("ATDS"). That prohibition exempts calls made "to collect a debt owed to or guaranteed by the United States" or "made for emergency purposes." 47 U.S.C. §227(b)(1)(A)(iii). Here, Petitioner was sued for violating this prohibition and defended on the grounds, *inter alia*, that the prohibition unconstitutionally discriminated on the basis of content and that the text messages at issue here did not involve an ATDS. The Ninth Circuit agreed that the TCPA was unconstitutional, but denied Petitioner any relief by taking the extraordinary step of rewriting the TCPA to prohibit more speech by eliminating the government-debt-collection exception. To make matters worse, the Ninth Circuit adopted a counter-textual and expansive definition of an ATDS that encompasses *any* device that can store and automatically dial telephone numbers—even if that device cannot store or produce them "using a random or sequential number generator," as the statutory definition requires, *id.* §227(b)(1)(A). That holding—which conflicts with the Third and D.C. Circuits—sweeps into the TCPA's prohibition almost any call or text made from any modern smartphone.

The questions presented are:

1. Whether the TCPA's prohibition on calls made using an ATDS is an unconstitutional restriction of speech, and if so whether the proper remedy is to broaden the prohibition to abridge more speech.

ii

2. Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator."

iii

## PARTIES TO THE PROCEEDING

Facebook, Inc. is Petitioner here and was Defendant-Appellee below.

Noah Duguid, individually and on behalf of himself and all others similarly situated, is Respondent here and was Plaintiff-Appellant below.

The United States of America is Respondent-Intervenor here and was Intervenor-Appellee below.

iv

## CORPORATE DISCLOSURE STATEMENT

Facebook, Inc. is a publicly traded company and has no parent corporation.  No publicly held company owns 10% or more of its stock.

v

## STATEMENT OF RELATED PROCEEDINGS

*Duguid v. Facebook, Inc.*, No. 17-15320 (9th Cir.) (opinion issued and judgment entered June 13, 2019; petition for rehearing denied Aug. 22, 2019; mandate issued Sept. 12, 2019).

*Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST (N.D. Cal.) (order granting motion to dismiss with prejudice issued Feb. 16, 2017; order denying motion to set aside judgment issued July 24, 2017).

There are no additional proceedings in any court that are directly related to this case.

vi

## TABLE OF CONTENTS

QUESTIONS PRESENTED ........................................ i

PARTIES TO THE PROCEEDING ......................... iii

CORPORATE DISCLOSURE STATEMENT ........... iv

STATEMENT OF RELATED PROCEEDINGS ........ v

PETITION FOR WRIT OF CERTIORARI ................ 1

OPINIONS BELOW .................................................. 3

JURISDICTION ....................................................... 4

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ..................................... 4

STATEMENT OF THE CASE ................................... 4

    A.  The Telephone Consumer Protection Act .... 4

    B.  Factual Background and Proceedings Below ........................................................... 7

REASONS FOR GRANTING THE PETITION ....... 12

I.  The Court Should Grant Certiorari To Bring The Ninth Circuit In Line With This Court's First Amendment Jurisprudence ..................... 14

II.  The Court Should Grant Certiorari To Provide A Workable, Uniform Interpretation Of The TCPA ...................................................... 23

    A.  The Statutory Text Forecloses the Ninth Circuit's Expansive Interpretation of an ATDS ........................................................ 23

    B.  The Ninth Circuit's Interpretation Creates a Circuit Split ............................... 29

III. The Questions Presented Are Exceptionally Important And This Case Is An Ideal Vehicle . 34

CONCLUSION ....................................................... 37

vii

## APPENDIX

Appendix A

Opinion, United States Court of Appeals for the Ninth Circuit, *Duguid v. Facebook, Inc.*, No. 17-15320 (Mar. 11, 2019)...................... App-1

Appendix B

Order, United States Court of Appeals for the Ninth Circuit, *Duguid v. Facebook, Inc.*, No. 17-15320 (Aug. 22, 2019).......................... App-21

Appendix C

Order Granting Motion to Dismiss, United States District Court for the Northern District of California, *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST (Mar. 24, 2016).......................................................... App-23

Appendix D

Order Granting Motion to Dismiss with Prejudice, United States District Court for the Northern District of California, *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST (Feb. 16, 2017).......................................................... App-39

Appendix E

Relevant Statutory Provision.................... App-53

47 U.S.C. § 227.................................... App-53

viii

## TABLE OF AUTHORITIES

**Cases**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018)........................ *passim*

*Adams v. Ocwen Loan Servicing, LLC*,
  366 F. Supp. 3d 1350 (S.D. Fla. 2018) .................. 33

*Adams v. Safe Home Sec. Inc.*,
  2019 WL 3428776 (N.D. Tex. July 30, 2019) ........ 33

*Allan v. Pa. Higher Educ. Assistance Agency*,
  2019 WL 3890214
  (W.D. Mich. Aug. 19, 2019).................................... 33

*Am. Ass'n of Political Consultants, Inc.*
  *v. FCC*,
  923 F.3d 159 (4th Cir. 2019)................................. 20

*Ammons v. Ally Fin., Inc.*,
  326 F. Supp. 3d 578 (M.D. Tenn. 2018) ............... 33

*Ark. Writers' Project, Inc. v. Ragland*,
  481 U.S. 221 (1987)............................................... 19

*Asher v. Quicken Loans, Inc.*,
  2019 WL 131854 (D. Utah Jan. 8, 2019).............. 33

*Beckerman v. City of Tupelo*,
  664 F.2d 502 (5th Cir. Unit A 1981) .................... 19

*Brown v. Entm't Merchs. Ass'n*,
  564 U.S. 786 (2011)............................................... 19

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016)............................................... 5

*Cent. Bank of Denver, N.A.*
  *v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)............................................... 28

EXHIBIT G

ix

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993)................................................ 19

*City of Ladue v. Gilleo*,
    512 U.S. 43 (1994)................................................ 19

*Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*,
    138 S. Ct. 1061 (2018)........................................... 24

*Denova v. Ocwen Loan Servicing*,
    2019 WL 4635552
    (M.D. Fla. Sept. 24, 2019)....................................... 32

*Dimmitt v. City of Clearwater*,
    985 F.2d 1565 (11th Cir. 1993)............................... 19

*Dominguez ex rel. Himself v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. 2018) ............................ 29, 30

*Dominguez v. Yahoo, Inc.*,
    629 F. App'x 369 (3d Cir. 2015).............................. 5

*Duran v. La Boom Disco, Inc.*,
    369 F. Supp. 3d 476 (E.D.N.Y. 2019) .................... 33

*Espejo v. Santander Consumer USA, Inc.*,
    2019 WL 2450492 (N.D. Ill. June 12, 2019).......... 33

*Evans v. Pa. Higher Educ. Assistance Agency*,
    2018 WL 3954761 (N.D. Ga. June 12, 2018) ........ 33

*Gadelhak v. AT&T Servs., Inc.*,
    2019 WL 1429346 (N.D. Ill. Mar. 29, 2019).......... 33

*Gerrard v. Acara Sols. Inc.*,
    2019 WL 2647758
    (W.D.N.Y. June 27, 2019)...................................... 33

*Glasser v. Hilton Grand Vacations Co., LLC*,
    341 F. Supp. 3d 1305 (M.D. Fla. 2018) ................ 33

*Gonzalez v. HOSOPO Corp.*,
    371 F. Supp. 3d 26 (D. Mass. 2019) ..................... 33

x

*Greater New Orleans Broad. Ass'n*
  *v. United States*,
  527 U.S. 173 (1999)................................................. 19

*Gresham v. Swanson*,
  866 F.3d 853 (8th Cir. 2017).................................. 21

*Hartford Underwriters Ins. Co.*
  *v. Union Planters Bank, N. A.*,
  530 U.S. 1 (2000).................................................... 24

*Heard v. Nationstar Mortg. LLC*,
  2018 WL 4028116 (N.D. Ala. Aug. 23, 2018)........ 33

*Honeycutt v. United States*,
  137 S. Ct. 1626 (2017)........................................... 24

*Jiminez v. Credit One Bank, N.A.*,
  377 F. Supp. 3d 324 (S.D.N.Y. 2019) .................... 33

*Keyes v. Ocwen Loan Servicing, LLC*,
  335 F. Supp. 3d 951 (E.D. Mich. 2018) ................. 33

*Kloth-Zanard v. Bank of Am.*,
  2019 WL 1922070 (D. Conn. Apr. 30, 2019) ........ 33

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019).................................... 7

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004)........................................... 23, 24

*Lord v. Kisling, Nestico & Redick, LLC*,
  2018 WL 3391941
  (N.D. Ohio July 12, 2018) ...................................... 33

*Maes v. Charter Commc'n*,
  345 F. Supp. 3d 1064 (W.D. Wis. 2018) ................ 33

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018)........................ *passim*

xi

*Matthews v. Town of Needham*,
  764 F.2d 58 (1st Cir. 1985) .................................... 19

*McCullen v. Coakley*,
  573 U.S. 464 (2014) ............................................. 15

*Might v. Capital One Bank (USA), N.A.*,
  2019 WL 544955 (W.D. Okla. Feb. 11, 2019) ........ 33

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) ............................................... 4

*Minneapolis Star & Tribune Co.*
  *v. Minn. Comm'r of Revenue*,
  460 U.S. 575 (1983) ............................................. 19

*Morgan v. On Deck Capital, Inc.*,
  2019 WL 4093754 (W.D. Va. Aug. 29, 2019) ......... 33

*Nat'l Bank of Bos. v. Bellotti*,
  435 U.S. 765 (1978) ............................................. 19

*Patriotic Veterans, Inc. v. Zoeller*,
  845 F.3d 303 (7th Cir. 2017) ................................ 21

*Perrong v. Liberty Power Corp.*,
  2019 WL 4751936 (D. Del. Sept. 30, 2019) ........... 21

*Rappa v. New Castle Cty.*,
  18 F.3d 1043 (3rd Cir. 1994) .......................... 19, 20

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ............................... 14, 15, 18

*Roark v. Credit One Bank, N.A.*,
  2018 WL 5921652 (D. Minn. Nov. 13, 2018) ... 32, 33

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) ............................................. 19

*Smith v. Premier Dermatology*,
  2019 WL 4261245 (N.D. Ill. Sept. 9, 2019) ........... 32

xii

*Snow v. Gen. Elec. Co.,*
  2019 WL 2500407 (E.D.N.C. June 14, 2019) .. 30, 33

*Sorrell v. IMS Health Inc.,*
  564 U.S. 552 (2011) .................................. 19

*Thompson-Harbach v. USAA Fed. Sav. Bank,*
  359 F. Supp. 3d 606 (N.D. Iowa 2019) ................. 33

*Willson v. City of Bel-Nor,*
  924 F.3d 995 (8th Cir. 2019) ................................ 19

**Constitutional Provision**

U.S. Const. amend. I ....................................... *passim*

**Statutes**

47 U.S.C. §151 *et seq.* ...................................... 4

47 U.S.C. §227(a)(1) ...................................... 5, 24, 25

47 U.S.C. §227(b) .................................... 15

47 U.S.C. §227(b)(1)(A) ................................. 1, 4, 5, 6

47 U.S.C. §227(b)(3) .................................... 6

Bipartisan Budget Act of 2015,
  Pub. L. No. 114-74, 129 Stat. 584 .......................... 6

**Regulation**

47 C.F.R. §64.1200(f)(4) ............................... 6

**Other Authorities**

4 Ian Ballon, *E-Commerce & Internet Law*
  (2019 update) ................................... 30, 32

*Consumer Protection: Ninth Circuit Creates*
  *Circuit Split on Autodialer Rule Under the*
  *TCPA,* 31 Bus. Torts Rep. 37 (Dec. 2018) ............. 30

Declaratory Ruling and Order, *Rules and*
  *Regulations Implementing the TCPA Act of*
  *1991,* 30 FCC Rcd. 7,961 (2015) ........................... 31

xiii

FCC, *Public Notice: Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the TCPA in light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision* (Oct. 3, 2018), https://bit.ly/2Qso4KG ............................... 32

H.R. Rep. No. 102-317 (1991) .................................... 5

Blaine C. Kimrey & Bryan K. Clark, *What's That* Crunch-*ing sound? Reason Being Destroyed in the Ninth Circuit*, The Nat'l L. Rev. (Sept. 27, 2018), https://bit.ly/2lvHtAp ......... 32

Stephen P. Mandell et al., *Recent Developments in Media, Privacy, Defamation, and Advertising Law*, 54 Tort Trial & Ins. Prac. L.J. 651 (Spring 2019) ............................................................ 30

Noble Systems Corp., *Comments on FCC's Request for Comments on the Interpretation of The TCPA in Light of* Marks v. Crunch San Diego (Oct. 16, 2018), https://bit.ly/2n32vHd ............................................ 27

*Number of smartphone users in the United States 2010 to 2023*, Statista, https://bit.ly/2gbXF5d (last visited Oct. 17, 2019) .................................... 26

Marissa A. Potts, *"Hello, It's Me [Please Don't Sue Me!]": Examining the FCC's Overbroad Calling Regulations Under the TCPA*, 82 Brook. L. Rev. 281 (2016) ................................... 7

S. Rep. No. 102-178 (1991) ......................................... 5

xiv

Antonin Scalia & Bryan A. Garner, *Reading
  Law: The Interpretation of Legal Texts*
  (2012)..................................................................... 24

Second Notice of Inquiry, *Advanced Methods
  to Target and Eliminate Unlawful
  Robocalls*, 32 FCC Rcd. 6,007 (2017) ...................... 6

*WebRecon Stats for Dec 2018*,
  WebRecon LLC, https://bit.ly/2mellej
  (last visited Oct. 17, 2019)..................................... 35

## PETITION FOR WRIT OF CERTIORARI

This case presents two questions of critical and far-reaching importance relating to the First Amendment and scope of the Telephone Consumer Protection Act of 1991 ("TCPA").

The first question concerns the constitutionality of this important and frequently litigated Act of Congress and strikes at the core of how courts should analyze and remedy speech restrictions under the First Amendment. Facebook was haled into court based on allegations that it violated the TCPA's prohibition on calls made without consent from an automatic telephone dialing system ("ATDS") by sending security-related text messages. Facebook raised two closely related constitutional defenses based on the First Amendment, arguing both that the TCPA's prohibition was impermissibly content-based because its reach turned on the content of the underlying calls and that it was hopelessly overbroad if the definition of an ATDS reached every smartphone. The Ninth Circuit accepted the first argument and found the TCPA unconstitutional based on Facebook's arguments. But the Ninth Circuit then took the extraordinary step of denying Facebook any relief from the prohibition it was alleged to have violated and which it successfully argued was unconstitutional. Rather than simply invalidating the TCPA's unconstitutional prohibition, the Ninth Circuit undertook to rewrite the prohibition to abridge even more speech under the guise of "severing" the statutory exception for calls made to collect government debt, 47 U.S.C. §227(b)(1)(A)(iii).

2

That holding turns principles of the First Amendment, severability, and standing on their heads. Courts have no license to rewrite laws to abridge more speech, and severability principles, properly understood, have no application here. Facebook's constitutional challenge was not to the TCPA's government-debt exception, which neither applied to Facebook nor abridged any speech. Instead, Facebook was sued for violating—and challenged— the TCPA's prohibition on making calls with an ATDS, which decidedly does abridge speech. Having succeeded in its challenge to that prohibition, the proper course was for the court to invalidate the prohibition and then see whether the rest of the statute could stand. Nothing in "severability" or First Amendment principles empowered the Ninth Circuit to rewrite the prohibition to abridge more speech by excising a government-debt exception. The Ninth Circuit's extraordinary decision finding an Act of Congress unconstitutional, but then denying the successful objecting party all relief by rewriting the statute to ban more speech, plainly merits this Court's review.

The second and closely related question concerns the scope of the TCPA's definition of an ATDS. If the TCPA's statutory prohibition on calls made using an ATDS really covers every smartphone in America, as the Ninth Circuit has held, then content-based discrimination is the least of the TCPA's First Amendment problems. The Ninth Circuit's statutory interpretation renders the statute wildly overbroad, extending the TCPA's up-to-$1,500-per-call penalty to calls and texts millions of Americans make with their smartphones every day. Fortunately, the Ninth

3

Circuit's nearly limitless view of what constitutes an ATDS is wrong as a matter of both basic statutory construction and constitutional avoidance principles. Moreover, the Ninth Circuit's view is in acknowledged conflict with the holding of the Third Circuit and reaches a result that the D.C. Circuit labeled "unreasonable," "impermissible," and "untenable." *ACA Int'l v. FCC*, 885 F.3d 687, 697-98 (D.C. Cir. 2018). This Court should grant certiorari to resolve that conflict and to determine the scope and constitutionality of the TCPA's much-litigated prohibition on ATDS calls.

The Ninth Circuit's decision is profoundly wrong and profoundly important. It invalidated an Act of Congress under the First Amendment, but then contravened principle and precedent by denying the challenging party any relief and rewriting the statute to prohibit *more* speech. And the court misread a federal statute that Congress passed to target now-largely-obsolete telemarketing equipment to prohibit a wide range of speech in today's economy. Each question presented independently warrants certiorari, and both together compel it. The Court should grant review to ensure correct application of First Amendment principles and restore the TCPA to its intended scope.

**OPINIONS BELOW**

The Ninth Circuit's opinion is reported at 926 F.3d 1146 and reproduced at App.1-20, and its order denying the government's petition for panel rehearing and rehearing en banc is unreported and reproduced at App.21-22. The district court's orders granting Facebook's motions to dismiss are unreported but

4

available at 2017 WL 635117 and 2016 WL 1169365 and reproduced at App.23-52.

## JURISDICTION

The Ninth Circuit issued its opinion on June 13, 2019. That judgment became final on August 22, 2019, when the court denied the government's petition for panel rehearing and rehearing en banc. This Court has jurisdiction under 28 U.S.C. §1254(1).

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

The First Amendment provides, in relevant part: "Congress shall make no law … abridging the freedom of speech, or of the press." U.S. Const. amend. I.

The relevant provisions of the TCPA, 47 U.S.C. §277, are reproduced at App.53-81.

## STATEMENT OF THE CASE

### A. The Telephone Consumer Protection Act

1. In 1991, "[a]lmost thirty years ago, in the age of fax machines and dial-up internet" and long before the first smartphones, Congress "took aim at unsolicited robocalls" by enacting the TCPA. App.1-2; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012) (noting that Congress passed the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology"). The TCPA supplemented the Federal Communications Act of 1934, 47 U.S.C. §151 *et seq*., and among other things, makes it unlawful for a person to place calls without prior consent to cellular and certain specialized telephone lines using a device called an "automatic telephone dialing system." *Id.* §227(b)(1)(A).

5

The statute defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* §227(a)(1).  Congress used the phrase "random or sequential number generator" to address particular problems posed by the autodialing technology prevalent when the TCPA was enacted in 1991.  At that time, "telemarketers [were using] autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez v. Yahoo, Inc.* (*Dominguez I*), 629 F. App'x 369, 372 (3d Cir. 2015).  Random dialing meant that callers could reach and "tie up" unlisted and specialized numbers, crowding the phone lines and preventing those numbers from making or receiving any other calls. *See* S. Rep. No. 102-178, at 2 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1969.  Sequential dialing also allowed callers to reach every number in a particular area, creating a "potentially dangerous" situation in which no outbound calls (including, for example, emergency calls) could be placed.  H.R. Rep. No. 102-317, at 10 (1991), *available at* 1991 WL 245201.  Although Congress has not updated the TCPA to address technological changes, like the rise of texting, courts have generally interpreted the "call[s]" proscribed by the TCPA to include text messages. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

2. As relevant here, the TCPA contains three exceptions to its prohibition on calls made using an ATDS.  First, the statute does not prohibit ATDS calls made with the recipient's "prior express consent."  47 U.S.C.  §227(b)(1)(A).  While this exception was

6

relatively straightforward to apply in 1991 when most telephones numbers were landline numbers that changed infrequently, it has become more challenging in recent years, as tens of millions of phone numbers are transferred (or "recycled") every year from one user to another when phone plans expire or users otherwise change their numbers. *See* Second Notice of Inquiry, *Advanced Methods to Target and Eliminate Unlawful Robocalls*, 32 FCC Rcd. 6,007, 6,009 ¶5 (2017). As a result, it is not unusual to dial the number of a person who had given consent but—because the number has been recycled—inadvertently reach a different person who has not given consent at the same number, especially because there is no reliable source for verifying the current ownership of a particular phone number. Second, the TCPA excepts calls "made for emergency purposes." 47 U.S.C. §227(b)(1)(A). The FCC has defined the term "emergency" to mean calls "made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. §64.1200(f)(4). Third, the TCPA excepts calls "made solely to collect a debt owed to or guaranteed by the United States." Bipartisan Budget Act of 2015, Pub. L. No. 114-74, §301(a)(1)(A), 129 Stat. 584, 588; 47 U.S.C. §227(b)(1)(A)(iii).

3. The TCPA includes a private right of action that carries substantial potential penalties. 47 U.S.C. §227(b)(3). A caller who places a call to a cell phone without consent using an ATDS is subject to an automatic $500 statutory penalty per call, with treble damages available—increasing the potential statutory penalty to $1,500 per call—"[i]f the court finds that the defendant willfully or knowingly" committed the violation. *Id.* §227(b)(3)(B)-(C). The substantial

7

statutory penalties available under this private right of action have made the TCPA one of the more frequently litigated federal statutes, and the availability of fixed statutory penalties that arguably obviate the need to prove individualized damages has made it a frequent basis for putative class actions. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655-56 (4th Cir. 2019); Marissa A. Potts, *"Hello, It's Me [Please Don't Sue Me!]": Examining the FCC's Overbroad Calling Regulations Under the TCPA*, 82 Brook. L. Rev. 281, 302-03 (2016) ("Recent trends in TCPA litigation show that TCPA lawsuits are clogging the judicial system.  These lawsuits attract plaintiffs' attorneys because they frequently provide lucrative class-action settlement opportunities." (footnote omitted)).

## B. Factual Background and Proceedings Below

1. Facebook operates a social-media service with more than 2.4 billion users across the globe, including more than 190 million users in the United States. Facebook's users create personal profiles and share messages, photographs, and other content with other users.  Because Facebook's users often share personal information, Facebook—like many companies—allows its users to opt in to certain "extra security feature[s]" to protect that information.  App.40.  One of these opt-in security features allows a user to provide a mobile telephone number for Facebook to contact the user with a text-message "login notification" that alerts the user when the user's Facebook account is accessed from a potentially suspicious location—*i.e.*, a virtually real-time message alerting the user that, at a specific

8

time, someone attempted to access the user's account from an unknown device or browser.  App.40.  If the user does not recognize the log-in attempt, the notification enables the user to take immediate action and secure the account, thereby preventing improper access by an unknown actor.

2. In March 2015, respondent Noah Duguid filed a putative class action alleging that Facebook violated the TCPA's prohibition on making calls using an ATDS.  App.42.  Duguid asserted that, although he was and is not a Facebook user and had never provided Facebook with his phone number or consent (but likely had a recycled number associated with another Facebook user), Facebook sent him several, sporadic login-notification text messages in 2014 using an ATDS, in violation of 47 U.S.C. §227(b)(1)(A).  App.4-5.  The messages, each unique, alerted Duguid that an unrecognized browser at a specific time attempted to access a Facebook account associated with his phone number: "Your Facebook account was accessed [by/from] <browser> at <time>.  Log in for more info."  App.4.  Duguid unsuccessfully attempted to unsubscribe to the Facebook alerts.  App.4-5.

Duguid's putative class action against Facebook alleges that each of these security messages violates the TCPA's prohibition on calls made with an ATDS.  App.5; App.42.  Duguid alleged that the messages were sent via an ATDS and that Facebook had acted willfully or knowingly in sending the text messages, and that he and the putative class members were therefore entitled to $1,500 in treble damages for each message.  CA9.R.Excerpts.62-63, ¶¶51-53.

9

3. Facebook moved to dismiss, raising both constitutional and statutory defenses to Duguid's amended complaint.[1] Facebook's argument that the TCPA's prohibition violated the First Amendment prompted the federal government to intervene for the limited purpose of defending the TCPA's constitutionality. *See* N.D.Cal.Dkt.41-44. The district court granted Facebook's motion to dismiss. App.51-52. The court held that Duguid's conclusory allegations that Facebook used an ATDS were insufficient because "plaintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS." App.47. In particular, "Duguid's allegations indicated that Facebook's login notification text messages are targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers." App.48. Because the district court ruled for Facebook on the scope of the ATDS, the court did not reach Facebook's First Amendment objections. The district court also declined to reach Facebook's argument that the login notifications fell within the emergency exception because they convey information that protects users from a potential compromise of their accounts. App.51.

4. Duguid appealed. Facebook raised its First Amendment arguments as alternative bases to affirm, and the federal government again limited its participation to the constitutional issues. While

---

[1] The district court had previously granted an earlier motion to dismiss without prejudice and gave Duguid an opportunity to amend his initial complaint. *See* App.42.

10

Duguid's appeal was pending in the Ninth Circuit, the court issued an opinion on the scope of the TCPA's ATDS definition in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). Specifically, *Marks* addressed "whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator." *Id.* at 1050. The Ninth Circuit ultimately concluded "that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id.* at 1052. In reaching that conclusion, the Ninth Circuit expressly disagreed with the Third Circuit's conclusion "that a device must be able to generate random or sequential numbers in order to qualify as an ATDS." *Id.* at 1052 n.8.

The Ninth Circuit received supplemental briefing here on *Marks*, and then reversed the district court's decision. As to the statutory issue, the court acknowledged Facebook's argument that, if *Marks* "mean[s] what it says," it would sweep in "ubiquitous devices and commonplace consumer communications"—including any text message or call placed from any modern smartphone. App.7. The Ninth Circuit nevertheless reaffirmed *Marks* and held that Duguid's allegations were sufficient to satisfy the Ninth Circuit's "gloss on the statutory text." App.8-9.

Because the Ninth Circuit concluded that the TCPA's prohibition on calls from an ATDS would encompass Facebook's login-notification messages, the court had to reach the question of the prohibition's constitutionality. Although Facebook raised broader

11

First Amendment objections to the prohibition—namely, that the Ninth Circuit's broad conception of an ATDS in *Marks* renders the prohibition "wildly overbroad," CA9.Suppl.Br.28, the Ninth Circuit focused its First Amendment analysis exclusively on Facebook's argument that the government-debt-collection exception that Congress added in 2015 rendered the TCPA's prohibition content-based. App.11-12.  The Ninth Circuit reasoned that because the government-debt-collection exception "targets speech based on its communicative content, the exception is content-based and subject to strict scrutiny." App.11-12.  The court then held that the government-debt-collection exception is "insufficiently tailored to advance the government's interests in protecting privacy or the public fisc" and so fails strict scrutiny. App.18.

The Ninth Circuit accepted Facebook's argument that the government-debt exception rendered the TCPA's prohibition on calls from an ATDS unconstitutional, but then proceeded to deny Facebook any relief under the guise of severability analysis. The Ninth Circuit proceeded on the premise that the government-debt-collection exception, rather than the prohibition, was unconstitutional (even though the exception does not prohibit any speech, does not apply to Facebook, and is not what Facebook challenged).  Based on the mistaken premise that the exception was what was unconstitutional, the Ninth Circuit found the "unconstitutional exception" severable from the rest of the statute, including the speech-abridging prohibition that Facebook actually challenged.  App.19-20.  Thus, although the Ninth Circuit agreed with Facebook that the government-

12

debt-collection exception caused "the TCPA [to] now favor[]" one type of "speech" over another based on its content, the court gave Facebook no relief.  App.11.  In fact, the Ninth Circuit's severability approach *broadened* the TCPA's speech restrictions to abridge more speech.

The government filed a petition for panel rehearing and rehearing en banc on the constitutional issue, arguing that "the panel misapprehended a question of exceptional importance when it erroneously invalidated part of an Act of Congress." U.S.Reh'g.Pet.1.  The government acknowledged that Facebook's challenged the constitutionality of the TCPA's prohibition, not the government-debt-collection exception, *id.* at 14, and that in using severability analysis to deny relief to Facebook, the court had effectively rendered an advisory opinion. The government's extraordinary solution was to suggest that the panel "should have started with the severability analysis" before addressing the statute's constitutionality.  *Id.* at 6.  The court denied the government's petition on August 22, 2019.  App.21-22.

## REASONS FOR GRANTING THE PETITION

This petition raises two exceptionally important, interrelated questions involving the constitutionality and scope of the TCPA, one of the most frequently litigated federal statutes.  To say that the decision below will carry extraordinary practical consequences is an understatement.

Both questions presented are independently certworthy, and together they compel review.  First, the Ninth Circuit followed up the grave and delicate task of declaring an Act of Congress unconstitutional

13

with the even more extraordinary step of denying any relief to the party successfully challenging the statute's constitutionality. Both steps in that process justify this Court's review. The determination that an Act of Congress violates the Constitution almost always merits this Court's plenary review. But in reaching that conclusion and then denying Facebook any relief by rewriting the TCPA to abridge even more speech, the Ninth Circuit plainly inverted First Amendment principles. The Ninth Circuit lost sight of both what Facebook had challenged as unconstitutional (the TCPA's prohibition on calls from an ATDS, which is, not coincidentally, what plaintiffs alleged that Facebook violated) and the proper and properly limited role of a federal court in remedying a First Amendment violation. Having found the TCPA's prohibition to be an unconstitutional abridgement of speech, the Ninth Circuit should have invalidated the prohibition. It had no license to rewrite the statute to broaden the unconstitutional prohibition by eliminating an exception that Facebook never challenged and did not abridge anyone's speech. The Ninth Circuit's decision contravenes numerous precedents of this Court and other circuits analyzing First Amendment challenges in analogous contexts. This Court's intervention is necessary to correct this egregious error of constitutional dimension.

This Court's intervention is likewise needed to resolve the acknowledged circuit conflict regarding the ATDS definition. Indeed, the scope of the ATDS definition is inextricably intertwined with the constitutional issues. It is hard to meaningfully address the constitutionality of a prohibition on ATDS calls without first knowing whether an ATDS refers to

14

a small universe of rapidly obsolescing robocalling machines or virtually every modern smartphone. Moreover, as Facebook has consistently argued, if the latter view is correct, then the TCPA's content-based discrimination is the least of its First Amendment defects, as the statute would be wildly overbroad. The Ninth Circuit's atextual construction of the ATDS definition thus not only conflicts with the better reasoned views of the Third and D.C. Circuits, but it exacerbates the statute's constitutional difficulties. The statutory question has enormous practical consequences, as Americans deserve to know whether they have been inadvertently toting ATDSs around in their pockets and purses and risking $1,500-a-call fines. In short, both questions presented are independently certworthy and granting both questions will allow the Court to fully consider both issues and potentially avoid the constitutional questions altogether. This Court should grant review on both questions presented.

I.   **The Court Should Grant Certiorari To Bring The Ninth Circuit In Line With This Court's First Amendment Jurisprudence.**

The Ninth Circuit decision below committed both statutory and constitutional errors, but it did get one important thing right: the TCPA prohibition on ATDS calls that Facebook is alleged to have violated is a content-based restriction on speech because it plainly "draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). To determine whether the TCPA's prohibition applies, one must consider the content of the call, including whether it was "made for

15

emergency purposes" or "to collect a debt owed to or guaranteed by the United States," 47 U.S.C. §227(b). If the call seeks to alert the recipient of an emergency or to collect a government debt, the call is permissible. If the call addresses non-emergency matters, urges the resistence of government-debt collections, or addresses virtually any other subject, it is verboten.

That kind of content-based restriction of speech is plainly unconstitutional. *See McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (a statute "would be content based if it require[s] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred"). This Court has made crystal clear that the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed*, 135 S. Ct. at 2226. Accordingly, laws that "target speech based on its communicative content," "appl[y] to particular speech because of the topic discussed or the idea or message expressed," or "draw[] distinctions based on the message a speaker conveys" are "presumptively unconstitutional" and may be justified "only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 2226-27. As the Ninth Circuit recognized, the extent to which the TCPA's prohibition on ATDS calls applies depends "exclusively on the purpose and content of the call." App.14. Moreover, having recognized that the TCPA's content-based speech restriction triggers heightened scrutiny, the Ninth Circuit squarely rejected the government's efforts to justify it as a narrowly tailored effort to further compelling interests. App.14-18.

16

While the Ninth Circuit was eminently correct to recognize that the TCPA's content-based prohibition on ATDS calls was unconstitutional, it then made a critical misstep. The Ninth Circuit proceeded as if all that was unconstitutional was the speech-permitting government-debt-collection exception, rather than the speech-abridging prohibition on ATDS calls. App.15 (condemning "the debt-collection exception— *not* … the TCPA overall"). Thus, based on the mistaken premise that the government-debt-collection exception was what was unconstitutional, the Ninth Circuit proceeded to analyze whether the *exception* could be "severed" from the statute, rather than whether the *prohibition* should be invalidated. App.19-20. The Ninth Circuit breezily concluded that the government-debt-collection exception could be severed without doing damage to "the fundamental purpose of the TCPA" since the exception was a relatively recent addition to the statute and because the TCPA includes a severability provision. App.19-20.

The Ninth Circuit's analysis is deeply flawed as a matter of severability doctrine and First Amendment principles. First, by starting from the mistaken premise that the speech-permitting government-debt-collection exception was unconstitutional, the Ninth Circuit reached an untenable conclusion. Facebook never challenged the constitutionality of the government-debt-collection exception as such. Facebook's security texts do not even implicate the exception, and Duguid never accused Facebook of violating it. Instead, what Duguid alleges that Facebook violated and what Facebook challenged as unconstitutional was the TCPA's basic prohibition on

17

ATDS calls.  To be sure, Facebook argued that the government-debt-collection exception (along with the emergency exception and the FCC's authority to exempt calls deemed to advance the TCPA's purposes, 47 U.S.C. §227(b)(2)(B)) rendered the prohibition content-based and unconstitutional.  But it was always the speech-restricting prohibition that Facebook assailed as unconstitutional, as even the government recognized in its rehearing petition. U.S.Reh'g.Pet.14.  Having prevailed on that argument, Facebook was entitled to have the prohibition invalidated, with the only remaining severability question being whether anything else in the statute should fall along with the prohibition.

What the Ninth Circuit engaged in was not "severability" analysis at all, but a wholly improper exercise in rewriting a statute to excise the one thing in the statute that surely did not violate the First Amendment—a speech-permitting exception—and to broaden the prohibition to abridge more speech than the Act it declared unconstitutional.  By broadening the speech prohibition, the Ninth Circuit not only went beyond any proper application of severability doctrine, but turned First Amendment principles on their head.

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech."  U.S. Const. amend. I.  Needless to say, this Amendment prohibits laws that abridge or restrict speech on the basis of content or viewpoint. Exceptions that allow certain speech to avoid the censor's reach may render the censorship that actually

18

occurs unconstitutional, but the exceptions are not what run afoul of the First Amendment.

In recognition of this basic principle of First Amendment law, this Court has repeatedly remedied a First Amendment violation by invalidating the unconstitutional restriction—not the exception. In *Reed v. Town of Gilbert*, for example, the Court addressed the Town of Gilbert's "Sign Code." The Gilbert code mirrored the TCPA's structure:   it contained a blanket "prohibit[ion]" on "the display of outdoor signs anywhere within the Town," but then included a series of "exemptions." *Reed*, 135 S. Ct. at 2224. These exemptions allowed the display of certain types of signs "on the basis of whether a sign conveys" a particular "message." *Id.* at 2227.  As this Court explained, the "Town's *Sign Code* [was] content based on its face" because the existence of the various exemptions meant the prohibition on the display of outdoor signs "that apply to any given sign ... depend[s] entirely on the communicative content of the sign." *Id.* (emphasis added).  The Court subjected the Sign Code to strict scrutiny, concluding that the existence of the various exceptions from the Code's blanket ban rendered the Sign Code "hopelessly underinclusive." *Id.* at 2231.  The Court then invalidated the Sign Code, not once suggesting that it might cure the First Amendment problem by "[e]xcising the ... exception[s]" to "preserve[] the fundamental purpose" of the Sign Code and restore a "content-neutral" Sign Code.  App.20.

This Court's other First Amendment decisions have charted a similar course, recognizing that when a government enacts a broad prohibition on speech,

19

but then exempts certain types of speech from that prohibition based on the content of the speech, that the statutory *prohibition*—not the *exception*—is subject to strict scrutiny and invalidation under the First Amendment.  *See, e.g.*, *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 805 (2011); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-64, 580 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 189-90 (1999); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488-91 (1995); *City of Ladue v. Gilleo*, 512 U.S. 43, 53 (1994); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430-31 (1993); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 233 (1987); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 794-95 (1978).

The vast majority of the Courts of Appeals have likewise been faithful to First Amendment values when analyzing First Amendment challenges to statutes, striking down the speech-restrictive prohibitions, rather than excising speech-permitting exceptions to broaden the abridgement.  *See, e.g.*, *Willson v. City of Bel-Nor*, 924 F.3d 995, 1000, 1004 (8th Cir. 2019); *Rappa v. New Castle Cty.*, 18 F.3d 1043 (3rd Cir. 1994); *id.* at 1079-80 (Alito, J., concurring); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993); *Matthews v. Town of Needham*, 764 F.2d 58, 61 (1st Cir. 1985) (Rosenn, Breyer, and Torruella, JJ.); *Beckerman v. City of Tupelo*, 664 F.2d 502, 513 (5th Cir. Unit A 1981).

The Third Circuit's decision in *Rappa* applied the majority approach notwithstanding a broad severability clause.   There, the Third Circuit

20

addressed the constitutionality of a Delaware ordinance similar to both the Town of Gilbert's Sign Code and the TCPA in that it generally prohibited a medium of speech (signs near state highways) but exempted signs advertising "local industries, meetings, buildings, historical markers and attractions." 18 F.3d at 1043. After holding that the statute was an unconstitutional content-based restriction of speech, the court addressed whether severability would be an appropriate remedy in light of an express severability clause. *See id.* at 1072. The Third Circuit recognized that "the rest of the statute could surely function independently" if the exemptions were severed, but nonetheless declined to adopt a remedy that would prohibit more speech because it would be inconsistent with the basic principle that the First Amendment prohibits the abridgement of speech. *Id.* at 1072-73.

Unfortunately, the Ninth Circuit's erroneous "severability" analysis does not stand alone. Weeks before the Ninth Circuit's ruling, the Fourth Circuit addressed the constitutionality of the TCPA's content-based speech restriction in *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019). The Fourth Circuit likewise concluded that the government-debt-collection exception rendered the TCPA's prohibition unconstitutional and likewise concluded that severing the exception—and extending the ban—was the appropriate remedy. *Id.* at 171. Recent decisions by the Seventh and Eighth Circuits addressing state anti-robocall statutes with content-based exceptions likewise appear to contemplate that severing the exception is the proper remedy for the First Amendment violation in comparable

21

circumstances. *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305 (7th Cir. 2017); *Gresham v. Swanson*, 866 F.3d 853, 854-55 (8th Cir. 2017); *see also, e.g.*, *Perrong v. Liberty Power Corp.*, 2019 WL 4751936, at *6-7 (D. Del. Sept. 30, 2019).

All those decisions are wrong, and the fact that multiple courts are making the same error as the Ninth Circuit underscores the need for this Court's review. This novel and misguided approach to "severability" defies sound remedial doctrine and undermines basic First Amendment principles. This Court should review and correct this mistaken approach before it spreads to other contexts. This Court has developed its First Amendment jurisprudence based on challenges by parties like Pastor Reed and Facebook who object to being subjected to an unconstitutional restriction on speech. Their objection is not to speech-permitting exceptions that do not protect their speech, but to the abridgement of their own speech by laws that proscribe or authorize speech based on content. To tell them, as the Ninth Circuit did, that their First Amendment challenge prevailed but they are entitled to no relief because the Court will simply broaden the prohibition is wrong and will deter future challenges. The remedy for an unconstitutional abridgement of speech is not less speech and broader abridgement.

Even the government recognized that something was amiss with the Ninth Circuit's analysis when it suggested in its rehearing petition that its failure to grant Facebook any relief gave the Ninth Circuit's unconstitutionality ruling the feel of an advisory opinion. U.S.Reh'g.Pet.5-6. But rather than recognize that this error stemmed from a mistaken

22

"severability" analysis, the government made the extraordinary suggestion that the court "should have started with severability analysis" before addressing constitutionality. *Id.* at 6. There is no support for that cart-before-horse approach, which would have courts assume a federal statute is unconstitutional in order to avoid holding it unconstitutional. Instead, the solution is far more straightforward: courts should give meaningful relief to a party, like Facebook, who successfully challenges the constitutionality of a prohibition being applied to it and abridging its speech.

The Ninth Circuit's mistaken "severability" analysis created one last anomaly—it caused the Ninth Circuit to simply ignore Facebook's broader overbreadth challenge to the TCPA prohibition. Facebook challenged the TCPA prohibition not just as content-based but as overbroad, especially in light of the Ninth Circuit's unduly broad definition of an ATDS. CA9.Suppl.Br.32-35. However, because the Ninth Circuit accepted Facebook's content-based challenge only to deny it any relief, it never grappled with Facebook's overbreadth challenge. As a result, the Ninth Circuit never addressed the obvious First Amendment problems with interpreting the TCPA's prohibition on calls from an ATDS to presumptively reach every call or text from a modern smartphone to an out-of-date number in its contacts list. As the next section makes clear, the Ninth Circuit's atextual conception of an ATDS is both wrong as a statutory matter and exacerbates the TCPA's dire First Amendment problems.

23

## II. The Court Should Grant Certiorari To Provide A Workable, Uniform Interpretation Of The TCPA.

In holding that any device that can "store numbers to be called" and "dial [those] numbers" counts as an ATDS, *Marks*, 904 F.3d at 1052, the Ninth Circuit misinterpreted the statute and greatly exacerbated the TCPA's constitutional difficulties by expanding the statute to reach nearly every telephone in use today. This is a stunning reimagination of a statute that Congress passed to curb the telemarketing abuses of the late 1980s and early 1990s. But the Ninth Circuit's statutory re-invention of the TCPA badly misconstrues its text, eschews sound principles of constitutional avoidance, and creates a circuit split. Given the volume of TCPA lawsuits flooding the lower courts, the scope of the TCPA is an issue of substantial national importance that informs the question of the TCPA's constitutionality and fully merits this Court's review.

### A. The Statutory Text Forecloses the Ninth Circuit's Expansive Interpretation of an ATDS.

The Ninth Circuit's ruling in *Marks*, reaffirmed in the decision below, impermissibly rewrites the TCPA to have a breadth that Congress could not possibly have intended. Time and again, this Court has instructed that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *see also, e.g., Hartford Underwriters Ins. Co. v. Union Planters*

24

*Bank, N. A.*, 530 U.S. 1, 6 (2000).  That principle holds true even if the statute as written "is awkward," *Lamie*, 540 U.S. at 534, because the "Court *cannot* construe a statute in a way that negates its plain text," *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 n.2 (2017) (emphasis added).

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. §227(a)(1).  The definition thus describes the functionality an ATDS must have—*i.e.*, it must be able either "to store or produce numbers to be called"—and further defines *how* those functions must be discharged—*i.e.*, "using a random or sequential number generator."  After all, "the most natural way to view [a] modifier" like "using a random or sequential number generator," which is set off by a comma, is to read the modifier "as applying to the entire preceding clause."  *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1077 (2018); s*ee also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 161-62 (2012) (under the "punctuation canon," a qualifying phrase separated from its antecedents by a comma means that the qualifying phrase applies to all antecedents, and not only to the immediately preceding one).  The phrase "using a random or sequential number generator" thus modifies *both* verbs in the preceding clause:  "store" and "produce."[2]

---

[2] The same result would follow even without the comma, pursuant to the so-called "series-qualifier canon."  *See* Scalia & Garner at 147 ("When there is a straightforward, parallel

25

Read naturally and as a matter of ordinary English, equipment qualifies as an ATDS if it can either (1) "store … telephone numbers to be called, using a random or sequential number generator"; or (2) "produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. §227(a)(1)(A). Either way, the critical mechanism Congress identified (and what distinguishes an ATDS from an ordinary smartphone) is the device's use of "a random or sequential number generator."

The Ninth Circuit blazed a different trail. Violating principles of punctuation, grammar, and statutory interpretation, the court held that the "phrase 'using a random or sequential number generator' modifies *only* the verb 'to produce,' and not the preceding verb, 'to store.'" App.6 (emphasis added). Under this reading, to qualify under the "store" prong, "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" App.6. That interpretation massively expands the reach of the statute, but the Ninth Circuit did not even try to reconcile that expansion with the statutory text. Nor could it have done so: the applicable rules of construction mandate that the phrase "using a random or sequential number generator" applies to the entire preceding clause—including its separate references to both "stor[ing]" and "produc[ing]" telephone numbers.

---

construction that involves all nouns or verbs in a series, a … postpositive modifier normally applies to the entire series.").

26

The impact of the Ninth Circuit's interpretive maneuver is staggering. While the typical telephone is incapable of storing or producing numbers "using a random or sequential number generator" without further configurations, virtually any modern telephone has the capacity to store numbers and then dial those numbers automatically. The 265.9 million smartphones in the U.S. all have the basic capacity to store lists of numbers and call numbers automatically from those lists (*e.g.*, "Hey Siri, call …."; automatic do-not-disturb messages when cell phone owner is driving), to say nothing of the phones sitting on office desks and kitchen counters across the country. *See Number of smartphone users in the United States 2010 to 2023*, Statista, https://bit.ly/2gbXF5d (last visited Oct. 17, 2019). And because the TCPA imposes liability on any call made from an ATDS—regardless of whether it actually uses any autodialing functions to make the calls at it issue—the Ninth Circuit's interpretation renders unlawful virtually every wrong number called from the contacts list of any smartphone in the United States. As the D.C. Circuit recognized, it simply "cannot be the case" that under a law Congress passed in 1991 "every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact." *ACA Int'l*, 885 F.3d at 698.

Yet that is precisely the world the Ninth Circuit has created by construing "the statutory definition of an ATDS in a manner that brings within the definition's fold the most ubiquitous type of phone equipment known, used countless times each day for routine communications by the vast majority of people

27

in the country." *Id.* To its credit, the Ninth Circuit did not deny this consequence. It readily acknowledged that its "gloss on the statutory text" could "not avoid capturing smartphones." App.8-9.

None of the Ninth Circuit's justifications for this remarkable act of statutory revisionism holds water. First, the Ninth Circuit perceived a "linguistic problem" when applying normal grammar rules to the TCPA because "it is unclear how a number can be *stored* (as opposed to *produced*) using 'a random or sequential number generator.'" *Marks*, 904 F.3d at 1052 n.8; *see also id.* at 1051 ("After struggling with the statutory language ourselves, we conclude that it is not susceptible to a straightforward interpretation based on the plain language alone."). But nothing about the ordinary meaning of "random or sequential number generator" precludes the conclusion that a device with such functionality can also store the numbers it generates. To the contrary, random number generators at the time of the TCPA's enactment *could* "store" numbers and often needed to do so to avoid generating and calling the same number multiple times. *See, e.g.*, Noble Systems Corp., *Comments on FCC's Request for Comments on the Interpretation of The TCPA in Light of* Marks v. Crunch San Diego i-ii (Oct. 16, 2018), https://bit.ly/2n32vHd (describing technology at the time of the TCPA's enactment that "use[d]" a random number generator "to store" numbers, and explaining why this function was important). There is thus no "linguistic problem," and no reason to manipulate the text to prevent one.

28

Second, the Ninth Circuit relied heavily on Congress' inaction in response to certain FCC orders broadly interpreting the ATDS definition. *See* 904 F.3d at 1051-52. This reasoning was equally misguided. The FCC rulings the Ninth Circuit cited are the same rulings that the D.C. Circuit invalidated because they "f[e]ll[] short of reasoned decisionmaking" and "offer[ed] no meaningful guidance to affected parties in material respects on whether their equipment is subject to the statute's autodialer restriction." *ACA Int'l*, 885 F.3d at 701. Invoking congressional silence in the face of *invalid* agency rulemaking is a novelty even in the soft science of using congressional acquiescence to interpret statutes. It also ignores this Court's directive that even in more conventional circumstances, "[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 186-87 (1994).

The Ninth Circuit's expansive ATDS interpretation profoundly exacerbates the First Amendment problems with the statute by prohibiting speech well beyond what the 102nd Congress could have possibly conceived. As even the Ninth Circuit recognized, Congress "focused on regulating the use of equipment that dialed blocks of sequential or randomly generated numbers," which could tie up emergency services and reach users with unlisted telephone numbers. *Marks*, 904 F.3d at 1051; *see also id.* at 1043-45. In that regard, the TCPA has been a resounding success—equipment that uses "random or sequential number generator[s]" has all but

29

disappeared from use. Fast-forward three decades, though, and a statute designed to regulate specialized equipment deployed by robocallers has been radicalized by the Ninth Circuit to threaten a broad range of speech that takes place in today's digital economy. Ordinary cell phone communications that have nothing to do with the disruptive telemarketing practices that drew Congress' ire now take place under threat of crippling statutory liability. This Court's review is imperative to correct the Ninth Circuit's flawed and dangerous ruling.

**B. The Ninth Circuit's Interpretation Creates a Circuit Split.**

The Ninth Circuit's holding that TCPA liability extends to equipment that "stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator," *Marks*, 904 F.3d at 1043, is not only wrong, but also creates a divide among the lower courts about the proper interpretation of the ATDS prohibition.

1. The Ninth Circuit's holding in *Marks* created a direct and acknowledged conflict with the Third Circuit. In *Dominguez ex rel. Himself v. Yahoo, Inc.* (*Dominguez II*), the Third Circuit squarely held that an ATDS device *must* have the capacity to "generat[e] random or sequential telephone numbers and dial[] those numbers." 894 F.3d 116, 121 (3d Cir. 2018). Simply having the capacity to store and dial numbers was not enough. *Id.* The plaintiff in *Dominguez II* had received unwanted text messages from Yahoo "because the prior owner of [his] telephone number had affirmatively opted to receive them." *Id.* at 117,

30

121. On appeal, the Third Circuit identified the "key ... question" as whether Yahoo's system "functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers." *Id.* at 121. It did not. Yahoo's system sent automatic "messages only to numbers that had been individually and manually inputted into its system by a user," and there was no evidence that Yahoo's system could "function as an [ATDS] by generating random or sequential telephone numbers and dialing those numbers." *Id.*

In *Marks*, the Ninth Circuit expressly "decline[d] to follow" the Third Circuit's precedential holding in *Dominguez II*. 904 F.3d at 1052 n.8. In the Ninth Circuit's view, the Third Circuit's opinion was "unpersuasive" and "unreasoned" because it failed to grapple with the "linguistic problem" of how a number could be "*stored* (as opposed to *produced*) using 'a random or sequential number generator.'" *Id.* The intractable conflict between the Third and Ninth Circuits is widely acknowledged and is the subject of considerable commentary. *E.g.*, *Snow v. Gen. Elec. Co.*, 2019 WL 2500407, at *6 (E.D.N.C. June 14, 2019), *appeal pending*, No. 19-1724 (4th Cir. docketed July 11, 2019); *Consumer Protection: Ninth Circuit Creates Circuit Split on Autodialer Rule Under the TCPA*, 31 Bus. Torts Rep. 37, 38 (Dec. 2018); 4 Ian Ballon, *E-Commerce & Internet Law* §29.16 (2019 update); Stephen P. Mandell et al., *Recent Developments in Media, Privacy, Defamation, and Advertising Law*, 54 Tort Trial & Ins. Prac. L.J. 651, 679-80 (Spring 2019).

2. The Ninth Circuit's interpretation also conflicts directly with the D.C. Circuit's decision in *ACA*

31

*International*, where the D.C. Circuit invalidated a line of FCC orders regarding the definition of an ATDS on the basis that the "TCPA cannot reasonably be read to render every smartphone an ATDS subject to the Act's restrictions, such that every smartphone user violates federal law whenever she makes a call or sends a text message without advance consent." 885 F.3d at 697; *see also, e.g.*, Declaratory Ruling and Order, *Rules and Regulations Implementing the TCPA Act of 1991*, 30 FCC Rcd. 7,961, 7,974-75 ¶¶16, 18 (2015). The D.C. Circuit explained that any such interpretation would be "an unreasonable, and impermissible, interpretation of the statute's reach," and fundamentally "untenable." *ACA Int'l*, 885 F.3d at 697-98.

The D.C. Circuit's holding cannot be reconciled with *Marks* or the decision below, in which the Ninth Circuit acknowledged that its construction of the statute *does* result in virtually every ordinary smartphone being deemed an ATDS. Despite recognizing that millions of smartphones are currently configured to "store numbers and, using built-in automated response technology, dial those numbers automatically," App.7, the Ninth Circuit reaffirmed that *any* device capable of performing those two basic functions qualifies as an ATDS, App.4. Indeed, the court not only recognized that smartphones can "store numbers … to be called" but described that as their "quintessential purpose." App.9.

The FCC itself has recognized that *Marks* and *ACA International* are fundamentally incompatible. In a notice seeking public comment on the *Marks* ruling, the FCC observed that *Marks* read the ATDS

32

definition "expansively" to include not only devices with the capacity to call numbers produced by a random or sequential number generator, but also devices with the capacity to store numbers and to dial those stored numbers automatically (as all ordinary smartphones can do).  FCC, *Public Notice: Consumer and Governmental Affairs Bureau Seeks Further Comment on Interpretation of the TCPA in light of the Ninth Circuit's* Marks v. Crunch San Diego, LLC *Decision* 2 (Oct. 3, 2018), https://bit.ly/2Qso4KG.  The FCC contrasted *Marks* with the D.C. Circuit's interpretation in *ACA International*, which "held that the TCPA unambiguously foreclosed any interpretation that 'would appear to subject ordinary calls from any conventional smartphone to the Act's coverage.'"  *Id.* (quoting *ACA Int'l*, 885 F.3d at 692).  Courts and commenters alike agree that *Marks* is flatly inconsistent with *ACA International.  See, e.g., Roark v. Credit One Bank, N.A.*, 2018 WL 5921652, at *3 (D. Minn. Nov. 13, 2018); 4 E-Commerce & Internet Law §29.16; Blaine C. Kimrey & Bryan K. Clark, *What's That* Crunch-*ing sound?  Reason Being Destroyed in the Ninth Circuit*, The Nat'l L. Rev. (Sept. 27, 2018), https://bit.ly/2lvHtAp.

3. This circuit split has confounded district courts across the country, including those outside the Third, Ninth, and D.C. Circuits.  The majority of those courts favor the Third Circuit's view and reject the Ninth Circuit's approach,[3] while the minority agree with the

---

[3] *See, e.g., Denova v. Ocwen Loan Servicing*, 2019 WL 4635552, at *3 (M.D. Fla. Sept. 24, 2019); *Smith v. Premier Dermatology*, 2019 WL 4261245, at *4-7 (N.D. Ill. Sept. 9, 2019); *Morgan v. On Deck Capital, Inc.*, 2019 WL 4093754, at *6 (W.D. Va. Aug. 29,

33

Ninth Circuit.[4] This deep and well-entrenched conflict at all levels of the federal courts is untenable. Billions of dollars are at stake in putative class actions seeking $1,500-per-call statutory penalties. The lower courts are hopelessly fractured, and certiorari is warranted

---

2019); *Adams v. Safe Home Sec. Inc.*, 2019 WL 3428776, at *3 (N.D. Tex. July 30, 2019); *Snow*, 2019 WL 2500407, at *6; *Kloth-Zanard v. Bank of Am.*, 2019 WL 1922070, at *10 (D. Conn. Apr. 30, 2019); *Gadelhak v. AT&T Servs., Inc.*, 2019 WL 1429346, at *5-6 (N.D. Ill. Mar. 29, 2019), *appeal pending*, No. 19-1738 (7th Cir. argued Sept. 27, 2019); *Might v. Capital One Bank (USA), N.A.*, 2019 WL 544955, at *3 (W.D. Okla. Feb. 11, 2019); *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 625-26 (N.D. Iowa 2019); *Asher v. Quicken Loans, Inc.*, 2019 WL 131854, at *3 (D. Utah Jan. 8, 2019); *Roark*, 2018 WL 5921652, at *3; *Glasser v. Hilton Grand Vacations Co., LLC.*, 341 F. Supp. 3d 1305, 1310 (M.D. Fla. 2018), *appeal pending*, No. 18-14499 (11th Cir. docketed Oct. 24, 2018); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 963 (E.D. Mich. 2018); *Lord v. Kisling, Nestico & Redick, LLC*, 2018 WL 3391941, at *3 (N.D. Ohio July 12, 2018).

[4] *See, e.g., Allan v. Pa. Higher Educ. Assistance Agency*, 2019 WL 3890214, at *2-3 (W.D. Mich. Aug. 19, 2019); *Gerrard v. Acara Sols. Inc.*, 2019 WL 2647758, at *10-11 (W.D.N.Y. June 27, 2019); *Espejo v. Santander Consumer USA, Inc.*, 2019 WL 2450492, at *6-7 (N.D. Ill. June 12, 2019); *Gonzalez v. HOSOPO Corp.*, 371 F. Supp. 3d 26, 34 (D. Mass. 2019); *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 333-34 (S.D.N.Y. 2019); *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476, 487-89 (E.D.N.Y. 2019), *appeal pending*, No. 19-600 (2d Cir. docketed July 11, 2019); *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1355 (S.D. Fla. 2018); *Maes v. Charter Commc'n*, 345 F. Supp. 3d 1064, 1070 (W.D. Wis. 2018); *Heard v. Nationstar Mortg. LLC*, 2018 WL 4028116, at *6 (N.D. Ala. Aug. 23, 2018); *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 587-88 (M.D. Tenn. 2018); *Evans v. Pa. Higher Educ. Assistance Agency*, 2018 WL 3954761, at *3 (N.D. Ga. June 12, 2018).

34

to provide much-needed clarity and restore uniformity to courts and potential litigants across the nation.

## III. The Questions Presented Are Exceptionally Important And This Case Is An Ideal Vehicle.

Both questions presented are tremendously important and will have consequences far beyond this case. The Ninth Circuit recognized that the TCPA involved an unconstitutional restriction of free speech. Generally, the invalidation of an Act of Congress on constitutional grounds is a sufficient basis for this Court's review. But here First Amendment error infected not just the statute but the Ninth Circuit's remedial analysis. The Ninth Circuit accepted Facebook's First Amendment arguments and yet denied it any meaningful relief by broadening the statutory restriction of speech. That perverse result only underscores the need for this Court's review. The framers designed the First Amendment as a bulwark against "abridging the freedom of speech." U.S. Const. amend. I. Yet in the Ninth Circuit the prize for mounting a successful First Amendment challenge is not meaningful relief, but a greater abridgement of free speech. That approach cannot be right. The answer to impermissible government restrictions of free speech has to be more speech, not broader abridgement. The Ninth Circuit's speech-reducing approach to remedying First Amendment violations contradicts this Court's precedents and merits plenary consideration.

That this First Amendment question arises in the context of the hotly-debated TCPA is even further reason for this Court's review. The TCPA is one of the

35

most frequently litigated statutes in the federal courts, with more than 12,000 new cases (including thousands of class action cases) filed in the last three years alone. *See WebRecon Stats for Dec 2018*, WebRecon LLC, https://bit.ly/2mellej (last visited Oct. 17, 2019) (indicating that 4,639 TCPA cases were filed in 2016, 4,380 in 2017, and 3,803 in 2018). With thousands of additional TCPA suits filed each year, the confusion resulting from the deep divide across these fundamental constitutional and statutory issues will only grow.

And yet as a result of the circuit split over the ATDS definition, entities operating nationwide and individuals communicating across the country now face divergent—and potentially enormous—liability based on the geographic happenstance of where recipients receive a call (or where they bring suit). That creates unsustainable uncertainty and the risk of arbitrary liability for those wishing to communicate their message via any device with autodialing capacity—which in the view of the Ninth Circuit includes the vast majority of telephones in use today.

This Court's timely review is imperative to ensure that courts across the country impose TCPA liability only as permitted by the Constitution and intended by Congress. And this case is an ideal vehicle to review both issues. Because of the statute's draconian penalty scheme, which imposes substantial monetary damages of up to $1,500 per call or text message, TCPA cases can threaten jury awards in the billions of dollars. There is thus typically substantial settlement pressure, and many TCPA cases do not make it past the early stages of litigation. But this case arises in

36

an ideal, concrete, real-world context. The parties—
including the government as intervenor-appellee in
both the district court and the Ninth Circuit—have
actively litigated both the constitutional and statutory
issues.

The combination of both constitutional and
statutory issues here makes this case in particular an
excellent vehicle. The issues are closely related and
this Court would benefit from considering them
together. Indeed, it would be virtually impossible to
consider whether the TCPA's basic prohibition on
ATDS calls is constitutional without knowing
precisely what counts as an ATDS. It makes far more
sense to tackle that question in a case where the
statutory definition has been actively litigated than in
a case where that issue has been addressed only by
assumption or in passing. Moreover, if the Ninth
Circuit were correct that the definition of an ATDS
includes virtually every modern smartphone then the
statutory overbreadth of a statute that undeniably
restricts speech would be unmistakable. Finally, the
inclusion of the statutory issue in this case provides
an opportunity for the Court to consider (and
potentially apply) constitutional-avoidance principles
that may be unavailable in a standalone constitutional
case.

37

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for certiorari.

Respectfully submitted,

ANDREW B. CLUBOK
ROMAN MARTINEZ
SUSAN E. ENGEL
SAMIR DEGER-SEN
GREGORY B.
 IN DEN BERKEN
LATHAM
 & WATKINS LLP
555 Eleventh Street, NW
 Suite 1000
Washington, DC 20004

PAUL D. CLEMENT
 *Counsel of Record*
DEVIN S. ANDERSON
KASDIN M. MITCHELL
LAUREN N. BEEBE
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, DC 20004
(202) 389-5000
paul.clement@kirkland.com

*Counsel for Petitioner*

October 17, 2019