Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Yana A. Hart, Esq. (SBN: 306499)
yana@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISHARI ALEISA and NICOLE BELLUOMINI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SQUARE, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 3:20-cv-00806-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SQUARE, INC.'S MOTION TO STAY PENDING THE SUPREME COURT'S DECISION IN FACEBOOK, INC. v. DUGUID AND/OR THE FCC'S DEFINITION OF ATDS**<br><br>Date:       October 1, 2020<br>Time:       1:30 p.m.<br>Judge:      Hon. Edward M. Chen<br>Courtroom:  5 – 17th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ........................................................................... ii

I.   INTRODUCTION ............................................................... 1

II.  RELEVANT BACKGROUND .................................................. 5

III. LEGAL STANDARDS ........................................................ 6

   A.   The Court's Inherent Authority. ....................................... 6

   B.   The Primary Jurisdiction Doctrine. .................................. 8

IV.  ARGUMENT ................................................................. 8

   A.   Binding Ninth Circuit Precedent Warrants Denial of the Stay ................. 8

   B.   All Landis Factors Require Denial of Square's Stay Request ................. 11

      i.    Substantial Prejudice to Plaintiffs Warrants Denial of a Stay. ......... 12

      ii.   There is not sufficient prejudice in being required to litigate .......... 15

      iii.  A stay would undermine the orderly course of justice .................... 17

   C.   The Primary Jurisdiction Doctrine Does Not Apply Because the Statutory
Definition of an ATDS is Not a Matter of First Impression & Controlling
Law Exists. ........................................................... 19

V.   CONCLUSION ............................................................. 25

<TABLE OF AUTHORITIES>

TABLE OF AUTHORITIES

**Cases**                                                        **Page No.**

*Abante Rooter & Plumbing Inc. v. Nationwide Mutual Insurance Company*,

    No. 17-cv-03328-EMC (N.D. Cal. Jan. 26, 2018) ............................ 4, 13, 17, 23

*ACA International v. FCC*,

    885 F.3d 687 (D.C. Cir. 2018)...................................................... 18, 24

*Alvarado v. United States*,

    2016 U.S. Dist. LEXIS 152813,

    2016 WL 6302517 (C.D. Cal. Oct. 14, 2016) .................................... 10

*Boger v. Citrix Sys.*,

    Civil Action No. 8:19-cv-01234-PX

    (D. Md. Apr. 22, 2020)........................................................ 19, 21, 24

*Cabiness v. Educ. Fin. Sols., LLC*,

    No. 16-cv-01109-JST,

    2017 U.S. Dist. LEXIS 6304

    (N.D. Cal. Jan. 17, 2017)................................................................ 14

*Castillo v. Caesars Entm't Corp.*,

    Case No.: 2:18-cv-02297-GMN-NJK

    (D. Nev. Sep. 30, 2019) ................................................................. 24

*Clark v. Time Warner Cable*,

    523 F.3d 1110 (9th Cir. 2008) ......................................................... 8

*Cline v. Ultimate Fitness Grp., LLC*,

    No. 618CV771ORL37GJK,

    2019 WL 4671195 (M.D. Fla. Feb. 12, 2019)................................... 24

*Clinton v. Jones*,

    520 U.S. 681 (1997) ....................................................................... 7

*CMAX, Inc. v. Hall*,

    300 F.2d 265 (9th Cir. 1962) ........................................................... 7

1  *Crooks v. Rady Children's Hosp.,*

2      2017 U.S. Dist. LEXIS 168085

3      (S.D. Cal. Oct. 10, 2017) ...................................................................................... 15

4  *D.C. v. Cty. of San Diego*,

5      No. 15cv1868-MMA (NLS),

6      2017 U.S. Dist. LEXIS 57736

7      (S.D. Cal. Apr. 14, 2017)...................................................................................... 14

8  *Dimaya v. Lynch*,

9      803 F.3d 1110 (9th Cir. 2015) ................................................................................ 9

10 *Doe v. Trump*,

11     284 F. Supp. 3d 1182 (W.D. Wash. 2018) .............................................................. 9

12 *Dominguez v. Yahoo, Inc.*,

13     894 F.3d 116 (3d Cir. 2018) ................................................................................. 21

14 *Duguid v. Facebook, Inc.*,

15     926 F.3d 1146 (9th Cir. 2019) ............................................................... 4, 8, 16, 22

16 *Duran v. La Boom Disco, Inc.*,

17     No. 19-600-cv (2d Cir. Apr. 7, 2020)................................................................... 20

18 *Edwards v. Oportun, Inc.*,

19     193 F. Supp. 3d 1096 (N.D. Cal. 2016)................................................................ 15

20 *Facebook Inc. v. Duguid*,

21     No. 19-511 ...................................................................................................... *passim*

22 *Facebook, Inc. v. Power Ventures, Inc.*,

23     2017 U.S. Dist. LEXIS 66948,

24     2017 WL 1650608 (N.D. Cal. May 2, 2017)........................................................... 9

25 *Gadelhak v. AT&T Servs., Inc.*,

26     No. 19-1738, 2020 WL 808270 (7th Cir. 2020)................................................... 21

27

28

*Gould v. Farmers Ins*. Exch.,

   Case No. 4:17 CV 2305 RWS,

   2018 U.S. Dist. LEXIS 131508

   (E.D. Mo. Aug. 6, 2018) ................................................................. 19

*Harnish v. Frankly Co*.,

   Case No. 5:14-CV-02321-EJD,

   2015 U.S. Dist. LEXIS 29982,

   2015 WL 1064442 (N.D. Cal. Mar. 11, 2015) ................................. 20

*Hart v. Massanari*,

   266 F.3d 1155, (9th Cir. 2001) ......................................................... 9

*Hoagland v. Axos Bank,*

   No. 19-cv-00750-BAS-JLB

   (S.D. Cal. Feb. 6, 2020) ............................................................. 4, 23

*In re Midland Credit Mgmt. Tel. Cons. Prot. Act Litig.*,

   No. 11-md-2286-MMA (MDD) (S.D. Cal. Aug. 1, 2020) ............ 7, 11

*Izor v. Abacus Data Sys., Inc.*,

   No. 19-CV-01057-HSG,

   2019 WL 3555110 (N.D. Cal. Aug. 5, 2019) ............................. *passim*

*Knapper v. Cox Commc'ns, Inc*.,

   No. 17-cv-00913-PHX-SPL,

   2019 WL 250430 (D. Ariz. Jan. 17, 2019) ...................................... 24

*Komaiko v. Baker Technologies, Inc.*,

   No. 19-cv-03795-DMR (N.D. Cal. Aug. 11, 2020) ...................... 3, 10

*Landis v. N. Am. Co*.,

   299 U.S. 248 (1936) ..................................................................... 7, 15

*Larson v. Harman Mgmt. Corp.*,

  No. 1:16-cv-00219-DAD-SKO,

  2018 U.S. Dist. LEXIS 208121

  (E.D. Cal. Dec. 10, 2018) .................................................. 5, 15, 16, 18

*Lathrop v. Uber Techs., Inc.*,

  Case No. 14-cv-05678-JST,

  2016 U.S. Dist. LEXIS 2490,

  2016 WL 97511, (N.D. Cal. Jan. 8, 2016).................................... 15, 16

*LG Elecs., Inc. v. Eastman Kodak Co.*,

  09-cv-344, 2009 WL 1468703

  (S.D. Cal. May 26, 2009) .................................................................. 12

*Lockyer v. Mirant Corp.*,

  398 F.3d 1098 (9th Cir. 2005) ................................................. 7, 15, 16

*Loritz v. CMT Blues*,

  No. 01cv2313 BTM(POR),

  2003 U.S. Dist. LEXIS 17127

  (S.D. Cal. Sep. 29, 2003)..................................................................... 9

*Marks v. Crunch San Diego, LLC*,

  904 F.3d 1041, 1053 (9th Cir. 2018)

  No. 14-56834, 2018 U.S. App. LEXIS 26883

  (9th Cir. Sep. 20, 2018) .......................................................... 1, 8, 16

*Mendez v. Optio Sols., LLC*,

  239 F. Supp. 3d 1229 (S.D. Cal. 2017) ............................................. 18

*Montegna v. Ocwen Loan Servicing, LLC*,

  No. 17-CV-00939-AJB-BLM,

  2017 U.S. Dist. LEXIS 172713

  (S.D. Cal. Oct. 18, 2017) .................................................................. 14

*Nicholson v. REI Energy, LLC,*
  No. 3:18-cv-00203-HZ,
  370 F. Supp. 3d 1199,
  2019 WL 993624 (D. Or. Feb. 28, 2019) .......................................................... 23

*Nken v. Holder,*
  556 U.S. 418 (2009) ...................................................................................... 7

*O'Hanlon v. 24 Hour Fitness USA, Inc.,*
  No. 15-cv-01821-BLF,
  2016 U.S. Dist. LEXIS 27509
  (N.D. Cal. Mar. 2, 2016) ............................................................................... 14

*Ontiveros v. Zamora,*
  2013 U.S. Dist. LEXIS 59621
  (E.D. Cal. Apr. 25, 2013) .............................................................................. 14

*Pascal v. Concentra, Inc.,*
  No. 19-cv-02559-JCS,
  2019 U.S. Dist. LEXIS 185193
  (N.D. Cal. Oct. 24, 2019) ................................................................ 5, 17, 18, 22

*Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.,*
  2017 U.S. Dist. LEXIS 168532,
  2017 WL 4536422 (N.D. Cal. Oct. 11, 2017) ................................................. 18

*Peralta v. Rack Room Shoes, Inc.,*
  No. CV 18-3738,
  2018 WL 6331798
  (E.D. La. Dec. 3, 2018) ................................................................................. 24

*Pieterson v. Wells Fargo Bank, N.A.,*
  No. 17-cv-02306-EDL,
  2018 WL 3241069
  (N.D. Cal. July 2, 2018) ................................................................................ 24

*R & L Ltd. Invs. Inc. v. Cabot Inv. Props., Ltd. Liab. Co.*,

    No. CV 09-1575-PHX-MHM,

    2010 U.S. Dist. LEXIS 107488

    (D. Ariz. Sep. 21, 2010) ...................................................................... 9

*Reed v. Autonation, Inc.*,

    No. CV-16-08916-BRO-AGRX,

    2017 U.S. Dist. LEXIS 224055,

    2017 WL 10592157 (C.D. Cal. Mar. 6, 2017) ..................................... 9

*Rose v. Sw. Credit Sys., L.P.*,

    No. CV-15-4998-MWF (PLA),

    2015 U.S. Dist. LEXIS 195291

    (C.D. Cal. Nov. 30, 2015) ............................................................. 7, 16

*Rosenberg v. LoanDepot.com LLC*,

    Civil Action No. 19-10661-NMG

    (D. Mass. Jan. 24, 2020)................................................................... 24

*Salazar v. Cty. of L.A.*,

    No. CV-15-09003-MWF-JC,

    2016 U.S. Dist. LEXIS 190608

    (C.D. Cal. Sep. 26, 2016) ................................................................ 15

*Samson v. United Healthcare Servs., Inc.*,

    No. C19-0175JLR (W.D. Wash. May 20, 2019)................................. 19

*Satterfield v. Simon & Schuster, Inc.*,

    569 F.3d 946 (9th Cir. 2009) ............................................................ 20

*Singer v. Las Vegas Athletic Clubs*,

    376 F. Supp. 3d 1062 (D. Nev. 2019) ......................................... 24, 25

*Thomas v. Smith-Palluck Assocs. Corp.*,

    No. 2:17-cv-02001-MMD-CWH

    (D. Nev. Apr. 12, 2019)............................................................... 23, 25

*United States v. Cortez-Ruiz*,

   2016 U.S. Dist. LEXIS 167789,

   2016 WL 7034057 (N.D. Cal. Dec. 2, 2016) ........................................................ 9

*United States v. Shumilo*,

   No. CR 09-939-GW-51,

   2016 U.S. Dist. LEXIS 152818

   (C.D. Cal. Oct. 24, 2016)........................................................................................ 9

*Van Patten v. Vertical Fitness Grp., LLC*,

   847 F.3d 1037 (9th Cir. 2017) ............................................................................... 1

*Wilson v. PL Phase One Operations L.P.*,

   Civil Action No. DKC 18-3285

   (D. Md. Sep. 27, 2019) ......................................................................................... 20

*Yashtinsky v. Walmart, Inc.*,

   No. 5:19-CV-5105

   (W.D. Ark. Nov. 12, 2019).................................................................................... 18

*Young v. Peraza*,

   No. 15-60968-CIV--COHN/SELTZER,

   2015 U.S. Dist. LEXIS 101844

   (S.D. Fla. Aug. 4, 2015) ........................................................................................ 13

# I.    INTRODUCTION

Coming on the heels of its first Motion to Stay, its 12(b)(1) Motion to Dismiss based on its affirmative defense of consent, its amended Motion to Dismiss (to correct the supposedly uncontested "facts" from its first motion to dismiss), as well as its recently served discovery requests to the representative plaintiffs, Defendant Square, Inc. ("Square" or "Defendant") now files a request to stay the proceedings pending the Supreme Court's anticipated 2021 decision in *Facebook Inc. v. Duguid*, No. 19-511 ("*Facebook*"), as well as its hope that the Federal Communications Commission ("FCC") will, at some point, issue some pronouncement as to its interpretation of the definition of an automated telephone dialing system ("ATDS"), and that such guidance *may* be helpful to its defense. [*See* ECF Nos. 23, 25 & 33.]

This Court should decline Square's request to hold up this case in the hopes that the law *may* someday become more favorable to its position.  The law is clear regarding what a plaintiff needs to allege and to prove to establish a TCPA violation, including what constitutes an ATDS.[1]  *See Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sep. 20, 2018) ("*Marks*").  Square cannot avoid liability under this binding precedent and so it seeks a stay hoping that the Supreme Court will adopt a narrower ATDS definition. [*But see* ECF No. 33 at 9, Square's Am. Mot. to Dismiss (stating that the subject texts were sent "automatically").]

*All* of the factors that courts consider in deciding whether to stay a case weigh in favor of denial of Square's request. First, Plaintiffs, the non-moving parties, would

---

[1]    Square begins its Memorandum in Support of its Motion to Stay by misstating the applicable law.  [*Compare* ECF 42 at 1:9-12 (stating that "[t]o prevail on their claims under the TCPA, Plaintiffs must prove that Square sent them text messages via an ATDS without their prior express consent."), *with, e.g.*, *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof.").

suffer damage or harm if the case is paused for any prolonged period of time. Although this case is in its relative infancy and the parties need to conduct discovery—including expert and third-party discovery, on among other things, Square's transmission of unsolicited loyalty text messages, its allegations of consent, the conspicuousness of the disclosure, the system utilized to send the subject messages—the prejudice to both parties given a stay is considerable, including the potential loss of evidence and memories.

These are not merely theoretical or possible harms; rather, for purposes of responding to Square's Rule 12(b)(1) motion—which inexplicably challenges Plaintiffs' allegations that they did not consent at the pleading stage and without the benefit of merits discovery on an issue for which Defendant unquestionably has the burden of proof—Mr. Yu Shan Fung, the engineer manager for Square's loyalty team, recently testified as the FRCP 30(b)(6) deponent, that Square utilized third-party vendor Twilio to send loyalty texts in 2017 until "sometime in 2018" whereupon it started using Bandwidth, a different vendor.  [*See* 08/07/20 Dep. Tr. of Yu Shan Fung ("Fung Tr."), at 15:1-6; 31:16-24; 32:13-15 & 32:22-25, attached to the Declaration of Yana Hart ("Hart Dec."), as Exhibit 1.]  There is very little chance that, in the case of Twilio, a former vendor will continue to hold onto texting records of its former client, particularly given a stay of this case for many months if not years.

<u>Second</u>, there is no hardship or inequity to Square if required to go forward with the case because irrespective of how the Supreme Court rules in *Facebook*, the parties here will still need to conduct discovery, including expert discovery and inspections, and brief the issue of whether the equipment utilized by Square to send thousands and thousands of unsolicited loyalty text messages is an ATDS.  Square cannot point to *any* harm that it will suffer besides having to litigate this case, which

it will have to do today or one year[2] from now when the Supreme Court issues its opinion.

Third, as Judge Ryu recently observed in denying a similar stay request in a TCPA case, a stay pending a ruling in *Facebook* will *not* narrow the issues in this case nor promote the orderly course of justice in any conceivable manner. *See Komaiko v. Baker Technologies, Inc.*, No. 19-cv-03795-DMR, at *5 (N.D. Cal. Aug. 11, 2020) ("In sum, it is not clear that a reversal in *Duguid* would be dispositive in this case.").

Nor should this Court stay this case pending some possible action by the FCC. Leaving aside the fact that there is no guarantee that the FCC is actually going to promulgate new regulations and certainly not as to the timing,[3] there are many additional reasons to deny Square's request, chief among them—as Judge Bashant noted in denying a similar stay request in *Hoagland v. Axos Bank*—is that a stay would actually be injurious to both parties:

> Even assuming the FCC did issue new rulings, these rulings would once again be subject to review under the Hobbs Act. **Frankly, both parties would be damaged by this approach.** There is no time limit as to when or whether the FCC will promulgate such regulations or when or whether the courts will then review these newly promulgated regulations. Thus, the stay could be an indefinite one, leading to a loss of evidence and memories and miscarriage of justice for all involved.

---

[2]     Square asserts that the Supreme Court's decision in *Facebook* "is expected in the first half of 2021, should resolve the split in authority and provide a uniform definition of ATDS. [ECF 42 at 10:16-17.]

[3]     Unlike its prior request to stay, Square—in this iteration—largely tries to sidestep the timing issue and meekly states, without any support whatsoever, the FCC will issue some ATDS guidance "soon." [*Compare* ECF 42 at 10:6, *with* ECF No. 25 at 8, 17 & 25 (stating that the "FCC's new definition is expected soon, likely before the end of 2020").]

> ***Furthermore, it is not clear to the court that the promulgation of regulations, if they occurred, would simplify or save judicial resources.*** First, the Ninth Circuit has clearly ruled on the definition of an ATDS. ***This Court is bound by that ruling, even when faced with a possible contradictory regulation.*** Second, the possibility of a contradictory regulation is so speculative that it does not warrant the stay. Finally, it is not at all clear that any regulation dealing with nonconsenting parties would be applicable to this case. The FCC has primarily focused on reassigned numbers as opposed to numbers simply called in error. It is unclear at this stage of the proceedings that any regulation would even be applicable to this case.

*Hoagland,* No. 19-cv-00750-BAS-JLB, at **6-7 (S.D. Cal. Feb. 6, 2020) (emphasis added) ("Ultimately, the fact that there is no clear timeline, and, in fact, there may not be new regulations promulgated by the FCC in the near future, leads the court to conclude that a stay at this stage would be inappropriate").[4] Or put another way and as this Court observed in denying a similar request in *Abante Rooter & Plumbing Inc. v. Nationwide Mutual Insurance Company*, "a stay is not warranted" as the much ballyhooed FCC action will likely "not significantly narrow the disputed issues, will not simplify the proceedings, and focused discovery will prepare a factual record so that the legal issues can be resolved after *ACA Int'l* is decided." No. 17-cv-03328-EMC, at *5 (N.D. Cal. Jan. 26, 2018).

This Court should reject Square's attempt to hold up these proceedings in the off-chance that the FCC issues some perceived favorable guidance. Although Square

---

[4]    Undaunted, and in hopes of avoiding *Marks*, Square stresses that the FCC solicited additional comment on what constitutes an ATDS following the Ninth Circuit's decision. But since then, the Ninth Circuit, in *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019), confirmed that *Marks* is unquestionably the law of the Ninth Circuit. In short, the state of the law is clear, Square just does not like it because its automated systems will clearly constitute an ATDS under the binding precedent.

does not want to acknowledge it, controlling Ninth Circuit authority already resolves the relevant question and a stay will not simplify the issues in this case, while causing significant prejudice to Plaintiffs' discovery process.  In short, "[f]ar from advancing the orderly course of justice, a stay in this case would amount to ignoring binding Ninth Circuit authority on a mere possibility that the law may at some point change to [Defendant's] benefit." *Pascal v. Concentra, Inc.*, No. 19-cv-02559-JCS, 2019 U.S. Dist. LEXIS 185193 (N.D. Cal. Oct. 24, 2019) (citing *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2018 U.S. Dist. LEXIS 208121, at *16 (E.D. Cal. Dec. 10, 2018) (holding that "[a]lthough future action by the FCC may ultimately impact the applicable law…the imposition of a stay would provide little benefit to the orderly course of justice" because "the Ninth Circuit has already decided what constitutes an ATDS and other district courts in this circuit have applied that binding authority.").

## II.    RELEVANT BACKGROUND

On February 3, 2020, representative Plaintiffs Mishari Aleisa and Nicole Belluomini commenced this class action lawsuit by filing a complaint alleging that Square sought to capitalize on the tremendous amount of consumer information it acquires by processing credit and debit card transactions by launching an add-on loyalty service for its seller clients. *See* ECF No. 1, Comp., ¶¶ 1-13 & 32-92.  As alleged in the Complaint, Square—no stranger to data privacy issues—associated the payment card information customers used to complete transactions with the mobile phone numbers provided to obtain digital receipts and then sent consumers thousands of unsolicited "loyalty" text messages in violation of the TCPA. *Id.*  These loyalty text messages were sent by Square on behalf of its seller clients (those small businesses that use Square's point of sale ("POS") hardware and software to process payment card transactions), and Square was paid based on the volume of text messages sent. *Id.*, ¶ 8.

On April 17, 2020, Square filed a motion to dismiss pursuant to FRCP 12(b)(1) contending that this Court was without subject matter jurisdiction to adjudicate Plaintiff Nicole Belluomini's claim because she lacked Article III standing because she supposedly consented to receiving the loyalty text at issue and she (inexplicably) sent the loyalty text to herself.  [*See* ECF No. 23.][5]

On May 11, 2020, Square filed its first motion to stay under the primary jurisdiction doctrine pending the FCC's "clarification" as to the definition of ATDS. [ECF No. 25.] On May 14, 2020, Plaintiffs—in order to respond to the motion to dismiss served jurisdictional discovery on Square.

Approximately five weeks later, on July 2, 2020, Square filed an Amended Motion to Dismiss, changing their own uncontested "facts" through an amended declaration setting now different "facts." ECF No. 33.  On July 20, 2020, this Court granted a Stipulation to continue the Hearing for Square's Pending motions and to modify the briefing schedule on Square's amended motion to dismiss. ECF No. 36. Thereafter, Square's additional co-counsel filed appearances, [ECF Nos. 37-40], and Square served interrogatories, request for the production of documents and for inspection on Plaintiffs, seeking information and documents beyond the scope of originally set jurisdictional discovery. Square then filed an amended motion requesting a stay pending the Supreme Court's decision in *Facebook* and/or FCC's definition of ATDS. [ECF No. 42.]

## III.   LEGAL STANDARDS

### A.   THE COURT'S INHERENT AUTHORITY.

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of

---

[5]     Square inexplicably did not respond to Plaintiff Aleisa's claims by the thrice-extended deadline of April 17, 2020, but rather unilaterally and arbitrarily waited until July 1, 2020 to file an Answer as well as numerous inapplicable and insufficiently pled affirmative defenses. [*See* ECF 32.]

KAZEROUNI
LAW GROUP, APC

time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The inherent power of district courts to grant stays "calls for the exercise of sound discretion," by which a court must weigh the competing interests of the parties that would be affected by a grant or denial of a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)); *Rose v. Sw. Credit Sys., L.P.*, No. CV-15-4998-MWF (PLA), 2015 U.S. Dist. LEXIS 195291, at *5 (C.D. Cal. Nov. 30, 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255-56 (1936)).

The Ninth Circuit identifies three competing interests to evaluate in deciding whether to grant a motion to stay: (i) "the *possible* damage which *may* result from granting a stay;" (ii) "the hardship or inequity upon the moving party being required to go forward" after denial of the stay and (iii) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law that could be expected to result from a stay." *See CMAX, Inc.,* 300 F.2d at 268 (emphasis added); *In re Midland Credit Mgmt. Tel. Cons. Prot. Act Litig.*, No. 11-md-2286-MMA (MDD), at *3 (S.D. Cal. Aug. 1, 2020) (denying joint motion to stay pending *Facebook* appeal).

"When weighing the relevant interests, the court must be mindful that 'if there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else,' then the movant 'must make a clear case of hardship or inequity in being required to go forward.'" *Rose*, 2015 U.S. Dist. LEXIS 195291, at *5 (quoting *Landis*, 299 U.S. at 255). "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Rose*, 2015 U.S. Dist. LEXIS 195291, at *5 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

**B.    THE PRIMARY JURISDICTION DOCTRINE.**

The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.  *See, e.g.*, *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). This doctrine allows the Court to determine that "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* (citation omitted). Resort to agency guidance should be done sparingly; "it is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id*. (internal quotations & citations omitted).

## IV.    ARGUMENT

**A.    BINDING NINTH CIRCUIT PRECEDENT WARRANTS DENIAL OF THE STAY**

As held by the Ninth Circuit, the TCPA defines an ATDS to include equipment that "stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). "[S]ince then, the Ninth Circuit has confirmed that *Marks* is the law of the Ninth Circuit." *Izor v. Abacus Data Sys., Inc.*, No. 19-CV-01057-HSG, 2019 WL 3555110, at *3 (N.D. Cal. Aug. 5, 2019) (citing *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019) (holding that the *Marks*' "definition governs this appeal")).

In requesting a stay, Square brazenly asks this Court to ignore binding Ninth Circuit precedent simply because the law is not favorable to its case. [ECF 42 at 4:4-6.] However, like it or not, *Marks* is controlling precedent and must be followed; "[h]owever, until the Supreme Court renders a decision, this Court is bound by Ninth

Circuit precedent." *Loritz v. CMT Blues*, No. 01cv2313 BTM(POR), 2003 U.S. Dist. LEXIS 17127, at *9 (S.D. Cal. Sep. 29, 2003); *see also Doe v. Trump*, 284 F. Supp. 3d 1182, 1185 (W.D. Wash. 2018) ("Once the Ninth Circuit decides an issue in a precedential opinion, the matter is resolved, unless the Ninth Circuit sitting en banc or the Supreme Court overrules the decision or Congress changes the law.") (citing *Hart v. Massanari*, 266 F.3d 1155, 1171 & n.28 (9th Cir. 2001)).

The Supreme Court's hypothetical decision in *Facebook* which will likely be pending until mid-next year at best, is not a guarantee that the Court will issue any definitive guidance as to what constitutes an ATDS. *See, e.g.*, *R & L Ltd. Invs. Inc. v. Cabot Inv. Props., Ltd. Liab. Co.*, No. CV 09-1575-PHX-MHM, 2010 U.S. Dist. LEXIS 107488, at *2 (D. Ariz. Sep. 21, 2010) (denying a staying because "this Court is bound by actual precedent, not hypothetical precedent"); *Loritz*, 2003 U.S. Dist. LEXIS 17127, at *9 (*"Defendant suggests that the Court stay this action until the Supreme Court renders its decision. The Court declines to do so."); *United States v. Shumilo*, No. CR 09-939-GW-51, 2016 U.S. Dist. LEXIS 152818, at *4 (C.D. Cal. Oct. 24, 2016) ("Petitioner further points out that the fact that the Supreme Court recently granted certiorari in *Dimaya* has no effect on this Court's obligation to follow Ninth Circuit precedent unless and until the Supreme Court overrules it.") (citing *Hart*, 266 F.3d at 1170 ("Binding authority must be followed unless and until overruled by a body competent to do so.")); *Reed v. Autonation, Inc.*, No. CV-16-08916-BRO-AGRX, 2017 U.S. Dist. LEXIS 224055, 2017 WL 10592157, at *5 (C.D. Cal. Mar. 6, 2017) (Until the Supreme Court decides a pending case, "we must respect the holdings of our court of appeals."); *United States v. Cortez-Ruiz*, 2016 U.S. Dist. LEXIS 167789, 2016 WL 7034057, at *10 (N.D. Cal. Dec. 2, 2016) (denying request for stay pending United States Supreme Court's review of *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), after petition for writ of *certiorari* had been granted); *Facebook, Inc. v. Power Ventures, Inc.*, 2017 U.S. Dist. LEXIS 66948, 2017 WL 1650608, at *18 (N.D. Cal. May 2, 2017) (denying request for stay of

remedies issue pending a petition for writ of *certiorari* of Ninth Circuit's merit decision); *Alvarado v. United States*, 2016 U.S. Dist. LEXIS 152813, 2016 WL 6302517, at *5 (C.D. Cal. Oct. 14, 2016) (denying a stay because "until the Supreme Court rules on these issues, the Court must follow the Ninth Circuit's precedent").

Square is not the first defendant accused of violating the TCPA to seek a stay pending *Facebook*.  In *Komaiko v. Baker Technologies, Inc.*, defendant initially moved to stay the case pending another Supreme Court decision involving the TCPA, as well as indeterminate FCC action and then pending *Facebook*.  *See* No. 19-cv-03795-DMR, at *3 (N.D. Cal. Aug. 11, 2020) (stating that defendant's motion "initially requested a stay of th[e] case until the Supreme Court issued a decision in [*Barr*] and [*Facebook*].")

As with Square, defendant Baker contended that the ATDS issue before the Supreme Court in *Facebook* would be dispositive.  In denying the requested stay, Judge Ryu observed that the capacity question would be left untouched by the Supreme Court's *Facebook* decision and even the circuits with a restrictive view of ATDS recognize that the TCPA "applies to devices that have the 'capacity' to identify randomly generated numbers:

> However, [Defendant] is evasive on a key fact: whether its software has the *capacity* to generate random numbers and call them, regardless of whether it used that capacity in sending the texts at issue.
>
> This is a separate question from one before the Supreme Court in Duguid.  Even if the Ninth Circuit is incorrect that a device that can store and automatically dial numbers is an ATDS, such a conclusion would not necessarily invalidate its interpretation of the term 'capacity.'

*Id.* at *4 (emphasis in original); *see also Id*. at *6 ("Under existing Ninth Circuit authority not before the Supreme Court, the relevant consideration is whether

a device has the capacity to perform as an autodialer, not whether it used that capacity to send the allegedly unlawful texts.") (citation omitted); *In re Midland Credit Mgmt. Tel. Cons. Prot. Act Litig.*, No. 11-md-2286-MMA (MDD), at *4 (S.D. Cal. Aug. 1, 2020) (denying joint motion to stay pending *Facebook* appeal; "[t]he parties potentially overstate the impact of the Supreme Court case given the current procedural standing of this MDL.").[6]

**B.   A̲L̲L̲ *Landis* F̲ACTORS̲ R̲EQUIRE̲ D̲ENIAL̲ OF̲ S̲QUARE'S̲ S̲TAY̲ R̲EQUEST̲**

While Square spends an inordinate amount of space setting forth Plaintiffs' allegations, the procedural background of the case, the "relevant legal history behind the TCPA and ATDS Requirement," its Motion is noticeably bereft of any meaningful discussion of the *Landis* factors. *See* ECF 42 at 1-12. That is unsurprising given that Square's equipment sends messages without <u>any</u> human intervention, [Def.'s Mtn. Dismiss] and unless the Supreme Courts simply decides to eviscerate the TCPA, Square has no defense regarding its ATDS. And, then when finally Square does get around to discussing the prejudice to Plaintiffs if given a stay, it erroneously states that that "very little substantive work has been done" and that "only **preliminary** discovery is underway." ECF 42 at 13:17-22 (emphasis added.)  On the contrary, the parties served jurisdictional discovery, conducted Square's deposition, are briefing Square's amended motion to dismiss for lack of Article III standing, **and** Square has served interrogatories, requests for production and for inspection on <u>both</u> representative plaintiffs which go beyond the issue of standing. (*See* Declaration of Yana Hart, at ¶ 12.)  Moreover, Square disingenuously attempts to shift the focus

---

[6]    After concluding that defendant "did not adequately explain[] how the outcome in [*Facebook*] is likely to have a significant impact in th[e] case," Judge Ryu restricted discovery "to the question of whether the ATDS allegedly used to send text messages to the named Plaintiffs had the capacity to store and produce numbers using a random or sequential number generator."

from the actual prejudices to befall Plaintiffs, *infra*, to its contrived harm of waiting to receive statutory damages under the TCPA.  (*See* ECF 42 at 14:3-17.)

### i.  Substantial Prejudice to Plaintiffs Warrants Denial of a Stay.

Numerous injuries would befall Plaintiffs if this case were stayed pending *Facebook* and/or indeterminate FCC action. First, Defendant completely ignores the fact that Plaintiffs and the class members would be significantly disadvantaged by this unknown and indefinite delay in conducting discovery. Many documents and evidence are under the control of third parties, who are not obligated to preserve such evidence. [*See* Hart Dec., Exh. 1 (testifying that Square used different vendors for loyalty texting); s*ee also LG Elecs., Inc. v. Eastman Kodak Co.,* 09-cv-344, 2009 WL 1468703, at *3 (S.D. Cal. May 26, 2009).

The recent deposition testimony of Square's loyalty program engineer, Mr. Yu Shan Fung, confirms the risk of loss of evidence given a stay.  Mr. Fung testified that Square retained third party Twilio to send loyalty texts in 2017 until "sometime in 2018" whereupon it started using Bandwidth, a different vendor, to send loyalty texts. *See* Fung Tr., at 15:1-6; 31:16-24; 32:13-15 & 32:22-25, Hart Dec., Exh. 1.  There is very little chance that, in the case of Twilio, a former vendor will continue to hold onto texting records of its former client, particularly given a stay of this case for many months if not years.

Additionally, and in order to verify if there have been more text messages other than those listed in the complaint,[7] Plaintiffs will need to subpoena their carriers.

---

[7]    Despite Square's insistence that Plaintiff Belluomini only received one text and therefore lacks standing (based on an out-of-Circuit case), the recent deposition of Mr. Fung indicates that Ms. Belluomini did, in fact, receive multiple messages from Square.  [*See* Fung Tr. at 64:24-65:4; 65:20-22; 73:3-8; 73:16-20 & 105:25-106:2 (stating that he did not know if Ms. Belluomini received a digital text receipt or any welcome text messages from Square).] Further, Mr. Fung testified that Square generally sends two initial messages – a "welcome" text message and a separate loyalty message regarding earning a loyalty star. [Fung Tr. [48:4-14; 71:11-72:10 (stating that the policy is/was that a welcome message is sent every time, and stating

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY                    CASE NO. 3:20-CV-00806-EMC

(*See* Hart Decl., ¶ 13.) While the statute of limitations in TCPA actions is four years, Plaintiffs will struggle in obtaining text message logs from third party carriers because carriers' average retention period of text message logs (without content) is approximately 18-24 months, and therefore, obtaining such logs is already burdensome to Plaintiffs and the putative Class members.[8]

Memories of witnesses fade, and documents inevitably become misplaced or otherwise unobtainable given the passage of time. *See, e.g.*, *Abante Rooter & Plumbing Inc. v. Nationwide Mut. Ins. Co.*, No. 17-cv-03328-EMC, at *5 (N.D. Cal. Jan. 26, 2018) (holding that "witness memories may fade, turnover of employees at [defendant] may result in diminished access to material witnesses, and it may become more difficult to locate and notify putative class members as time lapses). A stay, even a relatively brief one, could result in the irretrievable loss of critical evidence. *See, e.g.*, *Lathrop v. Uber Techs.,, Inc.*, 2016 U.S. Dist. LEXIS 2490, at *12 ("Plaintiffs argue persuasively that they would suffer prejudice from a stay  because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate."); *Young v. Peraza*, No. 15-60968-CIV--COHN/SELTZER, 2015 U.S. Dist. LEXIS 101844 at *5 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time.").

"Thus, to require Plaintiff to remain in this indeterminate state of limbo is especially inequitable given that much of the relevant evidence Plaintiff will be interested in, such as call logs and dialer information, will be in the hands of third-

---

he is not aware of any policy changes]; *cf.* Compl. ¶ 85 (Belluomini received the loyalty message).

[8]    Retention Periods of Major Cellular Service Providers Chart from the U.S. Department of Justice (available at https://www.aclu.org/cell-phone-location-tracking-request-response-cell-phone-company-data-retention-chart)

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY                    CASE NO. 3:20-CV-00806-EMC

parties and subject to unknown data retention policies." *Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM, 2017 U.S. Dist. LEXIS 172713, at *15 (S.D. Cal. Oct. 18, 2017); *see also Cabiness v. Educ. Fin. Sols., LLC*, No. 16-cv-01109-JST, 2017 U.S. Dist. LEXIS 6304, at *9 (N.D. Cal. Jan. 17, 2017) ("Such an extended stay would prejudice the Plaintiff because the passage of time will make it more difficult to reach class members and will increase the likelihood that relevant evidence will dissipate."); *D.C. v. Cty. of San Diego*, No. 15cv1868-MMA (NLS), 2017 U.S. Dist. LEXIS 57736, at *12 (S.D. Cal. Apr. 14, 2017) ("Also, Plaintiff argues that the contact information for putative class members continues to become outdated with time, indicating that there is a risk that putative class members might not receive notice if a class is eventually certified.  This could potentially result in denial of monetary recovery to those class members, as opposed to only delay.").

Second, Square continues to operate its loyalty program whereby it collects consumers mobile numbers and sends them unsolicited loyalty text messages absent "clear and conspicuous" disclosure, as required under the law. The injuries to Plaintiffs and the putative class members are ongoing. While Square is quick to gloss over the harm to Plaintiff and the class members, "unduly delaying a plaintiff's day in court constitutes a significant injury." *Ontiveros v. Zamora*, 2013 U.S. Dist. LEXIS 59621, at *13 (E.D. Cal. Apr. 25, 2013).  In a class action, "the possible damage and prejudice to Plaintiff that may result from staying the case" is significant because a stay "would suspend for an indefinite period of time Plaintiff's opportunity—and the opportunity of the putative class—to vindicate their rights before [the] court." *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-cv-01821-BLF, 2016 U.S. Dist. LEXIS 27509, at *14 (N.D. Cal. Mar. 2, 2016).

Third, there is no basis for Square's pure speculation that the FCC will act before year-end as many courts have found the similarly requested stays run a serious risk of being "essentially indefinite, since there is no clear indication that any FCC action is on the horizon." *Larson v. Harman Mgmt. Corp.*, Case No. 1:16-cv-00219-

DAD-SKO, 2018 U.S. Dist. LEXIS 208121, 2018 WL 6459964, at *4 (E.D. Cal. Dec. 10, 2018) (rejecting the same basis for a stay and explaining how a stay could "indefinitely delay resolution" of the case); *Edwards v. Oportun, Inc*., 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (finding an indefinite stay presents a "fair possibility of harm" to plaintiff); *Lathrop v. Uber Techs*., Inc., Case No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 2490, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"); *Izor*, 2019 WL 3555110, at *10 ("Given the possible indefiniteness of a stay, the first *Landis* factor counsels against granting a stay.").

### ii. *There is not sufficient prejudice in being required to litigate*

Given that Plaintiffs have demonstrated a "fair possibility" of harm that could result from an indefinite stay, Square is required under *Landis* to "make out a clear case of hardship or inequity in being required to go forward." *See, e.g.*, *Izor*, 2019 WL 3555110, at *10 (citing *Landis*, 299 U.S. at 254-55). The primary hardship Square claims it will suffer if a stay is not granted is the time and expense of litigating this case, which courts have repeatedly held is an insufficient basis to stay proceedings. [*Compare* ECF No. 42 at 14:21-23 (stating that in the absence of a stay, the parties will have to expend time and money litigating the case), *with, e.g.*, *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1112 (9th Cir. 2005) ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *Crooks v. Rady Children's Hosp.,* 2017 U.S. Dist. LEXIS 168085 *10 (S.D. Cal. Oct. 10, 2017) ("Defendant's contention that it will suffer hardship if the action is not stayed due to unnecessary discovery and trial preparation does not justify a stay in this case."); *Salazar v. Cty. of L.A.*, No. CV-15-09003-MWF-JC, 2016 U.S. Dist. LEXIS 190608, at *19 (C.D. Cal. Sep. 26, 2016) ("the time and expense of wasted discovery is a legitimate concern, 'it does not outweigh

the risk that a stay pending the related proceedings' resolution would simply delay Plaintiffs' day in Court.") (citation omitted); *Rose*, 2015 U.S. Dist. LEXIS 195291, at *5 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *Lathrop*, 2016 U.S. Dist. LEXIS 2490, at *12 ("Although Uber may suffer hardship, in the form of additional discovery, the Court concludes that this potential hardship does not merit a stay in this case."); *Larson*, 2018 U.S. Dist. LEXIS 208121, 2018 WL 6459964, at *5 ("Where defendants have not identified any specific harm beyond the cost of litigation, it has been held that 'being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*.'") (quoting *Lockyer*, 398 F.3d at 1112).

The rule that the cost of litigation is insufficient prejudice to warrant a stay rings particularly true here because Square will be required to litigate this case irrespective of how the Supreme Court rules in *Facebook*. Square fails to explain how this issue will increase discovery costs as the parties will nonetheless have to conduct discovery on the system used by Square to send the text messages at issue. The parties will need the same discovery regardless of how the *Facebook* appeal turns out and regardless of whether or not the FCC eventually comments on the definition of the ATDS. Moreover, the suggestion that it would be inequitable for this case to proceed is undermined by both *Marks* and *Duguid*, as in each case the Ninth Circuit remanded for further proceedings, apparently anticipating that the cases would go forward. *See Izor v. Abacus Data Sys., Inc.*, No. 19-cv-01057-HSG, at *11 (citing *Marks*, 904 F.3d at 1053; *Duguid*, 926 F.3d at 1157).

Square also suggests that it could be prejudicial to require it to defend this case when the law *might* change in the future. However, courts have addressed and rejected the very argument, including Judge Guilliam in *Izor*:

> The mere possibility of intervening law on a simple factual issue, particularly when the Ninth Circuit has already

KAZEROUNI
LAW GROUP, APC

reaffirmed *Marks*, does not amount to a '*clear case* of hardship or inequity in being required to go forward.' And the notion that it would be inequitable for this case to proceed is undermined by both *Marks* and *Duguid*, as in each case the Ninth Circuit remanded for further proceedings, apparently anticipating that the cases would go forward.

2019 U.S. Dist. LEXIS 130865, at *11 (citations omitted); *see also Pascal v. Concentra, Inc.*, No. 19-cv-02559-JCS, at *5 (N.D. Cal. Oct. 24, 2019) ("In light of the hardship associated with an indefinite stay, Concentra must make a clear showing of hardship in the absence of a stay (the second factor), but it has not done so.").

### iii.   *A stay would undermine the orderly course of justice*

Square understandably does not spend much time arguing that a stay would somehow enhance the orderly course of justice presumably because, simply put, it would not. Square complains that "[g]oing forward with this case now would require extensive discovery and motion practice, attorneys' fees and costs, and judicial resources." ECF No. 42 at 15. Fatal to Square's request for a stay is its failure to explain how or why a stay would promote the orderly course of justice.

Courts have consistently rejected such vague, hypothetical and unsupported predictions advanced to support requests for stays. *See, e.g., Pascal*, 2019 U.S. Dist. LEXIS 185193, at *10 ("Far from advancing the orderly course of justice, a stay in this case would amount to ignoring binding Ninth Circuit authority on a mere possibility that the law may at some point change to [Defendant's] benefit."). Indeed, this Court has already ruled in a similar case that "[t]he orderly course of justice will be enhanced because development of the record on key facts may expedite and facilitate the application of law, including that pronounced by the Circuit Court in *ACA Int'l*." *Abante Rooter & Plumbing Inc. v. Nationwide Mut. Ins. Co.*, No. 17-cv-03328-EMC, at *4-5 (N.D. Cal. Jan. 26, 2018); *see also Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, 2017 U.S. Dist. LEXIS 168532, 2017 WL 4536422, at *8

---

17

(N.D. Cal. Oct. 11, 2017) (declining to stay case pending opinion because of the inability to forecast when a final decision will be rendered, whether it will be dispositive of the case or even narrow the issues).

In addition to Square's "lack of clarity" as to why it believes *Facebook* will have any impact on this case, Defendant ignores that the Supreme Court's decision will do nothing to change the fact that the parties will still have to conduct discovery into the text messaging platform utilized, including expert inspections, reports, and depositions and will have to brief the issue. Therefore, irrespective of how the Supreme Court rules, the same discovery and briefing will have to take place. This was the same issue many courts faced years ago when TCPA defendants filed countless requests for stays pending the D.C. Circuit's decision in *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).[9]

In short, Square's request should be rejected because "entering a stay under the circumstances here would *undermine* the orderly course of justice." *Pascal v. Concentra, Inc.*, No. 19-cv-02559-JCS, at *6-7 (N.D. Cal. Oct. 24, 2019) (emphasis supplied); *see also Larson v. Harman Mgmt. Corp.*, 2018 WL 6459964, at *5 (holding that "[a]lthough future action by the FCC may ultimately impact the applicable law … the imposition of a stay would provide little benefit to the orderly course of justice" because "the Ninth Circuit has already decided what constitutes an ATDS and other district courts in this circuit have applied that binding authority."); *Yashtinsky v. Walmart, Inc.*, No. 5:19-CV-5105, at *14 (W.D. Ark. Nov. 12, 2019) (declining "to issue a stay pursuant to its inherent authority because such a stay would

---

[9]    In those cases, most of the courts denied stays for the same reason advanced by Plaintiffs here, namely, that a stay would *not* promote efficient litigation because defendants would still be required to engage in discovery and motion practice on the ATDS issue. *See, e.g., Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1234 (S.D. Cal. 2017) (denying a stay because even though *ACA* might have "ha[d] the potential to clarify what constitutes an ATDS," the defendant would "still be required to produce discovery" concerning "its autodialing technology").

not promote judicial economy and would unduly prejudice [plaintiff].”); *Samson v. United Healthcare Servs., Inc.*, No. C19-0175JLR, at *12 (W.D. Wash. May 20, 2019) (“Nonetheless, the court declines to run the risk of significantly postponing its consideration of claims it is competent to adjudicate.”).

## C. THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY BECAUSE THE STATUTORY DEFINITION OF AN ATDS IS NOT A MATTER OF FIRST IMPRESSION & CONTROLLING LAW EXISTS.

Square also argues that the primary jurisdiction doctrine should be invoked because forthcoming FCC guidance *may* be at odds with the state of the law in the Ninth Circuit, and that any FCC pronouncement will basically be the definitive statement on an ATDS (unless, of course, the FCC’s guidance is not favorable to Square).  ECF No. 42 at 15-19.

As an initial matter, Square’s primary jurisdiction request should be denied because the FCC has not stated if nor when it will issue any clarifying regulations regarding ATDS:

> Because the Court can discern no clear end point for obtaining such guidance from the FCC, it declines to stay the case under the primary jurisdiction doctrine. The FCC has been wrestling with the definition of ATDS for six years with no clear conclusion in sight.

*Boger v. Citrix Sys.*, Civil Action No. 8:19-cv-01234-PX, at *6 (D. Md. Apr. 22, 2020).

Square’s repeated misstatement that a stay would necessarily be brief because FCC action is expected “soon” is transparently self-serving and entirely speculative. *See also Gould v. Farmers Ins*. Exch., Case No. 4:17 CV 2305 RWS, 2018 U.S. Dist. LEXIS 131508, at *4 (E.D. Mo. Aug. 6, 2018) (stating that “the FCC has not

indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on this issue").[10]

More fundamentally, Square spends several pages arguing that the FCC is the expert on ATDS, and therefore courts are essentially incapable of deciphering fairly straightforward statutory language.  [*See* ECF No. 42 at 17-19.] Square's argument that interpreting the TCPA is an issue that this Court cannot resolve without future guidance from the FCC is wholly inaccurate, misconceived, self-serving, and contradicts the plain principles of the well-known *stare decisis* doctrine.

The definition of an ATDS does *not* involve a technical or policy consideration within the FCC's particular field of expertise since the Ninth Circuit has already stated that the statutory language is clear and unambiguous. *See, e.g.*, *Harnish v. Frankly Co.*, Case No. 5:14-CV-02321-EJD, 2015 U.S. Dist. LEXIS 29982, 2015 WL 1064442, at \*11 (N.D. Cal. Mar. 11, 2015) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009)); *Wilson v. PL Phase One Operations L.P.*, Civil Action No. DKC 18-3285, at \*25 (D. Md. Sep. 27, 2019) (stating that referral to the FCC is "not appropriate" since the matters are "within the conventional expertise of judges")).

FCC guidance is *not* critical to the courts' functions in interpreting the statute, as reflected in scores of decisions involving ATDS technology reached during the pendency of the FCC ruling (many of which have found an ATDS to not be present in the particular case). *See, e.g.*, *Duran v. La Boom Disco, Inc.*, No. 19-600-cv, at \*12 (2d Cir. Apr. 7, 2020) ("On *de novo* review, we conclude, for several reasons, that the second approach to the statute's interpretation is correct, and that the programs here have the first capacity required to be ATDSs—the "capacity … to

---

[10]   Adding to the uncertainty, President Trump recently withdrew the re-nomination of Commissioner O'Reilly further suggesting that any FCC action on ATDS is a ways off, if ever. *See* https://www.reuters.com/article/us-usa-fcc-trump/trump-withdraws-nomination-of-republican-fcc-commissioner-to-serve-new-term-idUSKCN24Z2NI (last visited August 28, 2020).

store or produce telephone numbers to be called, using a random or sequential number generator[.]'"); *Gadelhak v. AT&T Servs.*, Inc., No. 19-1738, 2020 WL 808270, at *1 (7th Cir. 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018); *Boger v. Citrix Sys.*, Civil Action No. 8:19-cv-01234-PX, at *6-7 (D. Md. Apr. 22, 2020) ("Because the Court can discern no clear end point for obtaining such guidance from the FCC, it declines to stay the case under the primary jurisdiction doctrine.").

In deciding against issuing a stay in a nearly identical situation, Judge Haywood S. Gilliam, Jr. recently considered whether expected FCC guidance on the definition of ATDS supported a stay under the primary jurisdiction doctrine:

> ***The Court finds that the primary jurisdiction doctrine does not support a stay pending FCC guidance concerning what constitutes an ATDS.*** As Defendant notes in its motion, the FCC released a Public Notice seeking comment on the issue in May 2018.
>
> ***But the Ninth Circuit has since definitively answered the question.*** *Marks v. Crunch San Diego, LLC* held that the term ATDS "means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person).
>
> *Marks* issued on September 20, 2018, months after the FCC began seeking public comments on the what constitutes an ATDS. ***Marks thus is controlling authority in the Ninth Circuit and is binding on the Court.*** And the Ninth Circuit's resolution of the issue without waiting for FCC guidance further demonstrates that the issue (1) is no longer a matter of first impression, and (2) is not

1    'a particularly complicated issue that merits waiting
     for FCC guidance.

2

3    *Izor v. Abacus Data Sys.*, Case No.  19-cv-01057-HSG, 2019 U.S.  Dist.  LEXIS

4    130865, 2019  WL  3555110,  at  *7-9 (N.D. Cal. Aug. 5, 2019) (emphasis added)

5    (citing *Brown  v. MCI WorldCom Network Servs*., Inc., 277 F.3d 1166, 1172 (9th

6    Cir. 2002)).

7        In his opinion Judge Gilliam readily rejected defendant's—and now Square's

8    argument—that  a  stay  is  nonetheless  warranted  because  the  FCC  has  sought

9    additional public comment after *Marks* was decided:

10               since  [the Post-*Marks* FCC Order],  the  Ninth
                 Circuit has confirmed that *Marks* is the law of
11               the  Ninth  Circuit.  In  essence,  then,  Defendant  asks  this
                 Court to hold that the state of the law is so unclear
12               that this case must await FCC guidance when the
                 Ninth Circuit has repeatedly found otherwise. ***The***
13               ***Court  declines  that  invitation  and  finds  that***
                 ***primary  jurisdiction  does  not  support  granting***
14               ***Defendant's request for a stay.***

15

16

17   *Izor*, 2019 WL 3555110, at *8-9 (emphasis added) (citing *Duguid v. Facebook, Inc*.,

18   926 F.3d 1146, 1150 (9th Cir. 2019) (holding that the *Marks*' "definition governs

19   this appeal")); *see also Pascal v. Concentra, Inc.*, No. 19-cv-02559-JCS, at *4 (N.D.

20   Cal. Oct. 24, 2019) ("As Judge Guilliam pointed out, since that second notice was

21   issued, "the Ninth Circuit has confirmed that Marks is the law of the Ninth

22   Circuit.")).

23       As previous courts have recognized in denying motions to stay to wait for

24   pending guidance, there is no guarantee that, even after the supposedly authoritative

25   guidance is issued, the definition of ATDS will be any clearer than it is now and that

26   the decision would go unchallenged:

27               Furthermore,  it  is  not  clear  to  the  court  that  the
                 promulgation  of  regulations,  if  they  occurred,
28

                                      22

1   would simplify or save judicial resources. First, the
2   Ninth Circuit has clearly ruled on the definition of
    an ATDS. This Court is bound by that ruling, even
3   when faced with a possible contradictory
4   regulation. Second, the possibility of a
    contradictory regulation is so speculative that it
5   does not warrant the stay. Finally, it is not at all clear
6   that any regulation dealing with nonconsenting
    parties would be applicable to this case. The FCC
7   has primarily focused on reassigned numbers as
8   opposed to numbers simply called in error. It is
    unclear at this stage of the proceedings that any
9   regulation would even be applicable to this case.

10   *Hoagland v. Axos Bank*, No. 19-cv-00750-BAS-JLB, at *7 (S.D. Cal. Feb. 6,

11   2020); *see also Abante Rooter & Plumbing Inc. v. Nationwide Mut. Ins. Co.*, No. 17-

12   cv-03328-EMC, at *5 (N.D. Cal. Jan. 26, 2018) ("In sum, a stay is not warranted.

13   *ACA Int'l* will not significantly narrow the disputed issues, will not simplify the

14   proceedings, and focused discovery will prepare a factual record so that the legal

15   issues can be resolved after *ACA Int'l* is decided."); *Hoagland v. Axos Bank*, No. 19-

16   cv-00750-BAS-JLB, at *7 (S.D. Cal. Feb. 6, 2020) ("Furthermore, it is not clear to

17   the court that the promulgation of regulations, if they occurred, would simplify or

18   save judicial resources."); *Nicholson v. REI Energy, LLC,* No. 3:18-cv-00203-HZ,

19   370 F. Supp. 3d 1199, 1206, 2019 WL 993624, at *5 (D. Or. Feb. 28, 2019) (holding

20   that in light of *Marks*, "this case presents neither an issue of first impression nor a

21   question better suited to the expertise of the [FCC]."); *Thomas v. Smith-Palluck*

22   *Assocs*. Corp., No. 2:17-cv-02001-MMD-CWH, at *5 (D. Nev. Apr. 12, 2019) ("It is

23   also unclear whether the FCC Decision would definitively resolve all pertinent issues

24   in this case.

25   In short, the FCC Decision favorable to Defendant's position may never arrive.

26   Thus, it would be inefficient to indefinitely delay these proceedings—and efficiency

27   is a key consideration when determining whether to invoke the prudential doctrine of

28   primary jurisdiction."); *Pieterson v. Wells Fargo Bank, N.A.,* No. 17-cv-02306-EDL,

2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018) ("[T]he primary jurisdiction doctrine does not <u>comfortably</u> fit the circumstances of this case because the issues before the FCC are not ones of first impression and controlling or persuasive law already exists."); *Castillo v. Caesars Entm't Corp.,* Case No.: 2:18-cv-02297-GMN-NJK, at *5 (D. Nev. Sep. 30, 2019) ("In sum, the Court is unconvinced that judges are incompetent to construe the TCPA to define the contours of an ATDS.  Moreover, even if Defendants' speculation is correct and the FCC "will soon rule" on this definitional question, the Court is skeptical that such an order would bring finality to the issue of what constitutes an ATDS."); *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1070 (D. Nev. 2019) ("this cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay.'") (citation omitted); *Knapper v. Cox Commc'ns, Inc*., No. 17-cv-00913-PHX-SPL, 2019 WL 250430, at *2 (D. Ariz. Jan. 17, 2019) ("*Marks* represents binding law in this Circuit. Consequently, there is no matter of first impression or of such complexity inhibiting this Court from proceeding.").[11]

---

[11]     *See also Boger v. Citrix Sys.*, Civil Action No. 8:19-cv-01234-PX, at *6 (D. Md. Apr. 22, 2020) ("Because the Court can discern no clear end point for obtaining such guidance from the FCC, it declines to stay the case under the primary jurisdiction doctrine."); *Peralta v. Rack Room Shoes, Inc.*, No. CV 18-3738, 2018 WL 6331798, *8-9 (E.D. La. Dec. 3, 2018) ("Since the District of Columbia Circuit's *ACA International* ruling, several district courts have considered whether to apply the primary jurisdiction doctrine to stay proceedings in anticipation of the FCC's guidance on the definition of ATDS, and nearly all of them (of which this Court is aware) have denied the motions to stay."); *Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, at *10 (D. Mass. Jan. 24, 2020) ("This Court is capable of applying existing law and regulatory framework to determine the definition of an ATDS and to resolve this dispute without updated FCC guidance. There exists an extensive body of applicable TCPA caselaw from which this Court can gain insight."); *Cline v. Ultimate Fitness Grp., LLC*, No. 618CV771ORL37GJK, 2019 WL 4671195, at *4 (M.D. Fla. Feb. 12, 2019) (stating that although a definitive ruling from the FCC would "undoubtedly clarify the ambiguity" about the technology that constitutes an ATDS, "that decision could be years away and, even then, may face

1    Finally, it is particularly telling that so many defendants are clamoring for a

2 stay and yet if the FCC were to issue guidance adopting the *Marks* reasoning, those

3 same defendants would be the first ones saying that the courts (and not some

4 regulatory agency) should decide the straightforward statutory construction

5 argument:

6        It is also unclear whether the FCC Decision would
         definitively resolve all pertinent issues in this case**.**
7        ***In short, the FCC Decision favorable to***
         ***Defendant's position may never arrive.*** Thus, it
8        would be inefficient to indefinitely delay these
9        proceedings—and efficiency is a key consideration
         when determining whether to invoke the prudential
10       doctrine of primary jurisdiction.

11

12   *Thomas v. Smith-Palluck Assocs. Corp.*, No. 2:17-cv-02001-MMD-CWH, at

13 *4-5 (D. Nev. Apr. 12, 2019) (emphasis added); *see also Singer v. Las Vegas Ath.*

14 *Clubs*, 376 F. Supp. 3d 1062, 1069 (D. Nev. 2019) (citation omitted) (stating that the

15 primary jurisdiction doctrine does not apply to this situation as "[t]he doctrine is

16 reserved for a 'limited set of circumstances' that 'requires resolution of an issue of

17 first impression, or of a particularly complicated issue that Congress has committed

18 to a regulatory agency.'").

19 **V.    CONCLUSION**

20   For the foregoing reasons, Plaintiffs Mishari Aleisa and Nicole Belluomini

21 respectfully request that this Court deny Square's Motion to Stay, [ECF No. 42], and

22 award all such other relief as is equitable and just.

23                                          **KAZEROUNI LAW GROUP, APC**

24 Date: August 28, 2020                    By: *s/ Yana A. Hart*

25                                              Yana A. Hart, Esq.
                                                *Attorneys for Plaintiff*
26

27 _____

28 the same challenges as the 2015 FCC order, which would likely prompt another
   request for a stay").

KAZEROUNI
LAW GROUP, APC

**<u>Additional Attorneys for Plaintiff</u>**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
**KAZEROUNI LAW GROUP, APC**
321 N. Mall Drive, Suite R108
St. George, UT 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STAY          CASE NO. 3:20-CV-00806-EMC