1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
   SHANNON Z. PETERSEN, Cal. Bar No. 211426
3  LISA S. YUN, Cal. Bar No. 280812
   SIEUN J. LEE, Cal. Bar No. 311358
4  12275 El Camino Real, Suite 200
   San Diego, California 92130-4092
5  Telephone:    858.720.8900
   Facsimile:    858.509.3691
6  Email:    spetersen@sheppardmullin.com
              lyun@sheppardmullin.com
7             slee@sheppardmullin.com

8  Attorneys for Defendant
   SQUARE, INC.
9

10              UNITED STATES DISTRICT COURT

11        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

12

13  MISHARI ALEISA and NICOLE              Case No. 3:20-cv-00806-EMC
    BELLUOMINI, individually and on behalf of
14  all others similarly situated,         CLASS ACTION

15              Plaintiffs,                DEFENDANT SQUARE, INC.'S REPLY
                                           IN SUPPORT OF ITS AMENDED
16        v.                               MOTION TO DISMISS FOR LACK OF
                                           SUBJECT MATTER JURISDICTION
17  SQUARE, INC., a Delaware corporation,  UNDER ARTICLE III

18              Defendant.                 Date:      August 20, 2020
                                           Time:      1:30 p.m.
19                                         Judge:     Hon. Edward M. Chen
                                           Courtroom: 5 – 17th Floor
20
                                           Trial Date: None set
21                                         Complaint Filed: 2/03/2020

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION................................................................................................1

II.     PLAINTIFF BELLUOMINI LACKS ARTICLE III STANDING.......................................2

        A.      There Is Insufficient Injury From The Single Text Plaintiff Agreed To
                Receive ...........................................................................................2

                1.      *The receipt of a single text message is insufficient injury for
                        standing* .............................................................................2

                2.      *Since Plaintiff agreed to the text message, she cannot complain
                        about injury due to invasion of privacy, annoyance, etc.* ...............5

        B.      Plaintiff Belluomini Initiated And Thus "Made" The Text Message At Issue ..........9

III.    CONCLUSION ..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Berman v. Freedom Fin. Network, LLC*
    400 F. Supp. 3d 964 (N.D. Cal. 2019) ........................................................................9

*Blau v. AT&T Mobility*
    No. 11-00541, 2012 U.S. Dist. LEXIS 217 (N.D. Cal. Jan. 3, 2012) ...........................7

*Brinker v. Normandin's*
    No. 14- 03007, 2017 U.S. Dist. LEXIS 23239 (N.D. Cal. Feb. 17, 2017)....................3

*Cour v. Life360, Inc.*
    No. 16-00805, 2016 U.S. Dist. LEXIS 98945 (N.D. Cal. July 28, 2016).............5, 10

*De la Cabada v. Ytel, Inc.*
    No. 19-07178, 2020 U.S. Dist. LEXIS 41439 (N.D. Cal. Mar. 10, 2020).............11, 12

*Eric B. Fromer Chiropractic v. Si-Bone, Inc.*
    No. 19-00633, 2019 U.S. Dist. LEXIS 131932 (N.D. Cal. Aug. 5, 2019)....................4

*Ewing v. SQM US, Inc.*
    211 F. Supp. 3d 1289 (S.D. Cal. 2016) ........................................................................3

*Figueroa v. Everalbum, Inc.*
    No. 17-05909, 2018 U.S. Dist. LEXIS 198967 (N.D. Cal. May 9, 2018) ..................10

*Frank v. Cannabis & Glass, LLC*
    No. 19-00250, 2019 U.S. Dist. LEXIS 170871 (E.D. Wash. Oct. 1, 2019)................11

*Hewlett v. Consol. World Travel, Inc.*
    No. 16-713, 2016 U.S. Dist. LEXIS 112553 (E.D. Cal. Aug. 23, 2016) ......................4

*Huricks v. Shopkick, Inc.*,
    No. 14-2464, 2015 U.S. Dist. LEXIS 112596 (N.D. Cal. Aug. 24, 2015)..................10

*Juarez v. Citibank, N.A.*
    No. 16-01984, 2016 U.S. Dist. LEXIS 118483 (N.D. Cal. Sep. 1, 2016).....................4

*Komaiko v. Baker Techs., Inc.*
    No. 19-03795, 2020 U.S. Dist. LEXIS 70162 (N.D. Cal. Apr. 20, 2020) ..................11

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) .....................................................................................................9

*Reichman v. Poshmark, Inc.*
    No. 16-2359, 2017 U.S. Dist. LEXIS 73769 (S.D. Cal. May 15, 2017) *appeal
    dismissed*, 2017 WL 6345805 (9th Cir. Oct. 18, 2017) ............................................10

SMRH:4817-0123-4889.5    SQUARE'S REPLY IN SUPPORT OF ITS AMENDED MOTION TO DISMISS

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
   30 F.C.C. Rcd. 7961 (2015) ...........................................................................................10

*Salcedo v. Hanna*
   936 F. 3d 1162 (11th Cir. 2019) ......................................................................................2

*Selby v. Ocwen Loan Servicing, LLC*
   No. 17-973, 2017 U.S. Dist. LEXIS 189995 (S.D. Cal. Nov. 16, 2017) .....................3

*Serban v. CarGurus, Inc.*
   No. 16 C 2531, 2018 U.S. Dist. LEXIS 40412 (N.D. Ill. Mar. 12, 2018)..................12

*Shuckett v. DialAmerica Mktg.*
   No. 17-2073, 2019 U.S. Dist. LEXIS 127049 (S.D. Cal. July 29, 2019)....................3

*Smith v. Aitima Med. Equip., Inc.*
   No. 16-00339, 2016 U.S. Dist. LEXIS 113671 (C.D. Cal. July 29, 2016) .................3

*Spokeo, Inc. v. Robins*
   136 S.Ct. 1540 (2016) ....................................................................................................2

*Supply Pro Sorbents, LLC v. RingCentral, Inc.*
   No. 16-02113, 2017 U.S. Dist. LEXIS 214838 (N.D. Cal. July 17, 2017) .................4

*Van Patten v. Vertical Fitness Group, LLC*
   847 F.3d 1037 (9th Cir. 2017) ...............................................................................1, 3, 5

*Warciak v. Nikil, Inc.*
   No. 16 C 5731, 2017 U.S. Dist. LEXIS 42067 (N.D. Ill. Mar. 23, 2017)..................11

Statutes

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................................................10

Telephone Consumer Protection Act ...........................................................1, 2, 3, 4, 5, 9, 10, 11

Other Authorities

Rule 12(b)(1) ......................................................................................................................9

## I.    <u>INTRODUCTION</u>

The Court should dismiss Plaintiff Belluomini's claims against Defendant Square, Inc., for alleged violation of the Telephone Consumer Protection Act ("TCPA") because Plaintiff lacks Article III standing as (1) she has not suffered sufficient injury-in-fact from receiving the one text message she agreed to, and (2) she sent the text message to herself, so any injury is primarily traceable to her own actions, not the actions of Square.

To begin with, Plaintiff has not suffered sufficient concrete injury from the single loyalty text message she agreed to receive.  The Eleventh Circuit and many district courts in California have held that the receipt of a single text message, even if unsolicited, is insufficient for standing. Ninth Circuit law in *Van Patten* is not contrary, as Plaintiff claims.  *Van Patten* involved at least two unwanted text messages, and the Ninth Circuit in that case held that standing exists in TCPA cases only for calls/texts that are "unsolicited" and sent "absent consent."  A plaintiff cannot complain about invasion of privacy or annoyance, as Plaintiff Belluomini does here, when she agreed to receive the calls/texts at issue.

The undisputed evidence shows that Plaintiff agreed to receive the single loyalty text message at issue.  Plaintiff argues otherwise, but her evidence does not support her argument.  In her declaration, she testifies that she does "not recall" providing her phone number, does "not recall" receiving the consent disclosures, and does "not recall" pushing the button agreeing to enroll in the loyalty program and receive loyalty text messages.  This is not surprising since the minor retail transaction at issue took place over three years ago, in May of 2017.

Square's undisputed evidence is based on business records, not memory.  Square's evidence shows that Plaintiff confirmed her phone number, received the disclosures, enrolled in the loyalty program, and agreed to receive the text message at issue.  Square's evidence is not contradictory, as Plaintiff claims, and the differences between Square's declarations are superficial and not material to the issue of whether Plaintiff received the disclosures and agreed to receive the loyalty text message.  As explained below, the YouTube and other video cited by Plaintiff are completely irrelevant because they do not show the actual disclosures and consent process for Plaintiff's transaction.  The evidence here shows Plaintiff agreed to receive the single text

1   message, so her privacy was not invaded and she cannot complain about any annoyance or

2   minimal depletion of battery life.

3     Plaintiff also lacks standing because any injury was not caused by Square.  Instead,

4   Plaintiff herself "made" the text message that she sent to herself.  She, not Square, controlled the

5   process.  She chose to proceed with loyalty enrollment.  She confirmed her phone number and had

6   the option of changing that number, or simply cancelling the process.  She was presented with the

7   disclosures and had the option to enroll by tapping "Claim Your Star" or declining by tapping "No

8   Thanks."  She pressed "Claim Your Star," which immediately initiated the electronic transmission

9   that traveled instantaneously to her cell phone in the form of the loyalty text message she agreed to

10  receive.  In short, she texted herself.  Under the relevant TCPA law—including the law cited by

11  Plaintiff—Plaintiff "made" the text message, not Square.  Thus, any injury is traceable primarily

12  to Plaintiff, not Square.

13    For these reasons, the Court should grant Square's motion and dismiss Plaintiff

14  Belluomini's claims for lack of subject matter jurisdiction.

15      **II.**  **PLAINTIFF BELLUOMINI LACKS ARTICLE III STANDING**

16    Article III standing exists only if a plaintiff has suffered an actual injury-in-fact and only if

17  that injury has been caused by the defendant.  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).

18  Here, Plaintiff Belluomini has not shown either element, much less both.

19  **A.**  **There Is Insufficient Injury From The Single Text Plaintiff Agreed To Receive**

20    *1.*  *The receipt of a single text message is insufficient injury for standing*

21    The Eleventh Circuit has recently held that the receipt of a single text message, even if

22  unsolicited, is not enough for Article III standing.  *See Salcedo v. Hanna,* 936 F. 3d 1162 (11th

23  Cir. 2019).  The Eleventh Circuit compared the "chirp, buzz, or blink of a cell phone receiving a

24  single text message" to "walking down a busy sidewalk and having a flyer briefly waived in one's

25  face." *Id.* at 1172.  Such "inconsequential annoyance" is not a concrete injury-in-fact sufficient

26  for Article III standing. *Id.*

27    Plaintiff Belluomini argues incorrectly that Ninth Circuit law is contrary, citing *Van Patten*

28  *v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017).  Plaintiff repeatedly misrepresents

1   this case as holding that "a single" text message is sufficient for Article III standing.  Opp'n at pp.

2   19:16-20; 20:18-20.  Nowhere, however, does the Ninth Circuit hold this.  Indeed, *Van Patten*

3   involved at least two unsolicited marketing text messages.  *Van Patten*, 847 F.3d at 1041.

4         The Ninth Circuit in *Van Patten* held that Article III standing does not always exist in

5   TCPA cases, as Plaintiff appears to claim.  "Congress' role in identifying and elevating intangible

6   harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

7   whenever a statute grants a person a statutory right and purports to authorize that person to sue to

8   vindicate that right."  *Id.* at 1043.  Only "certain types of phone calls and texts"—such as

9   "*[u]nsolicited* telemarketing phone calls or text messages"—give a recipient standing to assert a

10  TCPA violation in federal court.  *Id.* (emphasis added).  The Ninth Circuit found that "the

11  telemarketing text messages at issue here, ***absent consent***, present the precise harm and infringe

12  the same privacy interests Congress sought to protect in enacting the TCPA."  *Id.* (emphasis

13  added).

14        Federal courts in California have since applied *Van Patten* and still found no Article III

15  standing for an alleged TCPA violation.  *See Selby v. Ocwen Loan Servicing, LLC*, No. 17-973,

16  2017 U.S. Dist. LEXIS 189995, at *8 (S.D. Cal. Nov. 16, 2017) (explaining that the Ninth Circuit

17  "did not hold that receipt of *any* telephone call satisfies the concrete injury in fact requirement for

18  standing to assert TCPA claims"); *Shuckett v. DialAmerica Mktg.*, No. 17-2073, 2019 U.S. Dist.

19  LEXIS 127049, at *9 (S.D. Cal. July 29, 2019) (finding that the plaintiff failed to meet her burden

20  of proving that she suffered a concrete injury based on one missed call).

21        Many other federal courts in California also agree that a single call or text in alleged

22  violation of the TCPA is insufficient to show standing.  *See e.g. Brinker v. Normandin's*, No. 14-

23  03007, 2017 U.S. Dist. LEXIS 23239, at *8 (N.D. Cal. Feb. 17, 2017) (Davila, J.) (a single call

24  received by one plaintiff and more calls to other plaintiffs were "not sufficiently concrete" and

25  "too minimal to establish standing."); *Ewing v. SQM US, Inc.*, 211 F. Supp. 3d 1289, 1294 (S.D.

26  Cal. 2016) (a "single alleged telephone call" is not sufficient "concrete injury"); *Smith v. Aitima*

27  *Med. Equip., Inc.*, No. 16-00339, 2016 U.S. Dist. LEXIS 113671, at *12 (C.D. Cal. July 29, 2016)

28  ("the receipt of one phone call . . . is comparable to the receipt of a text message and any drainage

1  of battery from a single call is surely minimal" and "too *de minimis* to satisfy the standing

2  doctrine's core aim of improving judicial decision-making . . ." (emphasis added)); *cf. Supply Pro*

3  *Sorbents, LLC v. RingCentral, Inc.*, No. 16-02113, 2017 U.S. Dist. LEXIS 214838, at *12 (N.D.

4  Cal. July 17, 2017) (White, J.) (similar).

5       The cases cited by Plaintiff are distinguishable, and even support Square's arguments by

6  contrast.  Plaintiff cites *Juarez v. Citibank, N.A.*, No. 16-01984, 2016 U.S. Dist. LEXIS 118483

7  (N.D. Cal. Sep. 1, 2016) (Orrick, J. ) to argue that a single phone call can constitute Article III

8  standing.  *See* Opp'n at p. 19.  That case, however, involved "at least 42 unwanted and unsolicited

9  phone calls[.]"  *Juarez*, 2016 U.S. Dist. LEXIS 118483, at *7-8.  The *Juarez* court also

10 acknowledged that not every "violation of the TCPA will necessarily give rise to Article III

11 standing . . ."  *Id.*  The court explained that sufficient injury can exist such as "where the recipient

12 receives repeated, regular phone calls from the same number and asks the caller to stop, but due to

13 the call pattern, nevertheless worries about and anticipates additional calls."  *Id.* at *8.  In contrast

14 here, Plaintiff Belluomini alleges and the facts show she received only one loyalty text message.

15 Compl. ¶ 85.

16      Plaintiff also cites *Hewlett v. Consol. World Travel, Inc.*, No. 16-713, 2016 U.S. Dist.

17 LEXIS 112553 (E.D. Cal. Aug. 23, 2016).  Opp'n at p. 19.  Unlike here, however, the plaintiff in

18 that case alleged that the defendant "called her 'nearly daily' in March 2016 from multiple

19 numbers despite plaintiff's repeated requests for the calls to stop."  *Hewlett*, 2016 U.S. Dist.

20 LEXIS 112553, at *8.

21      Plaintiff also cites *Eric B. Fromer Chiropractic v. Si-Bone, Inc.*, No. 19-00633, 2019 U.S.

22 Dist. LEXIS 131932, at *9 (N.D. Cal. Aug. 5, 2019) (Koh, J.) to argue that even *de minimis* harm

23 confers Article III standing.  Opp'n at p. 21.  The court in that case, however, actually

24 distinguished an alleged injury "of such a small degree as to constitute mere trifles" from the more

25 substantial harm in that case that resulted from the receipt of an entire unsolicited fax that used

26 more than just an "incremental amount of ink toner[.]"  *Si-Bone*, 2019 U.S. Dist. LEXIS 131932,

27 at *9-10.  Like the "one line identifier" in a solicited fax discussed in *Si-Bone*, the single, solicited

28 text message here is also "of such a small degree as to constitute mere trifles."  *Id.*

Finally, Plaintiff also cites *Cour v. Life360, Inc.*, No. 16-00805, 2016 U.S. Dist. LEXIS 98945 (N.D. Cal. July 28, 2016) (Henderson, J.). Opp'n at pp. 19, 24. That case, however, involved multiple text messages and the court ultimately dismissed the plaintiff's TCPA claim on the grounds that the defendant was not the "maker of the call" and cannot be liable under the TCPA because the users of the defendant's mobile app initiated the text messages at issue. *Cour*, 2016 U.S. Dist. LEXIS 98945, at *5-7.

In short, the authority before this Court supports the conclusion that a single text message is insufficient concrete injury-in-fact to support Article III standing. In her Opposition, Plaintiff Belluomini suggests for the first time she may have received other text messages constituting electronic receipts of her transactions. However, in her complaint, which is the operative document here, she alleges and complains only about receiving a single loyalty text message. Compl. ¶ 85. Similarly, in her declaration, and even in her recent discovery responses, Plaintiff only identifies receiving this single loyalty text message and does not claim she received any other text message about receipts or anything else. Doc. 48-5, ¶ 25. Even if she also received text messages constituting receipts—a red herring issue she raises for the first time in her opposition brief—such messages are informational and not telemarketing, and she would have received them only after requesting them. Doc. 48-2, Fung Tr. 38:14-17; 64:18-65:4. In any event, as alleged, this dispute is only about *loyalty*—not receipt—text messages, and the undisputed evidence is that Plaintiff Belluomini received only one such message.

Even if allegedly unsolicited, the receipt of a single text message is insufficient to confer Article III standing. Further, as explained below, Plaintiff agreed to receive this text message, so she cannot complain about any injury from receiving it.

    2.    *Since Plaintiff agreed to the text message, she cannot complain about injury due to invasion of privacy, annoyance, etc.*

Again, the Ninth Circuit has held that only "certain types of phone calls and texts"—such as "unsolicited telemarketing phone calls or text messages" which are made "absent consent"—confer Article III standing. *Van Patten*, 847 F.3d at 1043. This is because Congress enacted the TCPA to protect against unwanted calls that invade privacy and cause annoyance. *Id.* This is

precisely the type of injury claimed by Plaintiff Belluomini here.  Doc. 48-5, ¶¶ 27-29.  Plaintiff, however, cannot complain about such injury if she agreed to receive the text message, which the undisputed evidence shows she did.

To rebut Square's evidence of consent, Plaintiff Belluomini submitted her own declaration. In that declaration, however, Plaintiff testifies only that she does "not recall" anything about whether she agreed to receive the single loyalty text message.  *See* Doc. 48-5.  This is not surprising since the retail purchase transaction at issue took place over three years ago, on May 12, 2017, and involved only $21.58.  Plaintiff does "not recall" inputting her telephone number.  *See* Doc. 48-5, ¶ 14.  She does "not recall" seeing disclosure language relating to her enrollment in the loyalty program.  *Id.* ¶ 15.  She does "not recall" seeing any language showing she was agreeing to enroll in the loyalty program and receive text messages.  *Id.* ¶ 18.

Fortunately, Square does not have to rely on memory of a routine retail transaction that took place over three years ago.  Instead, it has electronic business records of the transaction at issue and of its loyalty enrollment processes and disclosures at the time.  Doc. 33-1, Am. Decl. ¶¶ 4-5.  The May 2017 transaction took place on an iPad, not some smaller device.  *Id.* ¶ 5.  After making her purchase, Plaintiff was asked on the screen presented whether she wanted to receive a text receipt or not.  Plaintiff tapped, "No Thanks."  *Id.* ¶ 9.  She then saw a screen stating: "Collect 10 stars for a free coffee.  Confirm your phone number to claim a start today."  *Id.* ¶ 10. Immediately below her phone number, was the following disclosure:  "By claiming your stars you will get automated marketing texts associated with the loyalty program.  Joining this program is not a condition of purchase."  *Id.* ¶ 10, Ex. B.  On this same screen, she had a choice of either agreeing by tapping "Claim Your Star" or "No Thanks."  After taking however long she chose to review the disclosures and make her decision, she tapped "Claim Your Star."  She then received the single loyalty text message she requested showing that she had earned one star toward the 10 stars needed for a free coffee.  *Id.* ¶¶ 14-15, Ex. D.

In response, Plaintiff testifies that she does not remember any of this.  Plaintiff's lack of memory one way or the other is insufficient to overcome Square's evidence that she did in fact agree to receive the text message.  Plaintiff's statement that she "do[es] not recall" the terms of

her agreement "do[es] not rise to the level of unequivocal denials of having agreed to those terms." *Blau v. AT&T Mobility*, No. 11-00541, 2012 U.S. Dist. LEXIS 217, at *13 (N.D. Cal. Jan. 3, 2012) (Breyer, J.).  Indeed, "[i]f a party could get out of a contract by arguing that he did not recall making it, contracts would be meaningless." *Id.*

Instead of disputing Square's evidence, Plaintiff tries to undermine it.  To begin with, Plaintiff argues that Square has submitted two "conflicting" declarations with "two materially different versions of events."  Opp'n at p. 31.  Not so.  As Mr. Fung explained, the process to reproduce the transactions that Plaintiff Belluomini would have seen in May 2017 was technically challenging and time consuming, especially when hardware and software have changed.  Doc. 48-2, Fung Tr. 112:16-120:9, 122:5-16, 136:10-137:3; Doc. 33-1, Amended Fung Decl. ¶ 6.  Thus, for the initial screenshots, Square used an internal testing resource to generate screenshots, using a mock phone number and generic transaction details, that would be substantially similar to what Plaintiff Belluomini would have seen when she enrolled in the loyalty program.  *Id.*  After submitting the initial declaration, Square discovered a way to more accurately depict Belluomini's experience, and was able to use a more precise process to recreate the screenshots using an emulator.  Doc. 33-1, Amended Fung Decl. ¶ 5-6.  The screenshots attached to Mr. Fung's amended declaration provide the best representation of the process and disclosure that Plaintiff Belluomini would have seen in 2017.  *Id.*

Furthermore, as Mr. Fung explained, the differences between the declarations and screenshots are not material.  Doc. 33-1, Am. Decl. ¶ 7.  The second declaration and supporting exhibits merely provide a more precise and factually detailed reproduction of what Plaintiff would have seen.  Doc. 48-2, Fung Tr. 112:16-120:9, 122:5-16, 136:10-137:3; Doc. 33-1, Am. Decl. ¶¶ 5-6.  The first declaration, for example, used a mock phone number to show the disclosures rather than Plaintiff's actual number.  The first declaration referred to a generic (and humorous) reward of "pony" instead of the actual reward, a "free coffee."  The second declaration showed the actual amount of the transaction at issue.  These differences are superficial and immaterial to whether Plaintiff agreed to enroll in the loyalty program and receive the text message.  The process and disclosure language are the same in both declarations.  *Compare* Doc. 23-3, Ex. B *with* Doc. 33-1,

1   Ex. B.  Moreover, Square's electronic record showing Plaintiff Belluomini registered for the Taste

2   loyalty program has not changed.  *Compare* Doc. 23-1, Ex. C *with* Doc. 33-1, Ex. C.

3          Plaintiff also cites a video obtained from Square's website arguing that it does not show

4   any disclosures provided to consumers.  Opp'n at p. 11.  Square, however, has repeatedly testified

5   that this video was not created for the purpose of showing loyalty program disclosures provided to

6   consumers, but was instead created so Square's clients—retailers/merchants—could have an

7   introduction to how the program works.  The video cited does not depict the disclosures

8   consumers would have seen when they chose to enroll in the loyalty program.  Plaintiff does not

9   claim she ever saw anything like this video.  Nor would she have.  The video was created to

10  advertise to merchants the basics of Square's loyalty program, not to advertise the consent

11  language loyalty users would have seen.  Put simply, this video has no relevance here.  *See* Doc.

12  33-1, Interrogatory Response Nos. 6-7; Doc. 48-2, Fung Tr. 174:10-175:8, 177:4-7.

13         Contradicting her apparent claim that there was no disclosure at all, Plaintiff also cites an

14  unauthenticated YouTube video to argue that there was a consent disclosure, but it merely

15  "flashes" on the screen for a brief, insufficient second.  Opp'n at p. 12.  Plaintiff does not testify

16  she ever saw such video or was ever presented with such a brief disclosure.  Square has repeatedly

17  testified that a consumer, including Plaintiff here, could have taken as long as she wanted to

18  review the disclosure before tapping a button either agreeing to enroll in the loyalty program and

19  receive text messages or declining by pressing "No Thanks."  The disclosure would have remained

20  until Plaintiff made her choice by tapping a button or until the screen timed out after about 30

21  seconds of inactivity, at which point the transaction would have been canceled without enrollment

22  in the loyalty program.  Doc. 33-1, Am. Decl. ¶ 10; *see also* Doc. 48-2, Fung Tr. 87:16-89:2,

23  138:2-13.  Again, the unauthenticated video cited has no application here and is irrelevant.

24         Plaintiff also argues there is "no clear evidence that Plaintiff actually pressed 'Claim Your

25  Star' after seeing the disclosure language, as opposed to merely clicking 'Done.'"  Opp'n at p. 31.

26  Plaintiff claims that "Square's representative was not certain whether clicking the 'done' button

27  would submit the form or simply hide the keyboard on the screen."  *Id.*  Plaintiff's argument is

28  completely irrelevant.  Plaintiff provides no testimony about what she saw or what button she

pressed, because all she can offer is that she does "not recall" the transaction—hardly sufficient to counter the significant evidence Square has offered both by declaration and by sworn testimony. Moreover, even if she pressed "Done," Plaintiff would still have been able to view the disclosure for as long as she wanted before the screen timed out.  *See* Doc. 33-1, Amended Fung Decl., Ex B; Doc. 48-2, Fung Tr. 107:20-108:3.

Indeed, Mr. Fung testified at his deposition that "each time a consumer enrolls in Loyalty Program at a new merchant, they are presented with the disclosure and they have to give their consent in order to enroll."  Doc. 48-2, Fung Tr. 46:14-47:10; 55:11-56:16.  He also testified that the TCPA consent disclosure is "clearly visible when the customer makes the choice between enrolling and not enrolling."  *Id.*, 76:9-12.  He further explained that Square's system is programmed to always show the consent disclosure before a customer enrolls in the loyalty program.  *Id.*, 76:14-25.

Thus, the undisputed evidence here shows Plaintiff agreed to receive the one loyalty text message at issue.  Plaintiff cites *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 978-79 (N.D. Cal. 2019) to argue that Square is making a factual challenge about Plaintiff Belluomini's standing that cannot be determined on a Rule 12(b)(1) motion to dismiss because the issue is disputed and Plaintiff is entitled to discovery.  Here, however, the Court has allowed jurisdictional discovery and, even under *Berman*, a standing challenge can be made at the pleading stage based on evidence.  Moreover, unlike here, the plaintiff in *Berman* stated in a declaration under oath that he never gave the purported consent, that "defendants knew the consents obtained from plaintiff and others were not valid," and one of the defendants contended that some third party "must have entered false registrations on its website."  *Id.* at 979.  There are no such disputed issues of fact here.  As for whether Plaintiff provided her phone number, saw the disclosures, and chose to enroll in the loyalty program and receive the text message, she simply "does not recall."  *See* Doc. 48-5.

**B.      Plaintiff Belluomini Initiated And Thus "Made" The Text Message At Issue**

The second element of standing requires that any injury be "fairly . . . trace[able] to the challenged action of the defendant."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In the

1   context of the TCPA, this means Plaintiff must prove that Square "made" the text message she

2   claims caused her injury.  47 U.S.C. § 227(b)(1)(A)(iii).  This she has not and cannot do, because

3   Plaintiff herself initiated and "made" the text message at issue.

4          In deciding who "makes" a call (including text) under the TCPA, the FCC looks at the

5   facts "to determine: 1) who took the steps necessary to physically place the call; and 2) whether

6   another person or entity was so involved in placing the call as to be deemed to have initiated it,

7   considering the goals and purposes of the TCPA."  *In the Matter of Rules & Regulations*

8   *Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7978 (2015) ("2015 FCC

9   Order").  Thus, in its TextMe decision, the FCC found that TextMe was not the "maker" of the

10  text messages sent to third party consumers, which were instead made by the users of its app who

11  went through a multi-step process, and made several choices, including most importantly pressing

12  a button that sent the text messages.  *Id.* at 7983.

13         Plaintiff argues that FCC's TextMe decision is not applicable because she was not aware

14  that she was going to receive a loyalty text message.  *See* Opp'n at p. 34.  This is nonsensical, and

15  unsupported by the evidence as Plaintiff merely testifies that she does "not recall" what she saw,

16  what she did, or what she agreed to.  The TextMe decision is on-point, and consistent with the

17  many court decisions that have followed it.  *See*, *e.g.*, *Cour*, 2016 U.S. Dist. LEXIS 98945, at *12-

18  13 (Henderson, J.) (the defendant is not the "maker of the calls at issue" where the app users had

19  to choose "which of their contacts should receive an invitation and then press an 'invite' button

20  before invitations are sent"); *Figueroa v. Everalbum, Inc.*, No. 17-05909, 2018 U.S. Dist. LEXIS

21  198967, at *9 (N.D. Cal. May 9, 2018) (White, J.) (the defendant is not the maker of the texts

22  "where the invitational text messages are triggered by the App from actions of the user."); *Huricks*

23  *v. Shopkick, Inc.*, No. 14-2464, 2015 U.S. Dist. LEXIS 112596, at *7-8 (N.D. Cal. Aug. 24, 2015)

24  (Chesney, J.) (where "a user of [defendant's shopping rewards] app 'must [have] proceed[ed]

25  through a multi-step invitation flow within the app'" and choose who to send a text message, the

26  court found that the defendant was not the "sender"); *Reichman v. Poshmark, Inc.*, No. 16-2359,

27  2017 U.S. Dist. LEXIS 73769, at *11 (S.D. Cal. May 15, 2017) *appeal dismissed*, 2017 WL

28  6345805 (9th Cir. Oct. 18, 2017) (finding that the app user, not the defendant, "made" the text

1   messages where the app user took the steps to send the messages, including choosing the

2   recipient); *Frank v. Cannabis & Glass, LLC*, No. 19-00250, 2019 U.S. Dist. LEXIS 170871, at *7

3   (E.D. Wash. Oct. 1, 2019) (dismissing for failing to sufficiently allege the defendant initiated the

4   text by "deciding whether, when or to whom the text message is sent"); *Warciak v. Nikil, Inc.*, No.

5   16 C 5731, 2017 U.S. Dist. LEXIS 42067, at *6-7 (N.D. Ill. Mar. 23, 2017) (the defendant could

6   not "plausibly be said to have 'initiated the text through [the app]'" where users were required to

7   "take several 'affirmative steps' before generating a text message" through the app).

8          Instead of addressing the substantial on-point authority favoring Square's position,

9   Plaintiff Belluomini cites to *Komaiko v. Baker Techs., Inc.*, No. 19-03795, 2020 U.S. Dist. LEXIS

10   70162 (N.D. Cal. Apr. 20, 2020) (Ryu, J.) to argue that Square is the "maker" of the text because

11   it collected "customers' mobile phone numbers in order to send unsolicited and unwanted loyalty

12   texts for which it is paid by its merchant clients."  Opp'n at p. 35.  Not only are Plaintiff's

13   assertions factually incorrect, *Komaiko* is inapplicable here.  In *Komaiko*, the defendant provided a

14   platform to its dispensary clients, which allowed those clients to collect customer information and

15   send mass marketing texts to customers at a time of the dispensaries' choosing.  2020 U.S. Dist.

16   LEXIS 70162, at *4-5.  The defendant "actively encourage[d] its clients to engage in text-based

17   marketing campaigns, help[ed] shape their messaging strategy, . . . expand[ed] their advertising

18   reach[,]" and sent text messages to customers at the dates and times requested by its dispensary

19   clients.  *Id.* at *6, 51.  Unlike *Komaiko*, Square did not collect customer data to help its merchant

20   clients send mass marketing text messages to its customers at a later date or time of their choosing.

21   Square's clients do not even have this ability.  Doc. 48-2, Fung Tr. 60:1-24.

22          Plaintiff also cites to *De la Cabada v. Ytel, Inc.*, No. 19-07178, 2020 U.S. Dist. LEXIS

23   41439 (N.D. Cal. Mar. 10, 2020) (Corly, J.) to argue that "[e]ven where a defendant did not

24   physically send the text message, a court denied a motion dismiss . . ." *See* Opp'n at p. 35.  *Ytel* is

25   also inapplicable.  In *Ytel*, as in *Komaido*, the issue was really whether the defendant could be

26   liable for calls made by their clients.  The *Ytel* case involved "millions of illegal robocalls and

27   robotexts," and the evidence plausibly showed that Ytel was aware of its clients' repeated TCPA

28   violations but continued to facilitate them by offering its platform and spoofing and call blocking

1  functionality.  2020 U.S. Dist. LEXIS 41439, at *15.  None of these allegations are present in this

2  case.

3       Moreover, unlike in *Komaido* and *Ytel*, and like the cases cited by Square, Plaintiff here

4  made the decisions and took the actions necessary to send the text message.  Plaintiff had the

5  option to enroll in the loyalty program.  She had the option to confirm her phone number or

6  change it to some other phone number.  She received the disclosure about agreeing to receive

7  loyalty messages if she pressed the "Claim Your Star" button, and she had the option to instead

8  decline by pushing "No Thanks."  She pressed "Claim Your Star."  Doc. 33-1, Am. Decl., Ex. B;

9  Doc. 48-2, Fung Tr. 139:14-17.  By doing so, Plaintiff initiated the electronic transmission that

10 traveled instantaneously to her cell phone in the form of the loyalty text message she had

11 requested.  Doc. 33-1, Am. Decl. ¶¶ 16-17; Doc. 48-2, Fung Tr. 51:15-19 ("when you push a

12 button, it send[s] – because that's just responding to the request of the consumer").  Thus, Plaintiff

13 Belluomini had full control over whether a message was sent, where it was sent, and when it was

14 sent.  She chose to send the text message, and she sent it to herself at the number she confirmed

15 when she pushed the button.

16      Even if Square controlled the content of the message, that content was consistent with what

17 Plaintiff agreed to and such control is insufficient to show it was the initiator or maker of the text.

18 *See Serban v. CarGurus, Inc.*, No. 16 C 2531, 2018 U.S. Dist. LEXIS 40412, at *10-13 (N.D. Ill.

19 Mar. 12, 2018) (where users of defendant's website had to enter in their phone number and then

20 click "send" to send a text message, the court concluded that the defendant was not the "initiator"

21 of the text, even though the defendant controlled the content of the texts).

22      The facts here show that Plaintiff, not Square or Taste Kitchen, made the text message.

23 Thus, Plaintiff's alleged injury from the text she received is traceable to her own conduct, not to

24 Square.  For this additional independent reason, Plaintiff lacks standing under Article III.

## III.   CONCLUSION

26      For these reasons, Square requests that the Court dismiss Plaintiff Nicole Belluomini's

27 claims for lack of subject matter jurisdiction.

28

1  Dated: September 11, 2020

2  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3
   By          _____/s/Lisa S. Yun_____
4                  SHANNON Z. PETERSEN
                        LISA S. YUN
5                      SIEUN J. LEE

6                 Attorneys for Defendant
7                      SQUARE, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Mishari Aleisa v. Square, Inc.*
United States District Court, Northern District of California
Case No. 3:20-cv-00806-EMC

<u>PROOF OF SERVICE</u>

<u>STATE OF CALIFORNIA, COUNTY OF SAN DIEGO</u>

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of San Diego, State of California.  My business address is 501 West Broadway, 19th Floor, San Diego, CA 92101-3598.

On September 11, 2020, I served true copies of the following document(s) described as

**DEFENDANT SQUARE, INC.'S REPLY IN SUPPORT OF ITS AMENDED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER ARTICLE III**

on the interested parties in this action as follows:

**SERVICE LIST**

| | |
|---|---|
| Abbas Kazerounian, Esq.<br>Kazerouni Law Group, APC<br>245 Fischer Ave., Suite D1<br>Costa Mesa, CA  92626<br>Tel 800.400.6808; Fax 800.520.5523<br>ak@kazlg.com | Counsel for Plaintiffs & the Putative Class |
| Yana A. Hart, Esq.<br>Kazerouni Law Group, APC<br>2221 Camino Del Rio, Suite 101<br>San Diego, CA  92108<br>Tel 619,233,7770; Fax 619.297.1022<br>yana@kazlg.com | Counsel for Plaintiffs & the Putative Class |
| Jason A. Ibey, Esq.<br>Kazerouni Law Group, APC<br>321 N Mall Drive, Suite R108<br>St. George, Utah  84790<br>Tel 800.400.6808; Fax 800.520.5523<br>jason@kazlg.com | Counsel for Plaintiffs & the Putative Class |
| Tiffany Cheung, Esq.<br>Michael Burshteyn, Esq.<br>Cheyenne Overall, Esq.<br>Morrison & Foerster LLP<br>425 Market St.<br>San Francisco, CA  94105-2482<br>Tel 415.268.7000; Fax 415.268.7522<br>TCheung@mofo.com; MBurshteyn@mofo.com;<br>COverall@mofo.com | Counsel for Defendant Square, Inc. |

Case No. 3:20-cv-00806-EMC
PROOF OF SERVICE

1  Nancy R. Thomas, Esq.                                    Counsel for Defendant
   Morrison & Foerster LLP                                  Square, Inc.
2  707 Wilshire Blvd.
   Los Angeles, CA  90017-3543
3  Tel 213.892.5200; Fax 213.892.5454
   NThomas@mofo.com
4
5          **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the
   document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the
   case who are registered CM/ECF users will be served by the CM/ECF system.
6  Participants in the case who are not registered CM/ECF users will be served by mail or by
   other means permitted by the court rules.
7
8          I declare under penalty of perjury under the laws of the United States of America
   that the foregoing is true and correct and that I am employed in the office of a member of
   the bar of this Court at whose direction the service was made.
9
10         Executed on September 11, 2020, at San Diego, California.
11
12
13                                                 Phyllis Chavez
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28